## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| **JOSEPH JOHNSON, JR.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) **Civil Action No. 07-2183 (JR)** | |
| ) | |
| **U.S. DEPARTMENT OF EDUCATION, <u>et al</u>.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant U.S. Department of Education ("Department") moves this Court for summary judgment, pursuant to Fed. R. Civ. P. 56, in this Administrative Procedure Act case involving the Department's decision relating to plaintiff's student loans. The Court is respectfully referred to the accompanying statement of material facts, memorandum of points and authorities, and attached excerpts from the administrative record (filed separately with the Court). A proposed order is also attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

SARAH WANNER
OFFICE OF GENERAL COUNSEL
U.S. Department of Education

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JOHNSON, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-2183 (JR) |
| | ) |
| U.S. DEPARTMENT OF EDUCATION, <u>et al</u>. | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Department of Education's student loan discharge provisions found at 20 U.S.C. §§ 1087(c), 1087a(b)(2) and 34 C.F.R. § 685.215, Plaintiff seeks a discharge – <u>i.e.</u>, a federal write-off of the outstanding balance and refund of payments made -- of the Federal Direct consolidation loans he obtained under the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a <u>et seq</u>.  Such discharges are available (i) as an "unpaid refund," if the institution "failed to make a refund of loans proceeds which the institution owed to such student's lender," 20 U.S.C. § 1087(c)(1), or (ii) based on "false certification" and a  "disqualifying status," if a student, "because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended," 34 C.F.R. §685.215(a)(1)(iii)(2007).  Plaintiff obtained the loans he now seeks to discharge to finance his attendance at the University of Maryland.[1]

---

[1] Plaintiff's Federal Direct loans, which he took out in 2004, consolidated and paid off loans he had taken out between 1993 and 1996 under the Federal Family Education Loan Program ("FFEL Program"), 20 U.S.C. §§ 1071 <u>et seq</u>., and the Perkins Loan Program, 20 U.S.C. §§ 1087aa <u>et seq</u>.  <u>See</u> Defendant's Statement of Material Facts Not in Dispute ("SMF"), ¶¶1, 8.  Although Plaintiff evidently seeks discharge

The Secretary denied Plaintiff's applications for discharge. <u>See</u> attached Statement of Material Facts Not in Dispute ("SMF") at ¶ 17.  Although Plaintiff has now sued, a review of the administrative record will show that the denial by the Secretary of Plaintiff's requests for discharge was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 <u>et seq.</u>, and was supported by the facts of record. Accordingly, summary judgment in favor of the federal defendant is warranted.  <u>See</u> 5 U.S.C. § 706(2)(A).

## FACTUAL BACKGROUND

Plaintiff filed multiple applications with the Secretary for discharge of his Federal Direct loans. SMF, ¶ 19.  In several, he claimed that he had been incarcerated after May 1995 which precluded attendance at the University after that date.  He argued that either he was owed a refund, or his endorsement was forged and void on the loans disbursed to his University of Maryland account for enrollment after that date.  <u>Id</u>.; <u>see</u> 34 C.F.R. §§ 685.215(a)(2), 685.216.  Alternatively, he argued that all of his loans had been "falsely certified" by the school due to a "disqualifying status" of a criminal record and incarceration [<u>see</u> SMF, ¶ 9], since the program he enrolled in was in paralegal studies [<u>see id</u>., ¶ 2], and since, allegedly, "there would certainly be some security questions or background checks that would be necessary" to "pursue any occupation in Law

---

of the portion of his Federal Direct consolidation loans attributable to his Perkins Loan, the statutory provisions authorizing unpaid refund and false certification/disqualifying status discharges do not include Perkins Loans.  <u>See</u>  20 U.S.C. § 1087(c) (authorizing unpaid refund and false certification discharges of loans made under the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 <u>et seq.</u>); 20 U.S.C. § 1087a(b)(2) (extending the terms of loans made under the Federal Family Education Loan Program to loans made under the Federal Direct Loan Program).

Enforcement, or obtain a license to practice law in the State of Maryland, or obtain employment as a Paralegal for which the program of study was intended." A.R. at 83.[2]

The Secretary, through Department officials holding delegated authority, denied Plaintiff's claims of non-attendance based on incarceration after reviewing Department and school records showing Plaintiff as in attendance for the Spring 1996 semester, as receiving grades for his work for that semester, and as withdrawing from the University on or after April 29, 1996. SMF, ¶¶ 1, 3-6, 17. This period of enrollment and attendance tallied with the Department's records for the 1995-1996 school year, showing the disbursement of FFEL loan proceeds to Plaintiff's University of Maryland account for the Spring 1996 semester. SMF, ¶ 1. The Secretary's denial decisions explained that the records, in contrast, did not reflect any attendance by Plaintiff during the Fall 1995 semester, but that they also reflected that the Fall 1995 portions of the amounts approved for subsidized and unsubsidized FFEL loans to Plaintiff for the 1995-1996 school year were never drawn down by the school or included in Plaintiff's outstanding loan balance. SMF, ¶ 7. Documents Plaintiff submitted regarding his incarceration contained no countervailing evidence, other than Plaintiff's bare assertions, that he was incarcerated during the Spring 1996 semester, or that he received any loan funds for the Fall 1995 semester. SMF, ¶ 17. In addition, Plaintiff never responded to requests that he support his claims of forged endorsements through submission of handwriting exemplars and other required documentation. SMF, ¶ 10.

The Secretary also denied Plaintiff's claims for a disqualifying status false certification discharge SMF, ¶ 17. In denying the claims, the Secretary observed that the courses and program in which Plaintiff enrolled were applicable to a broad range of

---

[2] "A.R. __" refers to the pages in the Administrative Record, filed contemporaneously with this filing.

degrees and careers [SMF, ¶¶ 11, 17]; and that Plaintiff had not shown that Maryland law excluded him from occupations requiring a professional or occupational license or even from admission to the bar [SMF, ¶ 17]. For these reasons, the Secretary concluded that Plaintiff's loans did not qualify for discharge. Id.

Plaintiff has filed this civil action challenging the Secretary's decision. R. 1.

## ARGUMENT

**1.        Summary Judgment is Appropriate in this Case.**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, the non-moving party must do more than simply show that there is "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the movant is able to point to an absence of evidence to support the non-movant's claims, the motion should be granted. Celotex Corp. v. Catrett, supra.

As discussed below, the APA requires that this case proceed to resolution through judicial review of the administrative record. That record is being filed contemporaneously with this motion. Because the facts in this case are confined to the administrative record and because that record fails to support Plaintiff's claims, summary judgment is appropriate on behalf of the Secretary.

**2.      The Administrative Procedure Act ("APA") Prescribes Review of this
         Case on the Administrative Record Under a Deferential Standard.**

The Higher Education Act of 1965, as amended, vests in the Secretary of Education the

responsibility for determining, in the first instance, whether the loan discharge provisions

of that Act authorize discharge of a student's loan.  See 20 U.S.C. § 1087)(c)(1) ("If  a . . .

student's eligibility to borrow [a FFEL Program loan, or, by extension, a Direct Loan]

was falsely certified by the eligible institution, or if the institution failed to make a refund

of loan proceeds which the institution owed to such student's lender, then *the Secretary*

shall discharge the borrower's liability on the loan")(emphasis added)).  The Secretary in

this case has made a her final decision under the statute that Plaintiff does not qualify for

such a discharge.

        Because this case is a challenge to that decision, the APA applies.  The APA

contains the standards by which a court must review final agency action.  5 U.S.C. § 706.

Under the applicable standard, Plaintiff bears the burden of showing that the Secretary's

decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law . . ."  5 U.S.C. § 706(2)(A).  APA review under this standard is made on the

existing administrative record.  Camp v. Pitts, 411 U.S. 138, 142 (1973); Florida Power

and Light Co. v. Lorion,  470 U.S. 729, 744 (l985).  Moreover, the standard is

deferential:  courts simply consider  whether the agency's decision was "based on a

consideration of the relevant factors[,or] whether there has been a clear error of

judgment."  Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989).

Agency action will be upheld if the court can discern a rational basis for the agency's

choice.  Israel v. USDA, 282 F.3d 521, 526 (7th Cir.), cert. denied, 123 S.Ct. 102 (2002).

In addition, courts show deference to interpretations given to statutory provisions by the officers or agency charged with their administration. Udall v. Tallman, 380 U.S. 1, 16 (1965). Such interpretations are upheld if they are "rational and consistent with the statute." NLRB v. United Food & Commercial Workers Union, 484 U.S. 112, 123 (1987). When the construction of a regulation, rather than a statute, is in issue, "deference is even more clearly in order." Udall, supra, 381 U.S. at 16; Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994).

3.     **Denial by the Department of Plaintiff's Discharge Claims Was Not Arbitrary or Capricious, an Abuse of Discretion, or Contrary to Law.**

a.     **The Record Does Not Support Plaintiff's Claims of Non-Attendance.**

During the administrative proceedings, Plaintiff consistently attempted to obtain discharges by implying that he had been incarcerated for all or some of the time during which the classes he had paid for with borrowed funds were being conducted. See e.g., A.R. at 182 ("Between January 11, 1993 and May 15, 2000, the borrower was incarcerated in State and Federal prisons" . . .). These representations provide the sole basis of record for the "unpaid refund" and "unauthorized signature" discharge applications Plaintiff repeatedly filed.

While non-attendance due to incarceration -- or for any reason -- could indeed support a total or partial "unpaid refund" discharge, or could help substantiate a borrower's claim that his or her loan should be discharged because his or her endorsement was forged on the loan check [see 34 C.F.R. §§ 685.215( a)(2), 685.216], the difficulty for Plaintiff is that the record is wholly inconsistent with the inference of non-attendance Plaintiff wants the Court to draw. While the record shows that episodes of incarceration did indeed occur, even the "narratives" Plaintiff wrote and submitted

with his discharge applications do not indicate that Plaintiff missed classes as result.  See,

e.g., A.R. at 281-82.  More specifically, the evidence of record is consistent and without

conflict in showing that:  Plaintiff was briefly incarcerated early in 1993; was again

incarcerated between August 11 1995 and October 26, 1995; was again incarcerated

between April 29, 1996 and May 15, 1996; and, thereafter was incarcerated on and off

throughout 2000. SMF ¶ 4.  None of those episodes of incarceration coincide with

periods of enrollment funded by the loans Plaintiff seeks to discharge.  SMF, ¶ 1, 5, 6.

To the contrary, as discussed above, the documentation obtained by the Department from

the University of Maryland in processing Plaintiff's discharge claims shows that Plaintiff

was enrolled in classes and receiving grades for his work throughout the periods of

enrollment funded by the loans.[3]

**b.  Neither the Statute nor the Regulations  
Authorize a "Criminal Record" Discharge.**

Even though Plaintiff's incarceration did not prevent him from receiving the

education his loans paid for, Plaintiff apparently believes his loans can and should be

discharged simply because he had a criminal record by the time he enrolled.  See, e.g.,

First Amended Complaint at ¶¶ 18 and 19.   He argues that his record made him

"ineligible" for the loans, and that, accordingly, the University "falsely certified" his

eligibility for the loans within the meaning of the discharge statute, 20 U.S.C. § 1087(c).

Id.   In support of his position, he cites a regulation stating that a student is eligible for

---

[3] It is possible -- barely -- that Plaintiff missed a day or two of his period of enrollment at the end of the
Spring 2006 semester due to incarceration.  The record does not preserve the exact day when in late April
or early May his studies should have ended, and his period of incarceration began on April 29, 2006.  Such
a circumstance, if it occurred, would not have provided grounds for an unpaid refund discharge (or any
other kind of discharge).   Unpaid refund discharges are approved only to the extent that a "refund should
have been made by the school under applicable law and regulations."  34 C.F.R. § 685.216(a)(2)(i).   Under
the pertinent regulations, no refund is due if a student's withdrawal date occurs after completion of 60
percent of the period of enrollment.  See 34 C.F.R. § 682.22(e)(2)(ii).  Since the Spring 1996 semester
began in January, see, e.g., SMF, ¶ 6. Plaintiff was well over the 60 percent mark by April 29, 1996.

FFEL, Perkins, and Direct Loans if, inter alia, he or she "is not incarcerated."  34 C.F.R. § 668.32(c)(3).   The regulation in question follows the statute, which provides that "no incarcerated student" is eligible for federal student loans.  20 U.S.C. § 1091(b)(5).  Plaintiff's argument defeats itself.  The statute does not say that "students formerly incarcerated" are ineligible; it says that "incarcerated students" are ineligible.  Plaintiff was not incarcerated at the time he received his loan proceeds and attended school.  Similarly, the regulation Plaintiff cites states that a student is eligible if he or she "is not" incarcerated.  Plaintiff was not incarcerated at the time he received his loans or at any time during which he was receiving the education those funds paid for.

Another regulation Plaintiff cites, the definition of "incarcerated student" in 34 C.F.R. § 600.2, expressly states that such a student is one who "*is serving* a criminal sentence in a Federal, State, or local penitentiary, prison, jail, reformatory, work farm, or other similar correctional institute."  The plain language of the regulation has no application to a student who was incarcerated in the past.

Federal defendant knows of no Congressional enactment stating that a criminal record makes an individual ineligible for federal student aid.  Suffice it to say, a policy decision of that magnitude is one only Congress could make, no doubt after extensive debate.  Because Congress has not made such individuals ineligible, there can be no inference that Congress intended to include a criminal record as a basis for a "false certification" loan discharge.  Or to put it in terms of statutory language, because the students are not ineligible, obviously such students are not "falsely certified" within the meaning of the discharge statute when a school approves them for student loans.  Plaintiff in effect argues that Congress, while permitting individuals with criminal records to take out student loans, nonetheless  intended to make discharges of those loans

available to such individuals at will by reason of their criminal records. Obviously Congress had no such intent. Neither the statute nor the regulations permit the Secretary or the Court to grant "criminal record" discharges.

**c.**     **Plaintiff Is Not Entitled to a "Disqualifying Status" Discharge**.

The Secretary acknowledges that criminal history, nonetheless, is relevant in the discharge context, but solely in one narrow circumstance, carved out not in the statute but by regulation -- the "disqualifying status"/false certification discharge provision quoted above. See 34 CFR 685.215(a)(1)(ii). Under that regulation, a loan may be discharged as "falsely certified" if the student, "because of a . . . criminal record [,] would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended." Id. Before the Secretary and now to this Court, Plaintiff has argued that, since his course work was in paralegal studies [see First Amended Complaint at Paragraph 15], his loans should be discharged under this provision. In support of this argument, he relies on the following:

> (1) Maryland statutes providing that a felony conviction may be grounds for suspending, revoking or denying a professional or occupational license [see A.R. at, e.g., 66];
>
> (2) a dissent from a decision of the Maryland Court of Appeals refusing to rule out admission to the bar for a convicted murderer [see A.R. at, e.g., 69-79];
>
> (3) a statute providing that a person convicted of a felony loses the right to buy or posses a "regulated firearm" [A.R. at, e.g., 67-68]; and
>
> (4) an e-mail from an attorney from the Maryland Department of Labor, Licensing and Regulation, stating that "[o]bviously someone with such a conviction will have problems finding employment." [A.R. at, e.g., 124].

The Secretary was neither arbitrary, nor capricious, and did not abuse her authority or act out of accordance with law, when she concluded that none of the foregoing demonstrated that Plaintiff's criminal conviction precluded him from obtaining employment in the occupation for which the training was intended as required for a "disqualifying status" discharge.

More specifically, Plaintiff made no showing that he needs a professional or occupational license to serve as a paralegal in Maryland, and the Secretary has found no such requirement. SMF, ¶ 13.  Accordingly, the statutes Plaintiff points to providing for denying felons occupational or professional licenses in other fields [see id.] do not support his claims for discharge.  Moreover, even if Maryland were to enact a licensing requirement for paralegals, the record establishes that the range of employment the educational program was intended to support extends far beyond paralegal positions. See SMF, ¶ 11; see also 59 Fed. Reg. at 61682 (Department stating, in promulgating the disqualifying status discharge regulation, that "The regulatory language is limited and designed to address those situations in which the school proposed to train the student for an occupation with specific requirements for employment. The Secretary does not anticipate that this regulation will apply to many students pursuing academic programs in a university").

With regard to the opinion of the Maryland Court of Appeals proffered by Plaintiff, it pertains to licensure for the bar, and that is not a position for which Plaintiff's paralegal studies program was purported to prepare its graduates.  Furthermore, the Court of Appeals decision reflects that a criminal record is, in fact, NOT a *per se* disqualification to be licensed as a lawyer in Maryland.  See SMF, ¶ 15.

Likewise, as the material Plaintiff submitted indicates, the Maryland statute prohibiting felons from possessing a firearm [see SMF, ¶ 16]  was not even effective until after Plaintiff had completed his enrollment, and it provided no basis for Plaintiff to meet the requirement of the discharge regulation, *i.e.*, that the statute  prevented him from meeting employment requirements "when the loans were originated."  See 34 C.F.R. § 685.214(a)(1)(iii).   In addition, few, if any, positions for paralegala require that the incumbent possess a firearm.  Plaintiff's sole basis for contending that somehow he needed to be able to bear arms was based on the fact that his paralegal program was grouped with criminal justice and public safety programs in the University of Maryland's college catalog.  See A.R. at, e.g., 282, 302.  That fortuity does not justify a discharge.

Finally, while Plaintiff's criminal record no doubt does make it more difficult for Plaintiff to obtain employment of any kind -- just as the e-mail from the Maryland Department of Labor, Licensing and Regulation said -- the discharge regulation does not support the granting of discharges on such a basis.  Instead, it authorizes discharge only when, by reason of the criminal record, the borrower "*would not meet the requirements* for employment. . . . in the occupation for which the  . . . program was intended."  34 C.F.R. 685.214(a)(1)(iii) (emphasis added).    The following passage the Secretary included in the regulatory preamble when she promulgated this rule is instructive in explicating the meaning of the discharge statute as expressed in this regulation:

> *Comments:*  One commenter argued that the Secretary should be more receptive to remedying abuses where the ability to benefit is lacking. The commenter was particularly concerned about borrowers who become employed in their general area of study but at lower level positions than they expected when they signed up for training. The commenter claimed that false certification was intended to address these problems.

> *Discussion:* Section 437(c) of the HEA provides for discharge of a loan only when the school falsely certifies the student's eligibility to borrow. It

is not intended to address every instance of alleged school malfeasance. In particular, section 437(c) is not intended to provide a loan discharge for all the borrowers who believe that they have not obtained the employment that they believe was promised. The Secretary does not endorse or guarantee the quality of education offered by schools participating in the Title IV programs. The Secretary does not approve the school's curriculum or practices, except as they relate to operation of the Title IV programs. Accordingly, student borrowers have the responsibility of any consumer to evaluate the services that will be provided by the school in light of the expense.

*Changes:* None.

59 Fed. Reg. 61664, 61682 (December 1, 1994). The Secretary's interpretation of the

statute, and the regulation, as not supporting discharge of Plaintiff's loans is rational,

deserving of deference, and should be affirmed.

### d.    Plaintiff's Remaining Contentions Do Not Support Relief of Any Kind

Plaintiff's remaining arguments lack merit. Although he complains that the

Department delayed in processing his applications [see First Amended Complaint at ¶¶23

and 38], and that the University of Maryland never "inquired of Plaintiff's criminal record

or incarceration status" [id., at ¶ 19], these claims lack any predicate in the statutory and

regulatory provisions concerning discharge. As such, they state no cause of action for

discharge. See Armstrong v. Accrediting Council, 168 F.3d 1362, 1371 (D.C. Cir. 1999)

(loan discharge provisions "provide no relief for students . . . whose schools falsely

represented their accreditation or engaged in other misconduct"), cert. denied, 528 U.S.

1073 (2000); Green v. United States, 163 F.Supp. 2d 593 (W.D.N.C. 2000) (school-

related grievances cannot be asserted to avoid repayment of student loans, except as

provided under statutory discharge provision found at 20 U.S.C. § 1087(c) and through

administrative process authorized thereunder); United States v. Wright, 87 F.Supp. 2d

464, 465 (D. Md. 2000) (claims for discharge of loan dismissed where plaintiff failed to

pursue administrative relief under 20 U.S.C. § 1087(c)); <u>Williams v. National School of Health Technology, Inc.</u>, 836 F.Supp. 273 (E.D. Pa. 1993) (no private right of action for discharge under the Higher Education Act of 1965, as amended, except as provided in to-be-promulgated regulations), <u>aff'd without opinion</u>, 37 F.3d 1491 (3d Cir. 1994).  Indeed, they state no claim of any kind.[4]

Finally, Plaintiff is incorrect when he avers in his First Amended Complaint at Paragraphs 20-22, that his discharge applications were denied under regulations invalidated in the case of <u>Jordan v. Secretary of Education</u>, 194 F.3d 169 (D.C. Cir. 1999).  The regulations struck down in <u>Jordan</u> were deleted from the Code of Federal Regulations in 2000, <u>see</u> 65 Fed. Reg. 65616, 65622 (November 1, 2000), and not applied or considered in any way in the resolution of Plaintiff's discharge claims.

## CONCLUSION

For the foregoing reasons, the Court is respectfully requested to grant federal defendant's motion for summary judgment and dismiss this case with prejudice.

Respectfully submitted,

                   /s/
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

---

[4] In complaining of delay, Plaintiff overlooks the fact that the deadlines he cites (see First Amended Complaint at Paragraph 23) pertain to the FFEL program, whereas his loans, and the discharge provisions applicable to them, are Direct Loans.  Because the Direct Loan program does not involve the complicated scheme of multiple loan holders present in the FFEL Program (i.e., lenders, guarantors, and the Department), the Direct Loan discharge regulations do not include deadlines.  See 34 C.F.R. § 685.215. Moreover, Plaintiff's applications were expeditiously handled, and any delay entailed was attributable to Plaintiff's practice of filing multiple discharge applications, with an ever-growing list of attachments, over a two-year period of time.  This practice made some delay inevitable.

With regard to Plaintiffs' complaint about the University's lack of inquiry into his criminal status, the Secretary in promulgating the "disqualifying status" discharge regulation noted that "a school is not required to obtain records of a student's mental or physical condition or criminal record prior to certifying a loan application." 59 Fed. Reg. 61210, 61214 (November 29, 1994).

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

OF COUNSEL:

SARAH WANNER
OFFICE OF GENERAL COUNSEL
U.S. Department of Education

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH JOHNSON, JR.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-2183 (JR)** |
| | ) |
| **U.S. DEPARTMENT OF EDUCATION, <u>et al</u>.** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### <u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

1.    Plaintiff obtained student loans under the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 <u>et</u> <u>seq</u>., and under the Perkins Loan Program, 20 USC. §§ 1087aa <u>et</u> <u>seq</u>., to attend the University of Maryland during the Fall, 1993 semester; the Spring and Fall, 1994 semesters; the Spring 1995 semester; and the Spring 1996 semester.  Administrative Record (A.R.) at 19-23 (Department business records listing Plaintiff's loans); A.R. at 35-36 (University of Maryland Transcript); A.R. at 356-57 (decision denying discharge).

2.    During his studies at the University of Maryland, Plaintiff was enrolled in a paralegal studies program.  First Amended Complaint, at Paragraph 15.

3.    Plaintiff withdrew from the University of Maryland on April 29, 1996, due to incarceration.  A.R. at 98 (letter from law enforcement authorities); A.R. at 23 (Department business record showing withdrawal date for Plaintiff of April 29, 1996).

4.    Plaintiff was incarcerated from January 11, 1993 to January 12, 1993; from August 11, 1995 through October 26, 1995; from April 29, 1996, to May 15, 1996; and a number of times thereafter.  A.R. at 98-99 (letters from law enforcement

authorities); A.R. at 182, 281-282 (narratives submitted by Plaintiff in support of discharge applications).

5.      Prior to the Spring 1996 semester, none of Plaintiff's periods of incarceration overlapped with the periods of enrollment at the University of Maryland financed by Plaintiff's federal student loans.  A.R. at 356-57 (discharge denial decision).

6.      Plaintiff had completed well over 60 percent of the Spring 1996 semester by April 29, 1996, the date he withdrew from the University of Maryland due to incarceration.  A.R. at 20, 36 (Department business records listing Plaintiff's loans showing that the enrollment period for which the loan was certified ended on May 12, 1996; University of Maryland Statement of Account showing Spring, 1996 semester began in January, 1996).

7.      While Plaintiff had applied for and was approved for a Federal Family Education Loan for the Fall 1995 semester, the loan proceeds for that semester were never credited to his student account or added to his loan balance, since he was precluded from attending during that semester because of incarceration.  A.R. at 20-21 (Department business records of Plaintiff's loans–see loans 3 and 4); A.R. 6, 34-36, 356-57 (discharge denial decisions).

8.      In 2004, Plaintiff consolidated all of his student loans by taking out consolidation loans under the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a et seq.  A.R. at 19-23 (Department business records listing Plaintiff's loans).

9.      Beginning in 2005 and over a two-year period, Plaintiff submitted numerous applications for "unpaid refund," "unauthorized signature," and "disqualifying status," discharges of his loans.  See three-page index to Administrative  Record.

10.     In response to Plaintiff's submission of "unauthorized signature" discharge applications, individuals processing Plaintiff's applications for the Department sent him a written request for three exemplars of his handwriting and certain other documentation.  A.R. 13-14.  Plaintiff did not submit the requested documentation.

11.     The portion of the University of Maryland's college catalog submitted by Plaintiff in support of his discharge claims states that "Paralegal studies prepares students for challenging and responsible work in the legal environment.  . . .  Career opportunities include positions in law firms, government agencies, legal services offices, corporations, professional and trade associations, banks, real estate organizations, publishing companies, and other public- and private-section businesses."  A.R. at 304-305.

12.  According to the University of Maryland's college catalog, "Criminal Justice" is a different major than "Legal Studies."   A.R. at 302.  According to Plaintiff, "Legal Studies" is the current name for the paralegal program in which he was enrolled.

13.     In response to materials Plaintiff submitted with his discharge applications indicating that conviction of a felony can result in denial or revocation of certain kinds of occupational licenses [see A.R. at 66], individuals processing Plaintiff's applications for the Department sent him a written request that he submit documentation proving that he had been denied a license due to his criminal record.  A.R. at 166.  Plaintiff did not submit the requested documentation.

14.     Although Plaintiff submitted a February 2, 2007 e-mail from Julie Squire, an attorney from the Maryland Department of Labor, Licensing and Regulation in support of his discharge applications, Ms. Squire did not say that there are requirements for

employment that Plaintiff's criminal record precludes him from meeting, nor did she identify any occupation as unavailable to Plaintiff by reason of his record.  A.R. at 124.

15.    The concurring opinion of Justice Raker of the Maryland Court of Appeals in In the Matter of the Application of John Curtis Dortch for Admission to the Bar of Maryland , Misc. No. 16 (September 1996), submitted by Plaintiff in support of his discharge application, indicates that convicted murderers are not excluded *per se* from admission to the bar in the State of Maryland.  A.R. at 69-79.

16.    Although Md. Ann. Code art. 27, §§ 442(h)(2)(i); 443(d)(4)(iii), 445(b) provide that a person convicted of an offense classified as a felony in Maryland cannot possess a "regulated firearm," these provisions did not become effective until October 1, 1996.  A.R. at 67-68 (summary of Maryland law provided by Plaintiff).

17.    On August 17, 2007, September 6, 2007, and September 25, 2007, Departmental employees issued final agency decisions denying Plaintiffs' applications for discharge.  A.R. 277-79, 351-52, 356-57.  These decisions relied on the fact that Plaintiff had not shown that state law precluded Plaintiff from employment in the legal field; that Plaintiff's program had supported a broad range of employments; and that Plaintiff had been in attendance throughout the periods of enrollment financed by his loans.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W., Room E-4204
OF COUNSEL:          Washington, D.C. 20530
                     (202) 514-7137

SARAH WANNER
OFFICE OF GENERAL COUNSEL
U.S. Department of Education

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by First-Class mail,

postage prepaid on:

JOSEPH JOHNSON, JR.
607 Audrey Lane #102
Oxon Hill, MD 20745

on this 25th day of April, 2008.


_____/s/_____
CLAIRE WHITAKER
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

Joseph Johnson, Jr.                                    )
                                                       )
                    Plaintiff,                         )        No. 1:07-CV-02183
                                                       )        Assigned to:  Robertson, James
v.                                                     )        Assign Date:  12/4/07
                                                       )        Description:  Admin. Agency
U.S. Department of Education, et al.,                   )        Review
                                                       )
                    Defendants.                        )
                                                       )

ADMINISTRATIVE RECORD

1.    9/12/05 application by Joseph Johnson Jr. for unpaid refund discharge
      (incomplete)                                                                    1

2.    9/12/05 application by Joseph Johnson Jr. for unauthorized signature
      discharge (incomplete)                                                          2

3.    9/16/05 return by Direct Loans of unauthorized signature discharge
      application as incomplete                                                       3

4.    10/11/05 application by Joseph Johnson Jr. for unpaid refund discharge
      (incomplete)                                                                    4

5.    10/11/05 application by Joseph Johnson Jr. for unauthorized signature
      discharge, alleging incarceration from 10/95 through 4/04                       5

6.    10/7/05 rejection by Direct Loans of discharge, based on records of
      school attendance from January, 1996 through May 16, 1996                       6

7.    10/7/05 Direct Loans reviewer worksheet                                         7

8.    Printout of loan history for Joseph Johnson Jr., as it existed in the
      Department's National Student Loan Data System on 9/16/05                       8

9.    10/26/05 letter from Direct Loans to Joseph Johnson requesting
      submission by December 26, 2005 of handwriting exemplars and other
      data to support application for unauthorized signature discharge                13

10.   Unofficial transcript for Joseph Johnson (University of Maryland), reflecting attendance Fall, 1993 -Spring, 1994, Fall 1994-Spring 1995, and Spring 1996                                                                         15

11.   Statement of account for Joseph Johnson (University of Maryland), reflecting charges and payments in January, 1996, February, 1996 and June, 1996                                                                               16

12.   2/9/06 denial by Direct Loans of unpaid refund discharge, noting that although Joseph Johnson was not enrolled at the University of Maryland during the Fall, 1996 semester, no loans were disbursed by the University of Maryland on his behalf during that semester                                17

13.   2/8/06 Direct Loans reviewer worksheet                                       18

14.   Printout of loan histor y for Joseph Johnson Jr., as it existed in the Department's National Student Loan Data System on 2/8/06                    19

15.   2/13/06 unauthorized signature discharge application from Joseph Johnson Jr., alleging nonattendance 1/96-5/96                                    24

16.   2/6/06 unpaid refund discharge application from Joseph Johnson Jr., alleging nonattendance 1/96-5/96 due to incarceration                         25

17.   5/18/06 rejection by Direct Loans of unpaid refund discharge based on school certification of borrower attendance through April 29, 1996          26

18.   5/17/06 reviewer worksheets                                                  27

19.   Printout of loan history for Joseph Johnson Jr., as it existed in the Department's National Student Loan Data System on 5/17/06                    29

20.   6/6/06 rejection by Direct Loans of unpaid refund discharge, enclosing university records verifying attendance in classes from 1/96 through 5/96   34

21.   Unofficial transcript and statement of account for Joseph Johnson            35

22.   6/1/06 universal research request attaching 15 page fax from Joe Johnson, reflecting documentation of various periods of incarceration            37

23.   11/20/06 false certification discharge application for Joseph Johnson, Jr. and documents attached.                                                53

24.   5/7/2007 denial by Direct Loans of false certification discharge, based on failure to notify the school of status prior to enrollment              80

25. 5/15/07 false certification discharge application for Joseph Johnson, Jr., and documents attached.                                                                 81

26. 5/15/07 letter from Joseph Johnson to Jeff Baker, US Department of Education Office of Federal Student Aid, with attachments, "appealing" 5/7/07 denial of false certification discharge application                        125

27. 5/24/07 Memorandum from Joseph Johnson, Jr. to Direct Loans, requesting correction to credit report of past-due account                    164

28. 6/14/07 denial by Direct Loans of false certification discharge application, based on failure to show borrower was denied a license due to a criminal record                                                                        166

29. 6/18/07 memorandum from Thad Bartkowiak, U.S. Department of Education, to Jeff Baker, U.S. Department of Education, regarding 5/15/07 "appeal" by Joseph Johnson Jr., with attachments                    167

30. 6/26/07 false certification discharge application submitted by Joseph Johnson Jr., and documents attached.                                              181

31. 6/26 letter of Joseph Johnson, Jr. to Jeff Baker, Policy Liaison and Implementation, Federal Student Aid, U.S. Department of Education, with attachments, "appealing" denial of 5/07 application for false certification discharge                                                                 228

32. 8/17/07 letter from Janet Nori, Student Aid Entitlements, Processing Regional Office San Francisco, Federal Student Aid/Borrower Services, U.S. Department of Education, denying false certification discharge                277

33. 9/7/07 false certification discharge application for Joseph Johnson Jr. and documents attached.                                                          280

34. 9/6/07 Letter from Jeff Baker, Policy Liaison and Implementation, Federal Student Aid, U.S. Department of Education, to Joseph Johnson                351

35. 9/10/07 letter from Joseph Johnson, Jr. to Jeff Baker, Policy Liaison and Implementation, Federal Student Aid, U.S. Department of Education                353

36. 9/25/ letter from Jeff Baker, Policy Liaison and Implementation, Federal Student Aid, U.S. Department of Education, to Joseph Johnson, Jr.                356

# Direct Loans

William D. Ford Federal Direct Loan Program

**Denial of Unpaid Refund Discharge**

Joe Johnson Jr.
607 Audrey Lane, Apt. 102
Oxon Holl, MD 20745-2691

October 7, 2005

Dear Mr. Johnson:

You requested a discharge of the Direct Loan Program loans that you obtained to attend University of Maryland – University College (OPEID #01164400), based on the Unpaid Refund provisions of the Direct Loan Program regulations (34 CFR 685.214). You stated in your application that you did not attend school after May 1995. However, we contacted the school financial aid office and they informed us that you requested two loans for the 1995-1996 school term. You did not attend the 1995 fall semester, therefore the school did not disburse $2,000.00 for your unsubsidized loan or $1,750.00 for your subsidized loan.

The school also reported that you did return to school in January 1996, and they requested that we disburse the remaining $2,000.00 unsubsidized and $1,750.00 subsidized loan funds, which we did on January 23, 1996. The National Student Loan Data System shows your withdrawal date as May 16, 1996. Therefore we cannot consider your loans for a discharge.

You may also wish to contact the school registrar to request your enrollment information.

Although you are not eligible for a loan discharge, other options are available to assist you in meeting your Direct Loan obligation. Our Borrower Services Department can help you with all of your loan needs. Borrower Services Representatives are available from 8:00 AM to 8:30 PM Eastern Time, Monday through Friday at **1-800-848-0979**. You can also write to us at:

**U.S. Department of Education**
**Direct Loan Servicing Center**
**P.O. Box 5609**
**Greenville, TX 75403-5609**

You may also access your account information through our Web site: www.dl.ed.gov

**Remember:** *Advise us of any changes in name, address, student status, or separation date from school (if applicable). This information can affect the status of your loan.*

Sincerely,
Jim O'Rourke
Borrower Services Department
Direct Loan Servicing Center

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*
U.S. Department of Education

6

# Direct Loans

William D. Ford Federal Direct Loan Program

October 26, 2005

Joe Johnson Jr.
607 Audrey Lane Apt. 102
Oxon Hill, MD 20745-2691

Account ▮▮▮▮▮▮▮

Dear Joe Johnson Jr.:

Thank your for your inquiry regarding your Direct Loan. Your loan may be eligible for discharge if you submit proof that the loan was obtained through fraudulent acts. We are aware of your concerns relating to the possibility that someone other than yourself signed your name to a Federal Direct Loan Promissory Note. If you feel the signature is not yours, please submit the following information on or before **December 26, 2005.**

- **Three original copies of your signature on the same piece of paper. A Notary Public must notarize your signature.**

- **A clear copy of your Driver's License.**

- **A clear copy of your social security card.**

- **Two samples of your signature clearly showing that your signature was written one year before the date of the document that you claim someone else signed your name. (Examples of documents that would both include a signature and date that the signature was written would be a cancelled check or your tax returns.**

- **We require that you file a police report with your local police department regarding your allegation of fraud and provide us with a copy of it.**

A written statement must be included with these items, which describes the circumstances related to the allegation of fraud, including information about who may have signed your name. Please send the information to the following address:

**Direct Loan Servicing Center**
**Attn: Fraud Department**
**P.O. Box 5609**
**Greenville, TX 75403-5609**

Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation
U.S. Department of Education

13

If you have any questions, please contact our Borrower Services Department from 8:00 AM to 8:30 PM Eastern Time, Monday through Friday at 1-800-848-0979. Hearing-impaired individuals who have access to a TDD (Telecommunications Device for the Deaf) can call the Federal Information Relay Service (FIRS) at 1-800-848-0983.

Sincerely,

Fraud Department
Direct Loan Servicing Center

Loan History (JOSEPH JOHNSON JR)



**SSN:**

Loan History | Overpayment History | Pell Grant | Student Access Interface

**First Name:**                    **DOB:**              (MMDDCCYY)    Retrieve    Name Search
Logged on as: JIM OROURKE from Department of Education Region 0.

**⬛ JOSEPH JOHNSON JR**

## Loan History

### Aggregate Loan Information



Pell Grants

| Loan Type | Outstanding Principal Balance | Pending Disbursements | Total |
|---|---|---|---|
| Subsidized Loans | $7,811 | $0 | $7,811 |
| Unsubsidized Loans | $6,000 | $0 | $6,000 |
| Combined Loans | $13,811 | $0 | $13,811 |
| Consolidation Loans, Unallocated | $14,131 | $0 | $14,131 |
| Perkins Loans | N/A | | N/A |

### Master Promissory Notes

| MPN Type | Code | PLUS Borrower |
|---|---|---|
| | | |

| Direct Stafford | N | N/A |
| Direct PLUS | N | N/A |

# Loan Summary

Sort by: [ --- Select --- ▾ ]

Display Only: [ ----- ALL ----- ▾ ]          Submit

Currently Sorted by LOAN DATE, No filtering

**1    D5 - DIRECT CONSOL UNSUB**    Status: RP as of 10/30/2004    Loan Detail

| Approved Amt: | $11,547 | Disbursed Amt: | $11,547 | Sep. Loan Ind: | C | OPB: | $11,567 | Agg. OPB: | $11,547 |
| Loan Date: | 06/18/2004 | | | Loan Period: | | | | | |
| Last Disb. Date: | 12/17/2004 | Last Disb. Amt: | $3,364 | Acad. Lv: | N/A | | N/A - N/A | | |

**2    D6 - DIRECT CONSOL SUB**    Status: RP as of 10/30/2004    Loan Detail

| Approved Amt: | $18,844 | Disbursed Amt: | $18,780 | Sep. Loan Ind: | D | OPB: | $18,627 | Agg. OPB: | $16,395 |
| Loan Date: | 06/18/2004 | | | Loan Period: | | | | | |
| Last Disb. Date: | 12/17/2004 | Last Disb. Amt: | $2,516 | Acad. Lv: | N/A | | N/A - N/A | | |

**3    D2 - DIRECT STAFFORD UNSUB**
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400    Status: PN as of 12/20/2004    Loan Detail

| Approved Amt: | $2,000 | Disbursed Amt: | $2,000 | Sep. Loan Ind: | B | OPB: | $0 | Agg. OPB: | |
| Loan Date: | 01/23/1996 | | | Loan Period: | | | 09/05/1995 - 06/12/1996 | | |
| Last Disb. Date: | 01/23/1996 | Last Disb. Amt: | $2,000 | Acad. Lv: | 2 | | | | |

**4    D1 - DIRECT STAFFORD SUB**
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400    Status: PN as of 12/20/2004    Loan Detail

| Approved Amt: | $4,000 | Disbursed Amt: | $2,000 | Sep. Loan Ind: | B | OPB: | $0 | Agg. OPB: | $0 |
| Loan Date: | 01/23/1996 | | | Loan Period: | | | 09/05/1995 - 06/12/1996 | | |
| Last Disb. Date: | 01/23/1996 | Last Disb. Amt: | $2,000 | Acad. Lv: | 2 | | | | |

Loan History (JOSEPH JOHNSON JR)

Page 4 of 4

| Lender: | USA FUNDS, INC. - 800 |
| | SLM ECFC - 831053 |

**9**    **PU - FEDERAL PERKINS**
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400    **Status: PF as of 12/01/2004**

Loan Detail

| Approved Amt: | $2,250 | Disbursed Amt: | $2,250 | OPB: | $0 | Agg. OPB: | $0 |
| Loan Date: | 09/07/1993 | Sep. Loan Ind: | | Loan Period: | 07/01/1993 - 06/30/2004 |
| Last Disb. Date: | 01/18/1994 | Last Disb. Amt: | $2,250 | Acad. Lv: | N/A |

**10**    **SF - FFEL STAFFORD SUB**
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400    **Status: DN as of 06/21/2004**

Loan Detail

| Guaranteed Amt: | $2,625 | Disbursed Amt: | $2,625 | OPB: | $0 | Agg. OPB: | $0 |
| Loan Date: | 07/03/1993 | Sep. Loan Ind: | A | Loan Period: | 09/07/1993 - 05/10/1994 |
| Last Disb. Date: | 01/03/1994 | Last Disb. Amt: | $2,625 | Acad. Lv: | 1 |
| GA: | USA FUNDS, INC. - 800 |
| Lender: | SLM ECFC - 831053 |

Ⓔ Amount includes capitalized interest.

Notes:

PRIVACY ACT OF 1974 (AS AMENDED)

22

**5**

SF - FFEL STAFFORD SUB
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400

Status: DN as of 06/21/2004    Loan Detail

| Approved Amt: | $3,500 | Disbursed Amt: | $1,750 | | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|---|
| Loan Date: | 01/23/1996 | Sep. Loan Ind: | A | Loan Period: | | 09/05/1995 - 05/12/1996 | | |
| Last Disb. Date: | 01/23/1996 | Last Disb. Amt: | $1,750 | Acad. Lvl: | 2 | | | |

| Guaranteed Amt: | $875 | Disbursed Amt: | $875 | | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|---|
| Loan Date: | 03/03/1995 | Sep. Loan Ind: | A | Loan Period: | | 09/06/1994 - 05/09/1995 | | |
| Last Disb. Date: | 03/09/1995 | Last Disb. Amt: | $875 | Acad. Lvl: | 2 | | | |

Lender: SLM ECFC - 831053

GA: USA FUNDS, INC. - 800

**6**

SF - FFEL STAFFORD SUB
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400

Status: DN as of 06/21/2004    Loan Detail

| Guaranteed Amt: | $2,625 | Disbursed Amt: | $2,625 | | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|---|
| Loan Date: | 08/10/1994 | Sep. Loan Ind: | A | Loan Period: | | 09/06/1994 - 05/09/1995 | | |
| Last Disb. Date: | 01/09/1995 | Last Disb. Amt: | $875 | Acad. Lvl: | 1 | | | |

Lender: SLM ECFC - 831053

GA: USA FUNDS, INC. - 800

**7**

SU - FFEL STAFFORD UNSUB
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400

Status: DN as of 08/13/1999    Loan Detail

| Guaranteed Amt: | $4,000 | Disbursed Amt: | $4,000 | | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|---|
| Loan Date: | 08/10/1994 | Sep. Loan Ind: | A | Loan Period: | | 09/06/1994 - 05/09/1995 | | |
| Last Disb. Date: | 01/09/1995 | Last Disb. Amt: | $2,000 | Acad. Lvl: | 1 | | | |

Lender: SLM ECFC - 831053

GA: USA FUNDS, INC. - 800

**8**

PL - FFEL PLUS
UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE - 01164400

Status: DN as of 08/13/1999    Loan Detail

| Guaranteed Amt: | $5,000 | Disbursed Amt: | $5,000 | | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|---|
| Loan Date: | 09/17/1993 | Sep. Loan Ind: | A | Loan Period: | | 09/03/1993 - 05/10/1994 | | |
| Last Disb. Date: | 09/22/1993 | Last Disb. Amt: | $5,000 | Acad. Lvl: | 1 | | | |

GA:

Enrollment Summary (JOSEPH JOHNSON JR)

Page 1 of 1




Menu | Aid | Enroll | Org | Report

Enrollment Summary

SSN: [ ]

First Name: [ ]   DOB: [ ] (MMDDCCYY)   Retrieve | Name Search

Logged on as: JIM OROURKE from Department of Education Region 0

M   JOSEPH JOHNSON JR



**Enrollment Summary**

Enrollment Detail | Enrollment Timeline

| | School Name | OPEID | Most Recent Status | Eff. Date | ACD | Cert. Date | Cert. Method |
|---|---|---|---|---|---|---|---|
| 1 | UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE | 01184400 | Withdrawn | 05/16/1996 | 04/29/1996 | 04/22/1997 | School Batch |

PRIVACY ACT OF 1974 (AS AMENDED)

https://www.nsldsfap.ed.gov/secure/ENSUM.asp

2/8/2006

23

# Direct Loans

**William D. Ford Federal Direct Loan Program**

**Denial of Unpaid Refund Discharge**

Joe Johnson Jr.
607 Audrey Lane Apt. 102
Oxon Hill, MD 20745-2691

June 6, 2006

Dear Mr. Johnson:



You requested a discharge of the Direct Loan Program loans that you obtained to attend the University of Maryland (OPEID #01164400), based on the Unpaid Refund provisions of the Direct Loan Program regulations (34 CFR 685.214). You stated in your application that you did not attend the university from January 1996 to May 1996. However, the university certified that you attended school until April 29, 1996. For your records we've enclosed a copy of your "Undergraduate Records" from the University of Maryland with this letter. The "Undergraduate Records" verifies that you attended classes from January 1996 to May 1996. Therefore, we cannot consider your loans for a discharge.

*Please contact your state licensing agency at 410-260-4500 to express your concerns about the university.*

Although you are not eligible for a loan discharge, other options are available to assist you in meeting your Direct Loan obligation. Our Borrower Services Department can help you with all of your loan needs. Borrower Services Representatives are available from 8:00 AM to 8:30 PM Eastern Time, Monday through Friday at **1-800-848-0979**. You can also write to us at:

**U.S. Department of Education**
**Direct Loan Servicing Center**
**P.O. Box 5609**
**Greenville, TX 75403-5609**

You may also access your account information through our Web site: www.dl.ed.gov

*Remember: Advise us of any changes in name, address, student status, or separation date from school (if applicable). This information can affect the status of your loan.*

Sincerely,

Don Yozzo
Borrower Services Department
Direct Loan Servicing Center

NOV-03-2005  14:31

P.02/03
p.4

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

# UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE
3501 University Boulevard East
Adelphi, Maryland 20783-8070

Page   1 of 1

Name:  JOHNSON, JOE  JR
Address: 607 AUDREX LANE
APARTMENT #102
OXON HILL MD 20745

Date: 10/20/05

| Description | Att | Gr | Earn | Q Pt | Description | Att | Gr | Earn | Q Pt |
|---|---|---|---|---|---|---|---|---|---|
| UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE | | | | | | | | | |
| UNDERGRADUATE RECORDS | | | | | | | | | |
| FALL   1993 | | | | | | | | | |
| PLGL 101  INTRO TO PARALEGAL | 03 | C | 03 | 06 | | | | | |
| ELGL 200  TECH OF LEGAL RSRCH   REPEAT | 03 | F | 00 | 00 | | | | | |
| PLGL 201  LEGAL WRITING | 03 | B | 03 | 03 | | | | | |
| PLGL 322  EVIDENCE           REPEAT | 03 | F | 00 | 00 | | | | | |
| SPRING  1994 | | | | | | | | | |
| PLGL 204  LGL STB/LAW OFF SYS | 03 | C | 03 | 06 | | | | | |
| PLGL 325  LITIGATION | 03 | C | 03 | 06 | | | | | |
| PLGL 340  CONTRACT LAW | 03 | D | 03 | 03 | | | | | |
| PLGL 413  CONSUMER PROTECTN LAW | 03 | A | 03 | 03 | | | | | |
| ACADEMIC WARNING - 05/25/94 | | | | | | | | | |
| FALL   1994 | | | | | | | | | |
| PLGL 200  TECH OF LEGAL RSRCH | 03 | C | 03 | 06 | | | | | |
| PLGL 323  INVESTIGATIVE TECH | 03 | C | 03 | 06 | | | | | |
| PLGL 312  TORTS | 03 | C | 03 | 06 | | | | | |
| PLGL 322  EVIDENCE | 03 | D | 03 | 03 | | | | | |
| SPRING  1995 | | | | | | | | | |
| CCJS 105  INTR TO CRIMINOLOGY | 03 | D | 03 | 03 | | | | | |
| CCJS 234  CRIM PROC AND EVIDNC | 03 | D | 03 | 03 | | | | | |
| PLCL 315  DOMESTIC RELATIONS | 03 | D | 03 | 03 | | | | | |
| PLGL 401  ADV LEGAL WRITING | 03 | D | 03 | 03 | | | | | |
| ACADEMIC WARNING - 05/26/95 | | | | | | | | | |
| SPRING  1996 | | | | | | | | | |
| ENGL 101  INTRO TO WRITING | 03 | W | 00 | 00 | | | | | |
| PLGL 204  LGL STB/LAW OFF SYS   REPEAT | 03 | F | 00 | 00 | | | | | |
| PLGL 325  LITIGATION         REPEAT | 03 | F | 00 | 00 | | | | | |

UNIV. OF MD. (UGRAD) CRH TOTALS:

| GPA | ATTP | EARN | APPL | QPTS |
|---|---|---|---|---|
| 2.000 | 57 | 42 | 43 | 304 |

------ E N D   O F   R E C O R D ------

## UNOFFICIAL RECORD

35

NOV-03-2005  14:31

P.03/03
P.2

## STATEMENT OF ACCOUNT

### THE UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE
OFFICE OF THE BURSAR - SFSC, ROOM 2241
3501 UNIVERSITY BLVD. EAST
ADELPHI, MD 20783
(301)-985-7404

TUE, OCT 25, 2005

PAGE  1

JOHNSON JR  JOE
607 AUDREY LANE
APARTMENT #102
OXON HILL  MD 20745

ID NUM:
PREFIX:       04
COLLEGE:    10
HOME:        (301) 839-0172
OFFICE:      (999) 999-9999

*****************************************************************

| COURSE | SECT | DESCRIPTION | COURSE REGISTRATION CR GM BEGIN DATE | TIME/DAY | BLD | ROOM |
|---|---|---|---|---|---|---|
| PLGL325 | 2600 | ***************** 3 | | | | |
| PLGL204 | 2600 | CORRECT | | | | |
| PLGL204 | 2601 | CANCLED | | | | |
| PLGL204 | 2600 | ***************** 3 | | | | |
| ENGL101 | 6900 | WD  50% | | | | |

*****************************************************************

| TRANS DATE | DESCRIPTION | SEM | CHARGES | PAYMENTS |
|---|---|---|---|---|
| 960118 | PLGL325 2600 | 9602 | | |
| 960118 | PLGL204 2600 | 9602 | 522.00 | |
| 960123 | FED SUB DIR LOAN | 9602 | 522.00 | |
| 960123 | FED UNS DIR LOAN | 9602 | | |
| 960123 | FED DIRECT LN REFUND | 9602 | | 168.00 |
| 960125 | ADJ-FED SUB DIR LOAN | 9602 | 1,044.00 | 1,920.00 |
| 960125 | FED SUB DIR LOAN | 9602 | 168.00 | |
| 960125 | FED DIRECT LN REFUND | 9602 | | 1,680.00 |
| 960129 | PLGL204 2601 | 9602 | 1,512.00 | |
| 960129 | CORRECT-PLGL204 2600 | 9602 | 522.00 | |
| 960129 | ENGL101 6900 | 9602 | | |
| 960206 | CANCLED-PLGL204 2601 | 9602 | 522.00 | 522.00 |
| 960206 | PLGL204 2600 | 9602 | | 522.00 |
| 960211 | WD  50%-ENGL101 6900 | 9602 | 522.00 | |
| 960628 | TRANSFER TO SCCU | 9602 | | 261.00 |
| | | | | 261.00 |

TOTAL P.03

36

# MARYLAND

## I.    RIGHTS TO VOTE, HOLD STATE OFFICE, AND SERVE ON A STATE JURY; SELECTED OCCUPATIONAL DISABILITIES

### A.    LOSS OF RIGHTS

A person convicted of "theft or other infamous crime" loses the right to vote. Md. Ann. Code art. 33, § 3-4(c). Anyone convicted of such an offense also loses the rights to hold public office and to serve on a jury, because these rights are contingent upon being a registered voter. Md. Const. art. I, § 12; Md. Ann. Code art. 33, § 4A-I(a); Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(1). In addition, persons convicted of bribery or attempted bribery or of buying or selling votes are forever disenfranchised and disqualified from holding an office of profit or trust. Md. Const. art I, § 6; art. III, § 50; Md. Ann. Code art. 33, § 3-4(b)(6). A state elected official or a member of a state board or commission can be suspended and removed from office upon a felony conviction. Md. Const. art. XV, § 2; Md. Ann. Code art. 41, § 1-204(a). A state judge may be removed upon conviction of any crime, Md. Const. art. IV, § 4, and a state's attorney may be removed upon conviction of bribery. Md. Const. art. V, § 9.

In addition, a person who has been convicted of a crime punishable by a fine of more than $500 or by imprisonment of more than six months or both and who received a sentence of a fine of more than $500 or more than six months' imprisonment or both may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(5). A person convicted of falsifying a juror qualification form may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(6). Persons convicted of bribing a juror or accepting a bribe as a juror are forever disqualified from sitting on a jury. Md. Ann. Code art. 27, § 25.

A felony conviction may be grounds for suspending, revoking, or denying a professional or occupational license. E.g.: veterinary medicine (Md. Code Ann., Agric. § 2-310(2), (3), (4)); accounting (Md. Code Ann., Bus. Occ. & Prof. § 2-315(a)(3)); dentistry (Md. Code Ann., Health Occ. § 4-315(a)(4)); nursing (Md. Code Ann., Health Occ. § 8-316(a)(4)); optometry (Md. Code Ann., Health Occ. § 11-313(3)). A person convicted of a drug offense committed on or after January 1, 1991, may be required to disclose the conviction as a condition of the issuance or renewal of a license, and the license may be denied, suspended, or revoked because of the conviction. Md. Ann. Code art. 41, §§ 1-502, 1-503. See also Md. Ann. Code art. 27, § 298A (court to notify licensing authorities of certain drug convictions). Maryland has a registration requirement for child sex offenders. Md. Ann. Code art. 27, § 692B (renumbered to § 792 effective October 1, 1996).

### B.    RESTORATION OF RIGHTS/REMOVAL OF DISABILITIES

The disability from voting for a first offender lasts only until the sentence is completed, including probation or parole, Md. Ann. Code, art. 33, § 3-4(c) (except for persons convicted of bribery, attempted bribery, or buying or selling votes, who are permanently disenfranchised and disqualified from holding office, Md. Const. art. I, § 6; art. III, § 50). As a result, first offenders

also regain the right to hold office upon completion of sentence.[3] The right to serve on a jury is also restored upon completion of sentence, to the extent that the disability flows from being ineligible to vote; however, any disability relating to the nature of the offense or sentence under Md. Code Ann. Cts. & Jud. Proc. § 8-207(b)(5), (6), or Md. Ann. Code art. 27, § 25, presumably must be removed by a pardon. Recidivists must obtain a pardon in order to regain their civil rights.

The pardon power is vested in the Governor, except in cases of impeachment. Md. Const. art. II, § 20. The Maryland Parole Commission makes a recommendation to the Governor about every pardon application. Md. Ann. Code art. 41, § 4-504(b)(3). According to the Maryland Parole Commission, a person convicted under federal law or the law of another state is ineligible for a gubernatorial pardon.

A person who has been convicted of only one state criminal act, which is not a "crime of violence,"[4] and who has received a full and unconditional pardon from the Governor, may petition for expungement of police and court records pertaining to the charge. Md. Ann. Code art. 27, § 737(a)(7).[5] In addition, a procedure for imposing probation prior to judgment is available for state offenses, which provides that upon successful completion of probation the person is discharged without judgment of conviction and is not "convicted" for the purposes of any disqualification or disability imposed because of conviction of crime. Md. Ann. Code art. 27, § 641.

## II.    LOSS AND RESTORATION OF STATE FIREARMS PRIVILEGES

Effective October 1, 1996, a person convicted of a "crime of violence," a violation classified as a felony in Maryland, a violation classified as a misdemeanor in Maryland that carries a statutory penalty of more than two years, or a violation classified as a common-law offense for which the person received a term of imprisonment of more than two years loses the right to buy, rent, transfer, or possess a "regulated firearm,"[6] and may not be a licensed dealer of

---

[1] Md. Ann. Code art. 27, § 562C, however, provides that a state or local officer or employee who is convicted of extortion is, "notwithstanding any pardon," permanently barred from employment by state or local government

[2] Effective October 1, 1996, "crime of violence" is defined to mean the following crimes or an attempt to commit any of them: abduction; arson in the first degree; burglary in the first, second, or third degree; carjacking; armed carjacking; escape; kidnapping; voluntary manslaughter; maiming; mayhem; murder in the first or second degree; rape in the first or second degree; robbery; robbery with a dangerous or deadly weapon; sexual offense in the first, second, or third degree. It also includes assault with intent to commit any of these offenses or any other offense punishable by imprisonment for more than one year. Md. Ann. Code art. 27, § 441(e).

[3] Expungement may be denied if the person has since been convicted of another crime (other than a traffic offense for which a prison sentence is not possible) or is presently under criminal charges. Md. Ann. Code art 27, § 737(f)(1), (2).

[6] "Regulated firearm" means a handgun, defined in Md. Ann. Code art. 27, § 441(n) as a firearm with a barrel less than 16 inches long (including signal, starter, and blank pistols), or an assault weapon specified in Md Ann Code art. 27, § 441(d). Md. Ann. Code art. 27, § 441(r)

regulated firearms. Md. Ann. Code art. 27, §§ 442(h)(2)(i); 443(d)(4)(iii); 445(b), (d). Anyone convicted of a felony drug offense under Maryland law, or under federal law or the laws of any state if such conduct would be a felony drug offense under Maryland law, may not possess, own, carry, or transport a firearm.[7] Md. Ann. Code art. 27, § 291A(b). A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed (who has not been pardoned or granted relief from federal firearms disabilities), or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, § 36E(a)(2), (4); 36E(f).

---

[7] "Firearm" is defined to include handguns, rifles, shotguns, assault weapons, and machine guns. Md. Ann Code art  27, § 291A(a).

IN THE COURT OF APPEALS OF MARYLAND

Misc. No. 16

September Term, 1996

IN THE MATTER OF THE APPLICATION OF
JOHN CURTIS DORTCH FOR ADMISSION TO
THE BAR OF MARYLAND

*Murphy, C.J.
 Eldridge
 Rodowsky
 Chasanow
 Karwacki
 Bell
 Raker,

JJ.

Concurring Opinion by Raker, J.,
in which Rodowsky, J., joins.

Filed: January 6, 1997
*Murphy, C.J., now retired,
participated in the hearing and
conference of this case while an
active member of this Court; after
being recalled pursuant to the
Constitution, Article IV, §3A, he
also participated in the decision

69

and adoption of this opinion.

Seventeen years ago, Judge Marvin Smith asked "Do my colleagues propose permitting convicted murderers to become Maryland lawyers since they have not killed anyone lately?" *In re Application of A.T.*, 286 Md. 507, 518, 408 A.2d 1023, 1029 (1979) (Smith, J., dissenting). The answer to that question is "maybe."

Today, the Court holds that because Petitioner, a convicted murderer of a police officer, is still on parole, his "petition is therefore premature and is denied. He is free to file a new petition for admission if, and when, he is released from parole supervision." Maj. op. at 16. In so holding, the Court suggests that if Petitioner's parole were to be terminated tomorrow, he *might* be admitted. In contrast, I would deny his petition for admission to the Bar because he has not proven by clear and convincing evidence that he possesses the requisite present moral character to be admitted to the Bar of this State. *See In re Application of James G.*, 296 Md. 310, 314, 462 A.2d 1198, 1200-01 (1983). Six short years since Petitioner has been released from prison for second degree murder is an insufficient amount of time for us to find that he has satisfied his very heavy burden to establish that "he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion." *In re Application of Allan S.*, 282 Md. 683, 690, 387 A.2d 271, 275 (1978); *In re Application of George B.*, 297 Md. 421, 422, 466 A.2d 1286, 1286 (1983) (six years between release from prison and application for admission is "of

71

- 2 -

insufficient duration, considering the gravity of the offense committed"); *see also In re Polin*, 596 A. 2d 50, 54 n.5 (D.C. 1991).

It appears to me that Petitioner has not accepted responsibility for the crimes for which he was convicted. In his application to law school, dated August 6, 1990, after he served 15 years in prison, he characterized his murder conviction as an "injustice," an "abortion of justice," and one that was based on perjurious testimony by police officers. Petitioner's response to question 39D on his application to law school is indicative of his lack of responsibility, and reflects the following:

Q. Describe a specific personal experience in which you were subjected to or witnessed some significant form of injustice. How did you deal with it? How do you think you should have dealt with it?

A. I am an ex-offender, and I have witnessed and experienced improprieties in the administration of justice. By virtue of a guilty plea, I was convicted of second degree murder, attempted bank robbery, and conspiracy, and I served fifteen years in prison. I did not kill anyone nor did I attempt to kill anyone nor was I present at the scene of the homicide, but the alleged factual basis for my plea was predicated upon the felony murder concept, which stipulates that each conspirator is equally accountable for every and anything that transpires in the furtherance of a felony, even though he may not participate in the overt act. The injustice that I suffered was at the hands of both the defense counsel, whom I paid in advance, and the prosecution which condoned, if not encouraged, the perjurious testimonies of the complaining officers.

However, I am not bitter, because I did break the law, but not to which I was charged and prosecuted. The bottom line is that I did break the law, and had not I broken the law, I would not have been

- 3 -

vulnerable to an abortion of justice.

I need not restate the facts surrounding this horrendous crime, committed when Petitioner was almost thirty years of age. It is significant to note, however, that Petitioner was the mastermind of an eight-person conspiracy to rob the Columbia Federal Savings and Loan. He went to the bank, armed with two loaded, sawed-off shotguns and two loaded revolvers. Although it was the bullet of his co-conspirator that killed Police Officer Gail Cobb, Dortch was obviously prepared to use deadly force to accomplish the goals of his criminal venture.[1]

Dortch was convicted of felony murder, attempted bank robbery and conspiracy. He was sentenced to prison for fifteen years to life, and released on parole in 1990. He graduated from law school in May, 1994, and applied for admission to the Maryland Bar in December, 1994. The Board of Law Examiners referred Petitioner's application to the Character Committee for the Sixth Judicial Circuit. Following an evidentiary hearing, the Committee recommended, by a 6-1 vote, that Petitioner be admitted to the Bar of Maryland. The State Board of Law Examiners decided that a formal hearing on the record on his fitness to practice law was

---

[1]    Petitioner testified at the hearing before the Character Committee of the Court of Appeals of Maryland for the Sixth Judicial Circuit that he envisioned firing "at most a warning shot, if any at all, a warning shot or something to get people's attention." It is patently obvious that sawed off shotguns are particularly deadly when fired, are not used for the purpose of firing warning shots.

– 4 –

unnecessary and instead conducted an informal hearing.[2] *Cf. In re Polin*, 596 A.2d 50, 55 n.7 (D.C. 1991) (noting that when applicant has committed a felony or other serious crime, committee should conduct an independent investigation into applicant's behavior). While the Board's finding that the applicant possesses the requisite moral character is entitled to great weight, this Court must make its own independent evaluation of the applicant's present moral character. *In re Application of Allan S.*, 282 Md. 683, 690-91, 387 A.2d 271, 276 (1978). The ultimate decision regarding admission to the Bar rests with this Court. *Id.* at 689, 387 A.2d at 275.

I recognize that this Court has joined with the majority of States in holding that there is no *per se* rule excluding all convicted felons from the bar. *See* Maureen M. Carr, *The Effect of Prior Criminal Conduct on the Admission to Practice Law: The Move to More Flexible Admission Standards*, 8 GEO. J. LEGAL ETHICS 367, 382-83 (describing majority approach of a presumptive disqualification for bar applicants convicted of a crime). Nonetheless, I believe

---

[2]    In my view, under the circumstances of the this case, the Board of Law Examiners should have held a formal hearing. The mere fact that a convicted murderer produces exemplary character references and has not committed a criminal act since his release from prison does not warrant an informal, off-the-record hearing by the Board of Law Examiners. In fact, all this Court knows about Petitioner is the information he chose to present. For example, we know little, if anything, about the business operation he headed in 1974, and the facts surrounding the sale of securities, which, at oral argument, Petitioner indicated were unregistered.

- 5 -

there are some crimes which are so serious that a *sufficient* showing of rehabilitation may be impossible to make. If any crime fits within that category, it is the murder of a police officer during the course of an attempted armed robbery of a bank. In this regard, the Supreme Court of New Jersey stated:

> An applicant's attitude and behavior subsequent to disqualifying misconduct must demonstrate a reformation of character so convincingly that it is proper to allow admission to a profession whose members must stand free from all suspicion. The more serious the misconduct, the greater showing of rehabilitation that will be required. . . . However, it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make. In all cases, the need to ensure the legitimacy of the judicial process remains paramount.

See *In re Matthews*, 94 N.J. 59, 462 A.2d 165, 176 (1983) (citations omitted). Murder, armed robbery, and conspiracy certainly qualify as "extremely damning past misconduct," thus making Petitioner's burden very heavy.

While agreeing with this Court that there is no litmus test to determine whether an applicant possesses good moral character, the District of Columbia Court of Appeals, in *In re Manville*, 494 A.2d 1289, 1296-97 (D.C. 1985) (*Manville I*), identified a list of factors the court found instructive in assessment of the moral fitness of applicant "whose backgrounds are tainted by criminal convictions." Those factors, intended to be illustrative and not exhaustive, read:

    1. The nature and character of the offenses committed.

- 6 -

2.  The number and duration of offenses.

3.  The age and maturity of the applicant when the offenses were committed.

4.  The social and historical context in which the offenses were committed.

5.  The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6.  The grant or denial of a pardon for offenses committed.

7.  The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8.  The applicant's current attitude about the prior offenses (*e.g.*, acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9.  The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10.  The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11.  The opinions of character witnesses about the applicant's moral fitness.

*Id.* at 1296-97 (footnotes omitted).  At best, this applicant satisfies only three the eleven factors, specifically numbers 9, 10 and 11.  He fails to satisfy his heavy burden.

Moreover, the Court's ruling gives insufficient weight to the integrity of the legal system.  In the related area of attorney discipline, we have consistently noted that the purpose of disciplining attorneys is to protect the public.  *Attorney Griev. Comm. v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995).  The public's interest is not served by the admission of a convicted

- 7 -

murderer, a person who has demonstrated the most profound disregard for the law and for human life.

Not only must we be concerned with protecting the public, but we must also consider the public's respect for and confidence in the judicial system.  I agree with the sentiments of Judge Terry on the District of Columbia Court of Appeals in *In re Manville*, 538 A.2d 1128, 1139 (D.C. 1988) (*Manville II*) (Terry, J., dissenting):

> The bar process is not . . . akin to the penal system where rehabilitation is one of the primary interests. The admissions process is aimed at selecting not only those persons who will honestly and competently handle their clients' interests, but also those persons who will not diminish respect for the legal profession as an institution . . . . Certainly the crimes involved here, murder, attempted armed robbery, and drug sales, are precisely the type of crimes which are serious enough to engender such public repugnance that admitting a person convicted of such a crime would seriously damage public confidence in the bar.

A person convicted of the murder of a police officer, attempted armed robbery, and conspiracy will not "'inspire the public confidence necessary to the proper performance of the duties of an attorney at law.'"  *In re Prager*, 422 Mass. 86, 661 N.E.2d 84, 94 (1996) (quoting *In re Keenan*, 50 N.E.2d 785 (Mass. 1943)).  The murder of a police officer, attempted armed robbery of a bank, and conspiracy rank among the most serious and repugnant crimes.  I believe Dortch's admission to the Bar would be detrimental to the integrity of the Bar and the public interest.

It is ironic to note that if Petitioner were permitted to practice law in this State, and if he were to be called as a

- 8 -

witness in any judicial proceeding, his credibility could be impeached with his criminal convictions. *See* Maryland Rule 5-609; *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994). In addition, he cannot vote in this State, MD. CONST. art. I, § 4, he cannot hold office in this State, MD. CONST. art. I, § 12, he cannot serve on a jury, Md. Code (1974, 1995 Repl. Vol., 1996 Cum. Supp.) § 8-207(b)(5) of Courts and Judicial Proceedings Article, and he cannot hold a liquor license, Md. Code (1957, 1996 Repl. Vol.) Art. 2B, § 10-103.

Finally, the past decisions of this Court fully support denying Dortch's application to the Bar without encouragement to reapply when and if he is released from parole. We have denied admission to applicants who have committed much less serious crimes. In *In re David H.*, 283 Md. 632, 641, 392 A.2d 83, 88 (1978), we found a lack of good moral character based on five theft offenses over five years, the most serious of which involved breaking into a car and stealing a tape deck. Larceny pales in comparison to the taking of a human life during an armed robbery. *See also In re Application of G.S.*, 291 Md. 182, 433 A.2d 1159 (1981) (denial of admission following conviction for petty thefts).

If the Court's ruling even remotely suggests that Petitioner's application will be granted when his parole ends, then I cannot join the Court's opinion because Petitioner has not met, and indeed probably cannot meet, the heavy burden of proving good moral

- 9 -

character after the commission of a crime so heinous as this one.[3] If this Court's ruling means that we shall defer the decision on this petition with no intention of admitting Petitioner, then this ruling is unfair to Dortch as it holds out false hopes. *Cf. Manville I*, 494 A.2d at 1298 (Nebeker, J., dissenting) ("This court does the public, our bar, and our Admissions Committee an injustice when it hedges on these facts and orders further investigation."). This petition for admission to the Bar of Maryland should be denied, without any suggestion that Petitioner reapply when his parole is terminated.

I am authorized to state that Judge Rodowsky joins in the views expressed in this opinion.

---

[3] It makes no sense to me for the Court to devote sixteen pages merely to state that we will not consider the application until Petitioner is released from parole.



**ARLINGTON COUNTY, VIRGINIA**
OFFICE OF THE SHERIFF
COURTHOUSE
1425 N. COURTHOUSE ROAD, ROOM 9100
ARLINGTON, VIRGINIA 22201
(703) 228-4460
DETENTION FACILITY
1435 N. COURTHOUSE ROAD
ARLINGTON, VIRGINIA 22201
(703) 228-7287 OR 7286

BETH ARTHUR
SHERIFF



December 28, 2006

Joseph Johnson, Jr.
607 Audrey Lane, 102
Oxon Hill, MD 20745
P-39585

Reference: Incarceration Dates

Dear Mr. Johnson

Per your request dated December 08, 2006 for your incarceration dates are as follows:



| | |
|---|---|
| 01/11/93 to 01/12/93 | Released to Bond |
| 08/11/95 to 10/26/95 | Released to Bond |
| 04/29/96 to 05/15/96 | Released to Federal Authority |
| 07/12/96 to 07/18/96 | Released to Federal Authority |
| 08/23/96 to 09/11/96 | Released to VA Department of Corrections |

Unfortunately we only keep hard copy of our files for 3 years. This is the only information I am able to certify. You will have to contact the Federal Authorities and DOC that detained you for further documentation.

If you need any further information you may contact records at (703)228-4486.

D. A. Grenier S410
Deputy Sheriff II
Case Manager



# COMMONWEALTH *of* VIRGINIA

**GENE M. JOHNSON**
**DIRECTOR**

*Department of Corrections*

P. O. BOX 26963
RICHMOND, VIRGINIA 23261
(804) 674-3000

December 14, 2006

Mr. Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, Maryland 20745

Re: Incarceration History — Former VSP # 239045

Dear Mr. Johnson:

This office is in receipt of your request for verification of incarceration within the Virginia Department of Corrections.

Your incarceration history is as follows:

**VSP# 239045**

| | |
|---|---|
| 05/15/2000 | Not Active — Discharged Direct |
| 11/19/1999 | Greensville Correctional Center |
| 05/08/1998 | Lunenburg Correctional Center |
| 07/15/1997 | St. Brides Correctional Center |
| 07/10/1997 | Deep Meadow Correctional Center — Returned from Court |
| 01/16/1997 | Out of State Court |
| 11/01/1996 | Deep Meadow Correctional Center — Returned from Court |
| 09/25/1996 | Northern Neck Regional Jail — Out to Court |
| 09/11/1996 | Deep Meadow Correctional Center — New Prisoner Received |

I trust this information is helpful to you.

Sincerely,

*J. Tiede*

J. Tiede, Research Specialist
Central Criminal Records

Cc: File



"Sarah Harlan"
<sharlan@dllr.state.md
.us>

02/02/2007 11:51 AM

To:
cc:  "ehoward" <ehoward@dllr.state.md.us>
Subject:  Re: Employment Restriction

As an attorney with the Department of Labor, Licensing and Regulation, I can only address legal matters. Obviously someone with such a conviction will have problems finding employment.

Julie Squire.

# Direct Loans

**William D. Ford Federal Direct Loan Program**

**DISCHARGE DENIED**

FALSE CERTIFICATION OR

UNAUTHORIZED SIGNATURE/PAYMENT

6/14/2007

JOE JOHNSON JR

607 AUDREY LN. APT 102
OXON HILL, MD  20745-2691



**Reason**
**For Notice**
Your loan(s) did not qualify for discharge for the reason(s) checked below:

| | |
|---|---|
| ☐ | Discharge Application not submitted and/or no response to our letter dated _____ |
| ☐ | Application still incomplete (another form is enclosed if you wish to resubmit). |
| ☐ | Student had a High School Diploma or GED at time of enrollment or received one before completing program of study at the school. |
| ☐ | Student received proper testing of the ability to benefit from the program of study before admission to the school. |
| ☐ | Student completed a developmental or remedial program at the school. |
| ☐ | After leaving school, student obtained a job in the occupation for which the school trained without further education or training. |
| ☐ | At the time the school certified or originated the loan(s), student met the legal requirements for employment in the state of residence in the occupation of the program of study. |
| ☐ | Signature sample documents either not received, not within the timeframe required, or do not clearly show that the signature in question was not yours. |
| ☐ | Information from another source (e.g., state licensing agency, school, Federal Student Aid (FSA) review) does not support a discharge. |
| ☒ | Other You must provide documentation proving you were denied for a license due to a criminal record. |

**Important**

| If loan(s): | Then we: |
|---|---|
| *In repayment** | Resumed collection of your loan(s) and granted a Forbearance of principal and interest for the period in which collection activity was suspended. You must resume repayment of your loan(s) immediately. We have capitalized any outstanding interest on the account. |
| *In school* | Show you leaving school on 06/30/2004 with a loan(s) balance of $30,259.06 and a grace period ending 06/30/2004. Your first payment of approximately $70.58 will be due two to six weeks after the grace period ends. |
| *In grace period* | Show your grace period will end 6/30/2004 and your first payment will be due two to six weeks after the grace period ends. |
| *\* PLUS loan(s) are considered in repayment within 60 days of final disbursement.* | |

If you have questions, please call our toll-free telephone number, which is **1-800-848-0979**. Hearing-impaired borrowers can call 1-800-848-0983.

DISKAV01

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*
U.S. Department of Education • P.O. Box 5609, Greenville, TX 75403-5609

166



August 17, 2007

Joseph Johnson Jr.
607 Audrey Ln. Apt 102
Oxon Hill, MD 20745-2691

RE:    False Certification Discharge
Account # xx

Dear Mr. Johnson:

We have received your student loan discharge request. You are requesting a false certification loan discharge under 34 C.F.R. § 682.402(e)(13)(iii) due to a criminal record that you say prevents you from finding employment in the legal field, whether in law enforcement, the practice of law, or working as a paralegal. After careful consideration, we have concluded that your request for discharge is denied.

You argue that "disqualifying status" false certification discharges must be provided even if the borrower has elected not to disclose that he or she has a physical, mental, or legal status or condition that would preclude employment in the field of study. We do not agree. The Department's discharge authority extends only to loans that are "falsely certified by the institution"; furthermore, the statute directs the Department to pursue repayment from the school. 20 U.S.C. § 1087(c). It is plain that Congress enacted the discharge provision to address instances of school misfeasance. Obviously, legislators could not have intended the provision to be used to reward borrowers who withhold pertinent information. See 34 C.F.R. § 682.603 (a school certifying a loan is entitled to rely in good faith on statements made on the application by the borrower).

In addition, you have failed to show that state law expressly or necessarily precludes an individual with your criminal record from being licensed to practice law or work in the legal field. The law says that every applicant must be of good moral character, but it appears that the Committee of Bar Examiners of the State Bar of Maryland has a great deal of discretion in this area. The Committee makes a determination as to whether an applicant is "of good moral character" based on a review of individual circumstances. The fact that a criminal record, or your record specifically, may (or may not) be one factor the Committee considers in deciding on moral character does not establish that record as a disqualifying status within the meaning of the discharge regulation under which you have applied. Your documentation shows that your criminal record would be a consideration for the State Bar, but you have not shown conclusively that you were in fact denied admission based on your criminal record, or that denial would be the only possibility. Your documents also show that only a small portion of your criminal record occurred before the loans were certified, and that your criminal record worsened quite a bit around the same time you withdrew from the school.

Furthermore, even if you had included allegations reflecting school misconduct, and had shown that your background precluded you as a matter of law from licensure as a lawyer, or being employed in law enforcement, we would still agree that you do not qualify for a "disqualifying status" discharge. This

50 Beale Street, Ste. 8600, San Francisco, CA 94105
www.FederalStudentAid.ed.gov
1-800-4-FED-AID

FEDERAL STUDENT AID    START HERE. GO FURTHER.

Page 2 -

kind of discharge provides relief based on a student's lack of "ability to benefit," <u>see</u> 34 C.F.R. § 682.402(e)(1)(i)(A); (e)(3)(ii)(B); (e)(13)), from the school's "training," <u>see</u> 34 C.F.R. § 682.402(e)(13)(iii). In particular, the concept of the disqualifying status regulation, 34 C.F.R. § 682.402(e)(13)(iii), is that certain *training* programs are so narrowly focused on a specific occupation that, for persons who are legally disqualified from employment in that occupation, such programs provide no benefit of any kind, either in terms of transferable educational credit or transferable occupational skills. <u>Cf.</u> 34 C.F.R. §§ 668.8(e)(3); (d)(1)(iii); (d)(2)(iii);(d)(3)(iii)(to be eligible for federal student aid, including loans, non-degree educational "training" must "prepare[] a student for gainful employment in a recognized occupation"); 600.2 (defining "recognized occupation" as one which is "listed in an 'occupational division' of the latest edition of the *Dictionary of Occupational Titles*, published by the U.S. Department of Labor"). While it is appropriate for the Department to discharge loans in such circumstances, the "disqualifying status" discharge is not targeted at borrowers who enroll in programs that lead to academic or advanced degrees, such as in law. Such programs involve credits readily transferable to other programs at other accredited institutions and support employment in a wide variety of fields and positions.

Admitting and enrolling a student is not a university's certification that a student will meet state requirements for taking the state bar exam, as the university does not administer or oversee the bar exam; nor is the school certifying that employment in your chosen field will be guaranteed. False certification of a student borrower's eligibility under §437(c) of the High Education Act, as amended, refers to requirements under the Federal Family Education Loan Program which require schools to certify that student borrowers were admitted based on a determination that they have the ability to benefit from the training offered by the institution. Misrepresentations by the school, on the other hand, regarding the school's educational program or its' financial or administrative capability, including the school's placement services or the quality of the school's facilities, faculty, or equipment are not part of the process of "certification" of the student's eligibility to borrow and do not entitle the borrower to false certification loan discharge. The regulations governing the administration of the student loan programs place the responsibility on the student for the selection of the school and the methods by which tuition and other necessary costs are paid. In the event of dissatisfaction with any part of the educational process, it is the position of ED that it is the student's obligation to seek redress through the available avenues such as the accrediting association or state agency that grants licenses to the schools.

The loans cannot be cancelled or reduced because the borrower is dissatisfied with, or did not complete, the education paid for by the loans. Because the defaulted loans in question are supported by promissory notes, signed by the student, they are legally binding and payment of the outstanding balance is expected to be made. More specifically, as you may be aware, not everyone who attends law school or holds a J.D. degree goes on to practice law or even intends to do so. Many former law school students and graduates use their legal training to obtain jobs in government, public policy, academia or business, among other fields. For most jobs in these fields, admission to the bar, or other licensure, is not required. Individuals who have attended law school can use this educational background to compete for and obtain jobs that might otherwise be closed to them, and may earn a higher salary than they would without such attendance. Some of the credits earned are likely to transfer in the event the student elects to change his or her course of study. It is clear that individuals who have attended law school benefit from their legal

Page 3 –

education (and their law degree if they earn one) in many ways. Such individuals do not establish entitlement to a "disqualifying status" discharge by showing that a criminal record may, or even has, precluded them from obtaining a license to practice law, or be employed in law enforcement. Moreover, the repayment of student loan obligations is not contingent upon the successful completion of the program of study, nor does the student loan program guarantee that any individual borrower will benefit financially from their schooling. The loan program only requires that schools properly certify the student's ability to benefit and eligibility to borrow at the time the loans are certified. There is no guarantee of employment that governs the obligation to repay student loans.

As a result of this determination, you continue to be responsible for repayment of the loans. For additional information regarding this matter, you may contact the Direct Loan Servicing Center (800) 848-0979.

Sincerely,

Janet Nori
Student Aid Entitlements
Processing Regional Office-San Francisco
Federal Student Aid/Borrower Services

cc: Direct Loan Servicing Center

June 26, 2007

# Narrative in Support of Loan Discharge Application: False Certification (Disqualifying Status)

On February 16, 1993, the borrower was indicted on two felony offenses in the Arlington County Circuit Court for burglary and grand larceny, and was placed on two-year probation effective March 21, 1993. Thereafter, on August 21, 1995, the borrower was indicted on two felony offenses in the Arlington County Circuit Court for forgery and uttering a public record, which offenses occurred on or about June 7, 1995. The borrower was subsequently convicted and sentenced to four years in prison for those offenses on April 29, 1996. See Attachments 1 and 2.

Moreover, between January 11, 1993 and May 15, 2000, the borrower was incarcerated in State and Federal prisons, and the offenses that led to the borrower's convictions occurred prior to and during a period of enrollment for which the borrower was receiving federal student aid and when the loans were originated. See Attachment 3.

The borrower enrolled at the school following his convictions to obtain a degree in legal studies. Prior to the borrower's enrollment at the school, the school never inquired of the borrower of any disqualifying status that would otherwise prevent the borrower from meeting the legal requirements for employment in the occupation for which the program of study was intended. In fact, the schools' policy did not require the borrower to inform the school that the borrower had a physical condition, mental condition, criminal record or incarceration status prior to enrollment. Nor did the school "ask any of that information" of the borrower. See Attachment 4.

The U.S. Department of Education has stated however that "[i]t is not required that the school be aware of the borrower's disqualifying condition when it certifies or originates the loan". See Attachment 5.

Before certifying or originate the loans, the school was responsible for verifying whether the borrower had a disqualifying status as defined under the Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations. The school failed to do so.

The borrower was unable to meet the legal requirements for employment in his state of residence in the occupation for which the program of study was intended at the time the school certified or originated the loans because of the borrower's prior felony criminal record and incarceration status.

A felony conviction is a ground for suspending, revoking, or denying a professional or occupational license in Maryland. Law Enforcement personnel are required to be licensed to carry firearms. A person convicted of a felony, a misdemeanor for which a sentence of

imprisonment of more than one year has been imposed, or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, 36E(a)(2),(e); 36E(f). See Attachment 6.

The Maryland Court of Appeals has held that Larceny pales in comparison to the taking of a human life during an armed robbery and is a sufficient basis to deny a license to practice law in Maryland. See In re Application of G.S., 291 Md. 182, 433 A.2d 1159(1981)(denial of admission following conviction for petty thefts). In re John Curtis Dorth, Misc. No. 16, September Term, 1996. See Attachment 7.

The Maryland Department of Labor, Licensing and Regulation has stated that "obviously someone with such a conviction will have problems finding employment". See Attachment 8.

The U.S. Department of Education has stated that "there is no requirement that the borrower apply for and be denied the license". See Attachment 9

In sum, at the time the school certified or originated the loans, the school knew of the borrower's status prior to enrollment or should have known of the borrower's status but failed to inquire as was required of all Federal student loans. The borrower was unable to meet the legal requirements to pursue any occupation in Law Enforcement, or obtain a license to practice law in the State of Maryland, or obtain employment as a Paralegal for which the program of study was intended; at the time the school certified or originated the loans. The borrower's criminal record and incarceration status prevented the borrower from pursuing employment in his state of residence in the occupation for which the program of study was intended because there would certainly be some security questions or background checks that would be necessary for obtaining employment in the occupational field that was intended.

Accordingly, the loans should be discharged based on false certification due to these disqualifying statuses at the time the school certified or originated the loans.

September 7, 2007

# Narrative in Support of Loan Discharge Application: False Certification (Disqualifying Status)

## Introduction:

This is a Loan Discharge Application made pursuant to the Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations, which state that a loan may be discharged if the student had a condition or status—including one based on physical or mental condition, age, or criminal record— that prevented the student from satisfying the physical or legal requirements of his or her state for admission to the program or from performing the occupation for which the program of study was intended to prepare the student.

FFELs comprise FFEL Stafford Loans, FFEL PLUS Loans and FFEL Consolidation Loans. Direct Loans comprise Direct Stafford Loans, Direct PLUS Loans and Direct Consolidation Loans.

Thus, to qualify for a loan discharge based on false certification due to a disqualifying status, the borrower (or, for PLUS Loan borrowers, the student) must have been unable-at the time the school certified or originated the loan-to meet the legal requirements for employment in the borrower's state of residence (or, for PLUS Loan borrowers, in the student's state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, **criminal record,** or **other reason.** (Emphasis added).

As discussed below, the borrower meets the qualification for a loan discharge based on false certification because at the time the school certified or originated the loan, the borrower was unable to meet the legal requirements for employment in the State of Maryland in Law Enforcement for which the program of study was intended because of the borrower's criminal record.

In addition, the borrower's eligibility to receive title IV, HEA program assistance was falsely certified by the school when the school certified that the borrower was not incarcerated.

## A.     THE BORROWER'S DISQUALIFYING STATUS

On February 16, 1993, the borrower was indicted on two felony offenses in the Arlington County Circuit Court for burglary and grand larceny, and was sentenced to two-year probation on March 21, 1993. Thereafter, on August 21, 1995, the borrower was indicted on two felony offenses in the Arlington County Circuit Court for forgery and uttering a public record, which offenses occurred on or about June 7, 1995. The borrower

was subsequently convicted and sentenced to four years in prison for those offenses on April 29, 1996. See Attachments 1 and 2.

The borrower was incarcerated in State and Federal prisons between January 11, 1993 and May 15, 2000 for offenses that occurred prior to and during the period of enrollment for which the borrower was receiving federal student aid and when the loans were originated. See Attachment 3.

The borrower's above criminal record and incarceration status is a disqualifying status within the meaning of the Loan Discharge regulation.

B.      THE PROGRAM OF STUDY WHICH WAS INTENDED

The school upon which the borrower enrolled offered programs in Legal Studies, Criminal Justice, and Public Safety which were designed to help students prepare for—or advance in—careers in criminal justice, government and politics, legal studies, or fire science. See Attachment 4.

At the time the undersigned was enrolled at the school, courses in paralegal studies[1] were designated PLGL in the school's undergraduate catalog and required ten paralegal studies courses, at least eight of which must have been taken at the school and 30 semester hours of additional college course work (including ENGL 101 Introduction to Writing) to obtain a paralegal studies document. See Attachment 5.

The borrower enrolled in the school's paralegal studies training program that specifically and exclusively intended to prepared the borrower for employment in the "legal environment". The borrower's transcript of courses attempted at the school demonstrate that the undersigned was registered in PLGL340 – Contract Law, PLGL411 – Consumer-Protection Law, PLGL322 – Evidence, PLGL325 – Litigation, PLGL312 – Torts, PLGL201 – Legal Writings, PLGL200 – Techniques of Legal Research, PLGL223 – Investigative Techniques, PLGL101 – Introduction to Paralegal and PLGL204 – Legal Ethics/Law Office systems. See Attachment 7.

These courses were required courses in the paralegal studies training program which were necessary to specifically and exclusively prepare the borrower for employment in the "legal environment". See Attachments 5 and 6.

C.      LEGAL REQUIREMENTS FOR EMPLOYMENT IN THE STATE OF MARYLAND IN LAW ENFORCEMENT, GENERALLY.

A felony conviction is a ground for suspending, revoking, or denying a professional or occupational licensee in Maryland. Law Enforcement personnel are required to be licensed to carry firearms. A person convicted of a felony, a misdemeanor for which a sentence of imprisonment of more than one year has been imposed, or a

---

[1] The school's "paralegal studies" program was recently renamed to "legal studies" program and is now designated as LGST in the school's current undergraduate catalog. See Attachment 6.

2

misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, 36E(a)(2),(e);36E(f). See Attachment 8.

The Maryland Court of Appeals has held that Larceny pales in comparison to the taking of a human life during an armed robbery and is a sufficient basis to deny a license to practice law in Maryland. See In re Application of G.S., 291 Md. 182, 433 A.2d 1159(1981)(denial of admission following conviction for petty thefts). In re John Curtis Dorth, Misc. No. 16, September Term, 1996. See Attachment 9.

The Maryland Department of Labor, Licensing and Regulation have made it quite clear that "obviously someone with a felony criminal conviction will have problems finding employment". See Attachment 10.

Thus, a felony criminal conviction in Maryland would either bar employment or make obtaining employment in the legal field all but impossible.

The borrower was unable to meet the legal requirements to pursue any employment in the legal field for which the program of study was intended because of his criminal record and incarceration status, and a security background investigation would disqualify the borrower for almost any employment either in legal studies or any occupation which the borrower could reasonably use the educational training.

Accordingly, the loans must be discharged because the borrower was unable – at the time the school certified or originated the loans – to meet the legal requirements for employment in his state of residence in the occupation for which the program of study was "intended" because of the borrower's criminal record and incarceration status. The occupation for which the program of study was "intended" was in "legal studies" and as discussed infra, the borrower did not meet the legal requirements for employment in that occupation at the time the school certified or originated the loans.

D.    THE BORROWER'S ELIGIBILTY TO RECEIVE FEDERAL FINANCIAL AID WAS FALSELY CERTIFIED BY THE SCHOOL

Pursuant to 34 CFR §668.32(c)(2)(ii) a student is eligible to receive title IV, HEA program assistance if the student "*is not incarcerated in a Federal or State penal institution*". (Emphasis added). An incarcerated student is defined under 34 CFR §600.2, as a student who is "serving a criminal sentence in a Federal, State, or local penitentiary, prison, jail, reformatory, work farm, or other similar correctional institution"

The borrower was incarcerated in State and Federal jails and prisons serving both State and Federal sentences between January 11, 1993 and May 15, 2000. See Attachments 3.

On each of the promissory notes, the school falsely certified the borrower's eligibility. At the time the school made each of the certifications the borrower was not eligible to receive a Pell Grant nor was the borrower eligible to receive any title IV, HEA

3

program assistance because at the time of the school's certification, the school knew or should have known that the borrower was incarcerated in State and Federal jails and prisons. Under the Act, a student is ineligible to receive federal financial Aid during the period of his incarceration. Thus, the student/borrower was not eligible for Federal Financial Aid at the time the school certified each of the loans. See Attachment 11.

Accordingly, the borrower's eligibility was "falsely certified by the institution" and a discharge of the loans is required.

4

## School of Undergraduate Studies – Programs



### Legal Studies, Criminal Justice, and Public Safety

These UMUC programs are designed help you prepare for—or advance in—careers in criminal justice, government and politics, legal studies, or fire science. Each program provides a unique combination of academic and theoretical context with workplace-specific knowledge and skills designed to prepare you for today's demanding professions.

#### Majors:

- Criminal Justice
- Emergency Management
- Fire Science
- Homeland Security
- Investigative Forensics
- Legal Studies
- Political Science

#### Minors:

- Criminal Justice
- Emergency Management
- Forensics
- Fire Science
- Homeland Security
- Political Science



# UMUC



## 1998-1999 *Undergraduate* Catalog

One or more upper-level courses in computing, statistics, cost accounting, business finance, business law, and economics are also recommended to provide a broad perspective on management.

## Mathematics

The mathematics specialization studies number systems and their relationships, generally using rigorously defined numerical and operational symbols. The applications of mathematics form an important component of other specializations, many of which require competence in areas such as algebra, analysis, statistics, and computational and applied mathematics. A knowledge of mathematics also helps in interpreting data and organizing information in many areas, including computer science, psychology, and business management.

### Scope
The mathematics specialization focuses on abstract algebra, real analysis, differential equations, applied probability and statistics, number theory, and logic for computer science. Students can choose from an application-oriented or a theory-based principal area of specialization.

### Goals
The mathematics specialization produces graduates who have an understanding of the nature and importance of mathematics in the world and human endeavor and the ability to exhibit written and oral communication skills consistent with the mathematics and professional environment. Studies in mathematics also help adult learners become mathematically mature, expert problem solvers and reasoners with complex, technical materials. Graduates are prepared for careers in a wide variety of mathematical or statistical fields, including education, engineering, statistics, technical research, and actuarial work.

### Objectives
The student who graduates with a specialization in mathematics will be able to
- Demonstrate an understanding of the theories and reasoning skills in the analysis of a specific area or situation, such as linear algebra, advanced calculus, differential equations, or testing hypotheses.
- Use appropriate tools and software in the formulation and generation of solutions to problems.
- Demonstrate knowledge of content in diverse areas of mathematics.
- Demonstrate the utility of mathematics in the world.
- Interpret mathematical research projects.
- Demonstrate proficiency in written assignments and oral presentations.

### Specialization Requirements
A primary specialization in mathematics requires the completion of 24 semester hours from courses in mathematics and statistics. At least 15 of the 24 semester hours must be in courses numbered 300 or above.

## Paralegal Studies

The paralegal studies specialization focuses on those legal concepts, procedures, and skills that are utilized in a wide variety of legal environments. Paralegal studies prepares students for challenging and responsible work in the legal environment. Paralegals work with attorneys, performing tasks that require substantive and practical legal knowledge. Career opportunities include positions in law firms, government agencies, legal services offices, corporations, professional and trade associations, banks, real estate organizations, publishing companies, and other public- and private-sector businesses.

### Scope
The paralegal studies specialization addresses the organization, functions, and processes of institutions in the U.S. legal system, roles and issues in the paralegal field, legal ethics, and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization, and specialized legal skills.

### Goals
Students who specialize in paralegal studies will be prepared to participate as efficient and effective members of legal teams. They will be able to apply their acquired knowledge and skills in a wide variety of legal settings.

### Objectives
The student who graduates with a specialization or completes a document in paralegal studies will be able to
- Explain the basic constitutional principles of the U.S. legal system.
- Explain, both in speaking and in writing, legal topics and analyses.
- Discuss issues relevant to the paralegal profession.
- Recognize and discuss ethical considerations involved in the practice of law.
- Explain basic concepts in selected specialty areas of legal practice.
- Describe basic procedures in litigation.
- Identify ways that computers can assist in the legal environment.
- Analyze facts, law, and legal issues.

41

 

September 6, 2007

Mr. Joseph Johnson
607 Audrey Lane, #102
Oxon Hill, MD 20745

Re:    Loan Discharge Appeal

Dear Mr. Johnson:

This responds to your letters to me dated May 15 and June 26, 2007. You requested discharge of Federal Direct student loans under False Certification, Disqualifying Status, asserting you could not meet requirements established by State law for employment in your field of study. On two separate occasions, our Direct Loan servicer denied your application. You wish to appeal those decisions, asserting that Direct Loans used an invalid basis for denial.

The Higher Education Act of 1965, as amended (HEA), establishes discharge requirements under the circumstances you describe. These requirements are implemented through regulation at 34 C.F.R. 685.215(a), which states:

Basis for discharge — (1) False certification. The Secretary discharges a borrower's (and any endorser's) obligation to repay a Direct Loan in accordance with the provisions of this section if a school falsely certifies the eligibility of the borrower (or the student on whose behalf a parent borrowed) to receive the loan. The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school—

(iii) Certified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.

To be eligible for discharge, the borrower must provide convincing documentation that supports the discharge request.

830 First St. N.E., Washington, DC 20202
www.FederalStudentAid.ed.gov
1-800-4-FED-AID

FEDERAL STUDENT AID ✎ START HERE. GO FURTHER.

Mr. Joseph Johnson
September 6, 2007
Page 2 of 3

To support your eligibility for this discharge, you provided a narrative; copies of court documents showing your convictions; dates of incarceration; and State laws you deemed relevant to your circumstance. While your application simply states that your program of study was law, your narrative makes reference to employment in three specific areas: law enforcement, with emphasis on your inability to obtain a license to carry a firearm; admission to the Maryland State Bar to practice law; and as a paralegal.

Based on my review of the documents you provided, federal regulations governing discharge of student loans, and records available to me, you do not meet the criteria for discharge on the basis of False Certification, Disqualifying Status. The basis for my determination is as follows:

There are no records that indicate you were enrolled in a training program that specifically and exclusively prepared you for employment in law enforcement or as a paralegal, nor were you enrolled in law school.

Although my basis for determining that you would not be eligible for discharge differs from that provided by Direct Loans, that denial is upheld.

Sincerely,

Jeff Baker
Director
Policy Liaison and Implementation

C:       Direct Loans

 

September 25, 2007

Mr. Joseph Johnson
607 Audrey Lane, #102
Oxon Hill, MD 20745

Re:    Loan Discharge Appeal

Dear Mr. Johnson:

This acknowledges receipt of your September 10, 2007 request for reconsideration of my denial of your student loan discharge request based on False Certification, Disqualifying Status. Your request is based on information you believe wasn't considered during my initial review of this matter.

The information you presented was already considered in past determinations of your requests for discharge, including mine. You do not meet the statutory or regulatory requirements for discharge based on False Certification, Disqualifying Status.

With respect to loan disbursement while you were incarcerated, your assertion doesn't appear to be accurate. Records show your loans were disbursed on the following dates:

| LOAN PERIOD | DISBURSEMENT 1 | DISBURSEMENT 2 |
|---|---|---|
| 09/07/1993-05/10/1994 | 01/03/1994 | N/A |
| 09/06/1994-05/09/1995 | 08/22/1994 | 01/09/1995 |
| 09/06/1994-05/09/1995 | 08/22/1994 | 01/09/1995 |
| 09/06/1994-05/09/1995 | 03/09/1995 | N/A |
| 09/05/1995-05/12/1996 | 01/23/1996 | N/A |
| 09/05/1996-05/12/1996 | 01/23/1996 | N/A |

Records you provided showed that, you were incarcerated from 01/11/1993 through 01/12/1993, then from 08/11/1995 through 10/26/1995, 04/29/1996-05/15/1996[1]. While I note that one of your loan periods overlaps dates of incarceration, those loans were

---

[1] Your records showed you were incarcerated on dates subsequent to 08/15/1996, but those dates are not relevant to your discharge request.

830 First St. N.E., Washington, DC 20202
www.FederalStudentAid.ed.gov
1-800-4-FED-AID

FEDERAL STUDENT AID    START HERE. GO FURTHER.                    356

Mr. Joseph Johnson
September 25, 2007
Page 2 of 2



neither certified nor disbursed while you were incarcerated. As such, your request for reconsideration is denied.

No further consideration or response will be made to you regarding this matter.

Sincerely,

Jeff Baker
Director
Policy Liaison and Implementation

C:     Direct Loans

357

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
| --- | --- |
| **JOSEPH JOHNSON, JR.** | ) |
|  | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Civil Action No. 07-2183 (JR)** |
|  | ) |
| **U.S. DEPARTMENT OF EDUCATION, <u>et al</u>.** | ) |
|  | ) |
| **Defendants.** | ) |

_____)

## ORDER

Upon consideration of federal defendant's motion for summary judgment, the opposition and reply thereto, and after review of the entire record, it is this ____ day of _____

ORDERED, that said motion is granted. Summary Judgment is entered on behalf of the federal defendant and the claims against the U.S. Department of Education are dismissed, with prejudice.

_____
United States District Judge

JOSEPH JOHNSON, JR.
607 Audrey Lane #102
Oxon Hill, MD 20745

Defendants Served by ECF filing