## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH JOHNSON, JR.                     )

    Plaintiff,                          )

Vs.                                     ) Civil No. 07-02183 (JR)

U.S. DEPARTMENT OF EDUCATION, et al.,   )

    Defendants.                         )

**RECEIVED**

APR 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, Joseph Johnson, Jr., and MOVES this Court for

summary judgment, pursuant to Fed. R. Civ. P. 56, and files his Opposition to the

Defendant's motion for summary judgment, and in Support thereof, he states:

This case arises under the Higher Education Act, 20 U.S.C. §1087(c), and the

Administrative Procedure Act, 5 U.S.C. §706. The Plaintiff brought this action seeking

declaratory and injunctive relief based upon the Defendant's failure and refusal to

perform her duty to discharge the Plaintiff's loans under 20 U.S.C. §1087(c).

The Defendant has moved the Court for Summary Judgment on the basis, among

other things, that Plaintiff is not entitled to a "Disqualifying Status" discharge.[1]

As will be discussed more fully below, the Plaintiff is entitled to a "Disqualifying

Status" discharge because at the time of Plaintiff's enrollment at the school Plaintiff did

---

[1] The Defendant seeks summary judgment on some matters which are not pertinent to any of the allegations contained in the First Amended Complaint. Most relevant to the issue in this case is the entitlement to discharge based upon a disqualifying status false certification provision contained in relevant statutes and regulations. Thus, Plaintiff's summary judgment motion and his opposition to Defendant's summary judgment motion are confined to that issue as it relates to the First Amended Complaint.

not have the "ability to benefit" from the Paralegal certification training because of his existing criminal record.

The Court is respectfully referred to the accompanying statement of material facts[2], memorandum of points and authorities, and additional attached excerpts from the administrative record.[3] A proposed order is also attached.

Respectfully submitted,

April 25, 2008

Joseph Johnson, Jr.
2600 Brinkley Road #1005
Fort Washington, MD   20744

---

[2] Statement of Material Facts will be denoted as "SMF" where necessary to make reference.
[3] Most relevant to the issue presented in this case is Plaintiff's criminal record as it existed prior to his enrollment at the school. While the Defendant provided the court with some of the materials from the administrative record, however, they conveniently omitted all of the documentation pertaining to Plaintiff's criminal record.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JOHNSON, JR. | ) |
| Plaintiff, | ) |
| Vs. | ) Civil No. 07-02183 (JR) |
| U.S. DEPARTMENT OF EDUCATION, et al., | ) |
| Defendants. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Introduction**

The resolution of the parties' summary judgment motions in this action turns on a single issue, namely whether the Plaintiff had the "ability to benefit" from the Paralegal certification training program offered by the school because of Plaintiff's criminal record at the time of his enrollment into the Paralegal certification training program.

### FACTUAL BACKGROUND

On February 16, 1993, Plaintiff was indicted and convicted in the Arlington County Circuit Court for burglary and grand larceny. Thereafter, on August 21, 1995, Plaintiff was indicted in the Arlington County Circuit Court for forgery and uttering a Circuit Court order. On April 29, 1996, Plaintiff was convicted of the latter two felonies and began serving a five year prison term. SMF, ¶1 .

Following the Plaintiff's criminal convictions, and during the Fall of 1993, Plaintiff enrolled in the University of Maryland University College ("UMUC") Paralegal

certification training program.[4] This training program specifically intended to prepare the Plaintiff for employment as a Paralegal. SMF, ¶2.

UMUC arranged for Plaintiff to sign loan documents for Guaranteed Student Loans ("GSL") to pay tuition and fees for the UMUC program. The loan forms were provided by the Higher Education Assistance Foundation and the loans were disbursed between September 7, 1993 and May 12, 1996.[5] SMF, ¶4.

On or about June 18, 2004, the GSL signed by Plaintiff were consolidated and are held by the Department of Education.[6] SMF, ¶8.

On November 20, 2006, Plaintiff submitted a request for discharge of his student loans under the false certification provisions of 20 U.S.C. §1087(c), including a sworn statement showing that he met the statutory requirements for discharge. The Defendant, through its officials holding delegated authority, denied the Plaintiff's request on May 7, 2007 on the basis that the Plaintiff did not inform the school of his status prior to enrollment. SMF, ¶9.

Plaintiff sought reconsideration of that determination on May 15, 2007, and essentially argued that 20 U.S.C. 1087(c) did not require the borrower to inform the school of his status prior to enrollment and that the school did not inquire of Plaintiff's status prior to enrollment. SMF, ¶10.

---

[4] The United States Department of Labor recognizes a Paralegal as profession in the Occupational Outlook Handbook.

[5] The Plaintiff did not complete or obtain a certification in the Paralegal training program because of his incarceration status.

[6] The current balance on the consolidated loan is $32,143.60, of which Plaintiff has voluntarily paid $2,977.32.

In a generic letter dated June 14, 2007, the Defendant, through its officials holding delegated authority, denied Plaintiff's request for reconsideration and stated that Plaintiff did not provide any documentation proving that he was denied for a license due to a criminal record. SMF, ¶11.

Plaintiff sought review of both of these decisions by the Defendant and, by decision dated September 6, 2007, the Defendant expressly acknowledged that "[t]he Higher Education Act of 1965, as amended (HEA), establishes discharge requirements under the circumstances Plaintiff described in his loan discharge application" but specifically denied Plaintiff's request for discharge on the basis that there were no records that indicated that Plaintiff was enrolled in a training program that specifically and exclusively prepared him for employment in law enforcement or "as a Paralegal", and because Plaintiff was not enrolled in law school. SMF, ¶12.

Despite the fact that on September 10, 2007, Plaintiff provided specific documentation to the Defendant that unequivocally indicated that he was enrolled in the UMUC Paralegal certification training program that intended to prepare him for employment as a professional paralegal, on September 25, 2007, the Defendant affirmed its decision of September 10, 2007. SMF, ¶13.

The Secretary's denial of Plaintiff's loan discharge, even after Plaintiff provided the specific documentation that unequivocally indicated that he was enrolled in the UMUC Paralegal certification training program, was arbitrary, capricious and an abuse of her authority and was done out of accordance with law. It is because of the latter decision by the Defendant, that Plaintiff brought this action seeking declaratory and injunctive

relief based upon the Defendant's failure and refusal to perform her duty to discharge the Plaintiff's loans under 20 U.S.C. §1087(c).

### Legal Argument

In 1992, in response to public concern about schools that defrauded students by falsely certifying their ability to benefit and then providing them worthless training, Congress provided that if a "student's eligibility to borrow under this part was falsely certified by the eligible institution ... then the Secretary shall discharge the borrower's liability on the loan." 20 U.S.C. §1087(c)(1). A student must submit a written statement affirming that he was admitted to a school on the basis of ability to benefit but did not satisfy the ability to benefit requirements.

Thus, in order to be eligible to receive the proceeds of a guaranteed student loan, an institution, such as the University of Maryland University College must, among other requirements, admit as regular students only persons who have the "ability to benefit" from the training offered by the institution. 20 U.S.C. §1085(c); 34 C.F.R. §600.7(a) (1988).

The Defendant's own regulations state that a student did not have the ability to benefit from the training offered by the school if the school certified the eligibility of the student for a FFEL Program loan; and at the time of certification, the student would not meet the requirements for employment in the occupation for which the training program supported by the loan *was intended* because of a physical or mental condition, age, or criminal record or other reason accepted by the Secretary. (emphasis added). 34 C.F.R. §682.402(e) (13) (iii) (A) (B).

Here, it is undisputed that between February 1993 and April 1996, Plaintiff was convicted of various felony offenses in Virginia, SMF, ¶1, and that following Plaintiff's various felony convictions, Plaintiff enrolled at the UMUC to obtain a certification in the school's Paralegal training program. SMF, ¶2. These are relevant facts which can not be disputed and which are not in dispute.

Prior to the Plaintiff's enrollment at the school, the school did not inquire of the Plaintiff's criminal record to determine whether Plaintiff had the "ability to benefit" from the school's Paralegal certification training program and, in fact, the school "do not ask that information". SMF, ¶6.

Although the Defendant contends that the Secretary in promulgating the "disqualifying status" discharge regulation noted that "a school is not required to obtain records of a student's mental or physical condition or criminal record prior to certifying a loan application", however, as the Defendant well knows, federal law restricts student eligibility for federal grants, federally subsidized loans, and federal work-study programs.

Specifically, pursuant to 20 U.S.C. §1091, "[a] student who is convicted of any offense under any Federal or State law involving the possession or sale of a controlled substance for conduct that occurred during a period of enrollment for which the student was receiving any grant, loan, or work assistance under this title shall not be eligible to receive any grant, loan, or work assistance . . . from the date of that conviction for the period of time specified" under the statute.(emphasis added). Thus, given the clear language of this statute a school would be required to obtain records of a student's criminal record prior to certifying a loan application, otherwise, persons convicted of

these specific felons could, contrary to statute, routinely obtain federal grants, loans and work assistance.

In any event, the sole issue which is in dispute in this case, and which the Court is called upon to decide is whether the Plaintiff had the "ability to benefit" from the Paralegal certification training program offered by UMUC because of Plaintiff's criminal record. For purpose of the relevant statue, the Paralegal certification training program offered by UMUC was the occupation for which the training program supported by the loan *was intended.*[7]

Based upon Maryland employment law, the Plaintiff did not, as a matter of law, have the "ability to benefit" from the Paralegal certification training program offered by UMUC because of Plaintiff's criminal record and, the Defendant's motion seeking summary judgment must be denied..

A.   **EMPLOYMENT AND LICENSING IN MARYLAND**

As a result of their criminal convictions, ex-offenders in Maryland face various collateral consequences regarding employment and licensing. Maryland has established collateral sanctions through statutory prohibitions, licensing, and statutorily required and optional background checks. There are several statutory prohibitions within the Maryland Code disqualifying persons convicted of certain types of crimes from employment and licensing. Many more of these consequences, however, are enforced primarily by licensing agencies, which have the authority to deny licenses based on the applicant's

---

[7] The Defendant contends that the courses and programs in which Plaintiff enrolled were applicable to a broad range of degrees and careers. This argument has no merit since the "intended" occupation was the Paralegal certification training program offered by UMUC. Moreover, the United States Department of Labor has stated that "among the other occupations that call for a specialized understanding of law but do not require the extensive training of a lawyer, are law clerks; title examiners, abstractors, and searchers; claims adjusters, appraisers, examiners, and investigators; and occupational health and safety specialists and technicians." See, SMF ¶3.

criminal history, and by employers, who can use the result of statutorily required and optional background checks to reject applicants based on their criminal records.

This structure affords state licensing agencies enormous discretion to determine whether a person is suitable to be licensed based on several factors, including criminal background. As a result of this mandatory or optional criminal background check, an ex-offender may be denied the ability to obtain a license or permit. For example, an ex-offender in Maryland could find herself unable to secure employment as a cosmetologist because the relevant licensing board has the discretion to deny the license application on the basis of a felony or misdemeanor conviction. See *Md. Code Ann., Bus. Occ. & Prof.* 5-314(a)(1)(vii)(1)&(2) (Supp. 2006).

The following sets forth some of the effects that criminal convictions can and do have on employment and licensing opportunities in Maryland.

    *1.*    *Explicit Statutory and Regulatory Prohibitions*

        a.  **Education**

Several statutes and regulations explicitly prohibit persons who have been convicted of certain types of crimes from employment and/or licensing. In the education field,

[t]he State Board shall adopt regulations that prohibit a county board from knowingly hiring, as a non-certified employee, any individual who has been convicted of a crime involving:

        1)    An offense under §3-307 of the Criminal Law Article;

2)    Child sexual abuse under §3-602 of the Criminal Law Article, or an offense under the laws of another state that would constitute child sexual abuse under §3-602 of the Criminal Law Article if committed in this State; or

3)    A crime of violence as defined in §14-101 of the Criminal Law Article, or an offense under the laws of another state that would be a violation of §14-101 of the Criminal Law Article if committed in this State. Md. Code Ann., Educ. §6-113(a)-(3) (2004).

      b.    **Health and Mental Hygiene**

Individuals are disqualified from employment as personal care aides or respite care workers if they "have been convicted of, received a probation before judgment for, or entered a plea of *nolo contendere* to a felony or any crime involving moral turpitude or theft, or have any other criminal history that indicates behavior which is potentially harmful to participants." Md. Code Regs. 1.09.54.06(B)(6)(2006)(personal care aides); MD. Code Regs. 10.09.54.07(D)(2)(2006)(respite care workers).

Similarly, regulations governing assisted living programs prohibit the employment of staff who have criminal convictions or criminal histories "that indicate[] behavior that is potentially harmful to residents, as evidenced through a criminal history records check or a criminal background check." Md. Code Regs. 10.07.14.17(B)(4)(2006).

Lastly, a licensee of a program designed for individuals with development disabilities "may not employ or contract with any person who has a criminal history which would indicate behavior potentially harmful to individuals," which is likewise

documented through either a criminal history records check or a criminal background check. Md. Code Regs. 10.22.02.11(B)(2006).

### c.    **Corrections**

Maryland also has prohibitive regulations regarding employment in the corrections field. An applicant for appointment as a uniformed correctional officer shall be disqualified if he or she has been convicted of certain felony or misdemeanor offenses. Md. Code Regs. 12.10.01.17(A)(2006); see also, Md. Code Ann., Corr. Servs. §8-208(a) (Supp. 2006).

### 2.    *Licensing and Statutorily Required and Optional Background Checks*

Maryland primarily regulates the employment field through licensing agencies and by requiring or giving employers the option to conduct criminal background checks before they hire individuals. According to the licensing agency list in the *Maryland Trial Judges' Benchbook*, countless employment opportunities within Maryland require a license or permit. See *Maryland Institute for Continuing Professional Education of Lawyers, Inc., Maryland Trial Judges' Benchbook* 148-97 (1999). This list of over 500 occupations is broad, as examples include architects, attorneys, barbers, bus drivers, dry cleaners, physicians, physician's assistants, welders, and youth camp operators.

### a.  **Statutorily Required Background Checks**[8]

In many instances, licensing agencies are required to conduct background checks. These agencies use the results of these checks as a factor in determining whether to issue

---

[8] Under federal law, a background investigation is a job requirement under 5 C.F.R. 731 or 732. In the federal sector, suitability refers to identifiable character traits and conduct sufficient to decide whether an individual is likely or not likely to be able to carry out the duties of a Federal job with appropriate integrity, efficiency, and effectiveness. Suitability is distinguishable from a person's ability to fulfill the qualification requirements of a job, as measured by experience, education, knowledge, and skills and, criminal or dishonest conduct are among a few factors that are considered as a basis for finding an individual unsuitable for federal employment. 5 C.F.R. §731.

the specific license. Often, the mere existence of a criminal record can be grounds for denial. For example, individuals applying for a taxicab license must subject themselves to mandatory criminal background checks. Md. Code Ann., Pub. Util. Cos. §10-104(a)(1)(v) (Supp. 2006). In turn, "[t]he Commission may deny an applicant a license or suspend or revoke the license of a licensee if the applicant or licensee has been convicted of a crime that bears a direct relationship to the applicant's or licensee's fitness to serve the public as a for-hire driver." §10-104(e). Thus, the various agencies have enormous discretion to prohibit ex-offenders from obtaining licenses.

      b.    **Optional Background Checks and the Negligent Hiring Doctrine**

The Maryland Rules of Professional Conduct, 5.3, does not define paralegals but considers "paraprofessionals" as non-lawyer assistants. The rule states that lawyers must directly supervise their assistance and are responsible for their assistants' conduct.

There are some situations where criminal background checks are optional, rather than required. In these instances, an employer has the option of reviewing an applicants criminal record as part of the application and hiring processes. For example, Anne Arundel, Howard, Washington, and Prince George's Counties may request a state and national criminal history records check from the Central Repository for any prospective employee of their respective counties. Md. Code Ann., Crim. Proc. §§10-231(a)(2001)(Anne Arundel County), 10-233(a)(2001) (Howard County), 10-235(b)(1)-(2) (Supp. 2006) (Washington County), 10-236 (Supp. 2006) (Prince George's County).

Hence, these employers have vast discretion to deny employment opportunities to ex-offenders based solely on their criminal records.

Even in circumstances where criminal background checks are not mandatory or explicitly set forth as option, the Negligent Hiring Doctrine may compel employers to investigate each applicant's criminal background. Pursuant to this doctrine, "employers are potentially liable for hiring or retaining employees who are unfit and who consequently injure a third person." Cramer v. Housing Opportunities Comm'n, 501 A.2d 35, 39, 304 Md. 705, 713 (1985). Thus, in situations where a plaintiff asserts the claim based on the employee's past criminal record, courts will analyze whether the employer had a duty to conduct a criminal background check. Among the factors to be assessed in this regard include the availability of the information, as well as "the cost, inconvenience, and delay in obtaining it." The duty of an employer is to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. Henley v. Prince George's County, 305 Md. 320 (1986).

Employers generally do not need to inquire about an employee's criminal record, however, an inquiry may be required for jobs where the employee's tasks places third parties at risk of harm. Id. at 40-41, 304 Md. at 715-16.

The most recent list of disqualifying offenses issued by the Maryland Office of the Attorney General, dated July 2004, was 21 pages long and included as "infamous crimes" a large number of offenses that appear at least potentially to be misdemeanors. See also Theiss v. State Admin. Bd. of Elec., 387 F. Supp. 1038, 1040 n. 3 (D. Md. 1974)(1973 "laundry list" includes shoplifting, "child abuse," and "various offenses relative to prostitution).

Thus, ex-offenders are often ineligible for or denied employment opportunities as a result of various statutes and regulations, as well as the vast discretion afforded licensing authorities and employers to deny licensing or employment based on an applicant's criminal record.[9]

In this case, the Plaintiff was a convicted felon when he enrolled in the school's Paralegal certification program in the Fall of 1993. Because Maryland recognizes the negligent hiring doctrine, employers seeking to employ a Paralegal performing the type of duties a paralegal would normally perform, would certainly require an individual to forego a criminal background check and, it is without question the Plaintiff would not find employment as a Paralegal because of and given the nature of the Plaintiff's criminal record. Thus, the Plaintiff did not have the "ability to benefit" from the school's Paralegal certification program at the time he enrolled in the UMUC Paralegal certification training program.

B.    **THE DEFENDANT MAY NOT IMPOSE CONDITIONS THAT GO BEYOND THE CONDITIONS SET FORTH BY CONGRESS IN THE STATUTE**

An agency's authority to issue regulations and implement statutes does not permit the agency to impose conditions that go beyond the conditions set forth by Congress in a statute and add, by regulation "something that is not there." United States v. Calamaro, 354 U.S. 351, 359 (1957). In particular, recent decisions of the Court of Appeals have emphasized that the deference accorded to agencies under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), does not apply when an agency seeks to impose conditions or consider factors that are not authorized by the

---

[9] Examples of statutory and regulatory prohibitions as well as required and optional background checks are set out in the Appendix. _See_ App., subs. B, Part II.

express language of the statue. See National Mining Ass'n, 105 F.3d at 693; Ethyl Corp. v. EPA, 51 F.3d at 1063-64.

Under these precedents, the subsequent requirement that a student inform the school of his status prior to enrollment or provide documentation proving the denial for a license due to a criminal record cannot be upheld unless it somehow can be shoehorned into the language of 20 U.S. §1087(c) as a valid interpretation of the statutory language of false certification. Both the regulations and statutory language show that it cannot because the subsequent requirement that a student inform the school of his status prior to enrollment or provide documentation proving the denial for a license due to a criminal record imposes a separate condition not found in the statute.

1.    **Regulatory Language**. It is well settled that an agency interpretation of a statute "merely" 'declare[s] its understanding of what a statute requires,' "and may not impose new requirements that go "beyond the text of the statue.'" American Mining Congress v. Mine Safety & Health Admin., 995 F.2d 1106, 1110 (D.C. Cir. 1993)(quoting Fertilizer Inst. v. United States Environmental Protection Agency, 935 F.2d 1303, 1308 (1991). The text of the Secretary's regulations themselves demonstrate that the subsequent requirement that a student inform the school of his status prior to enrollment or provide documentation proving the denial for a license due to a criminal record does not "merely declare" the meaning of "false certification," but creates new, separate requirements on its own.

The Defendant utterly denied Plaintiff a discharge of his loans because Plaintiff did not inform the school of his status prior to enrollment and because Plaintiff was

required to provide documentation proving he was denied for a license due to a criminal record. SMF, ¶¶9,11.

There is no language in 20 U.S.C. 1§087(c) that authorizes the Defendant to impose the additional requirements that requires a student inform the school of his status prior to enrollment or provide documentation proving the denial for a license due to a criminal record. These requirements impose a separate condition not found in the statute.

Indeed, in <u>Jordan v. Secretary of Education</u>, 338 U.S. App. D.C. 379; 194 F.3d 169; 1999 U.S. App. LEXIS 29849 (1999), the United States Court of Appeals for the DC Circuit held that the statutory scheme was designed to place obligations on schools, which must certify ability, and on government, which must police schools to ensure that their certifications are accurate, or failing that must compensate defrauded students.

Thus, the Defendant improperly concluded that the Plaintiff was required to inform the school of his status prior to enrollment and provide documentation proving that he was denied a license due to a criminal record.

In any event, the Defendant ultimately denied the Plaintiff a discharge of the loans because "there were no records that indicate the Plaintiff was enrolled in a training program that specifically and exclusively prepared the Plaintiff for employment, ..., as a paralegal". To the contrary, the administrative record before the Defendant and now this Court, clearly demonstrate that Plaintiff was enrolled at the UMUC as an undergraduate seeking a certification in the school's Paralegal training program. <u>Id</u>.

### CONCLUSION

For the reasons stated, there is a genuine issue of a material fact in dispute which precludes the Defendant from obtaining summary judgment in this case because the

Defendant has not demonstrated that Plaintiff had the "ability to benefit" from the school's Paralegal certification training program based on Plaintiff's criminal record. To the contrary, and based on Maryland Employment Law, Plaintiff did not have the "ability to benefit" from the school's Paralegal certification training program at the time he enrolled in the training program because of his felony criminal record.

In addition, the issue of whether the Plaintiff had the "ability to benefit" from the Paralegal certification training program offered by the school because of Plaintiff's criminal record at the time of his enrollment into the Paralegal certification training program, is a legal question which can not be disputed factually but must be resolved by the Court as a matter of law.

As discussed above, because Maryland recognizes the negligent hiring doctrine, employers seeking to employ a Paralegal performing the type of duties a paralegal would normally perform, would require an individual to forego a criminal background check to protect the confidences and valuable assets of the public and, it is without question that the Plaintiff would not find employment as a Paralegal because of his criminal record.

Thus, the Plaintiff did not have the "ability to benefit" from the school's Paralegal certification training program at the time he enrolled in the UMUC Paralegal certification training program.

As stated above, the Defendant expressly acknowledged that "[t]he Higher Education Act of 1965, as amended (HEA), establishes discharge requirements under the circumstances Plaintiff described in his loan discharge application" but specifically denied Plaintiff's request for discharge on the basis that there were no records that indicated that Plaintiff was enrolled in a training program that specifically and

exclusively prepared him for employment in law enforcement or "as a Paralegal", and because Plaintiff was not enrolled in law school.

Despite the fact that on September 10, 2007, Plaintiff provided specific documentation to the Defendant that unequivocally indicated that he was enrolled in the UMUC Paralegal certification training program that intended to prepare him for employment as a professional paralegal, on September 25, 2007, the Defendant affirmed its decision of September 10, 2007.

The Secretary's denial of Plaintiff's loan discharge, even after Plaintiff provided the specific documentation that unequivocally indicated that he was enrolled in the UMUC Paralegal certification training program, was arbitrary, capricious and an abuse of her authority and was done out of accordance with law.

For these reasons, the Court is respectfully requested to deny the Defendant's motion for summary judgment and grant Plaintiff's motion by entering a declaratory judgment that (i) the Defendant's regulations imposing conditions that requires a student inform the school of his status prior to enrollment or provide documentation proving the denial for a license due to a criminal record in order to qualify for discharge under Section 1087(c) are unlawful and void because they are not authorized by the statute; and (ii) the Defendant is obligated to discharge the liability on the loan of Plaintiff Johnson in accordance with 20 U.S.C. §1087(c).

Respectfully submitted,

April 25, 2008

_Joseph Johnson, Jr._
Joseph Johnson, Jr.
2600 Brinkley Road, #1005
Fort Washington, MD   20744

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2008, I caused copies of Plaintiff's Motion for

Summary Judgment, Exhibits and Opposition to Defendant's Motion for Summary

Judgment and Plaintiff's Statement of Material Facts as To Which There is No Genuine

Dispute, were mailed to:

> Claire Whitaker
> Assistant United States Attorney
> United States Attorneys Office
> Civil Division
> 555 4th Street, N.W., Room E-4204
> Washington, DC   20530

by regular, first-class mail, postage prepaid.


_____
Joseph Johnson, Jr.

UNITED STATES DISTRICT COURT
FORTHE DISTRICT OF COLUMBIA

JOSEPH JOHNSON, JR.                    )

      Plaintiff,                      )

Vs.                                    ) Civil No. 07-02183 (JR)

U.S. DEPARTMENT OF EDUCATION, et al.,  )

      Defendants.                     )

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.     On February 16, 1993, Plaintiff was indicted and convicted in the Arlington County Circuit Court for burglary and grand larceny. Thereafter, on August 21, 1995, Plaintiff was indicted in the Arlington County Circuit Court for forgery and uttering a Circuit Court order. On April 29, 1996, Plaintiff was convicted of the latter two felonies and began serving a five year prison term. See Exhibits 1 and 2.

2.     Following the Plaintiff's criminal convictions, and during the Fall of 1993, Plaintiff enrolled in the University of Maryland University College ("UMUC") Paralegal certification training program. This training program specifically intended to prepare the Plaintiff for employment as a Paralegal. First Amended Complaint, at Paragraph 15 and see also Exhibit 3.

3.     The United States Department of Labor has stated that "among the other occupations that call for a specialized understanding of law but do not require the extensive training of a lawyer, are law clerks; title examiners, abstractors, and searchers; claims adjusters, appraisers, examiners, and investigators; and occupational health and safety specialists and technicians." See Exhibit 4.

4.      UMUC arranged for Plaintiff to sign loan documents for Guaranteed

Student Loans ("GSL") to pay tuition and fees for the UMUC Paralegal certification

training program. The loan forms were provided by the Higher Education Assistance

Foundation and the loans were disbursed between September 7, 1993 and May 12, 1996.

First Amended Complaint, at Paragraph 16.

5.      The Plaintiff's parent also received a loan under the Federal Family

Education Loan Program for Plaintiff's enrollment at the University of Maryland. See

Answer of Defendant at ¶7.

6.      UMUC did not determine that Plaintiff had the "ability to benefit" from

the Paralegal certification training program in which Plaintiff enrolled. The school does

not ask information pertaining to a student's criminal record. First Amended Complaint,

at Paragraph 19 and see also Exhibit 5.

7.      Plaintiff did not have the "ability to benefit" from the school's Paralegal

certification training program because at the time Plaintiff enrolled in the school Plaintiff

had a criminal record and because Maryland recognizes the negligent hiring doctrine,

employers seeking to employ a Paralegal would require an individual to forego a criminal

background check to protect the confidences and valuable assets of the public and

Plaintiff's criminal record would be used as a basis for denying Plaintiff employment as a

Paralegal.  See Cramer v. Housing Opportunities Comm'n, 501 A.2d 35, 39, 304 Md.

705, 713 (1985); and Henley v. Prince George's County, 305 Md. 320 (1986).

8.      On or about June 18, 2004, the GSL signed by Plaintiff were consolidated

and are held by the Department of Education. First Amended Complaint, at Paragraph 17

and see also Answer of Defendant at ¶12.

9.    On November 20, 2006, Plaintiff submitted a request for discharge of his student loans under the false certification provisions of 20 U.S.C. §1087(c), including a sworn statement showing that he met the statutory requirements for discharge. The Defendant, through its officials holding delegated authority, denied the Plaintiff's request on May 7, 2007 on the basis that the Plaintiff did not inform the school of his status prior to enrollment. First Amended Complaint, at Paragraphs 24 and 25; and see also Exhibits 6 and 7.

10.    Plaintiff sought reconsideration of that determination on May 15, 2007, and essentially argued that 20 U.S.C. 1087(c) did not require the borrower to inform the school of his status prior to enrollment and that the school did not inquire of Plaintiff's status prior to enrollment. First Amended Complaint, at Paragraph 26 and see also Exhibit 8.

11.    In a generic letter dated June 14, 2007, the Defendant, through its officials holding delegated authority, denied Plaintiff's request for reconsideration and stated that Plaintiff did not provide any documentation proving that he was denied for a license due to a criminal record. First Amended Complaint, at Paragraph 27 and see also Exhibit 9.

12.    Plaintiff sought review of both of these decisions by the Defendant and, by decision dated September 6, 2007, the Defendant expressly acknowledged that "[t]he Higher Education Act of 1965, as amended (HEA), establishes discharge requirements under the circumstances Plaintiff described in his loan discharge application" but specifically denied Plaintiff's request for discharge on the sole basis that there were no records that indicated that Plaintiff was enrolled in a training program that specifically and exclusively prepared him for employment in law enforcement or "as a Paralegal",

and because Plaintiff was not enrolled in law school. First Amended Complaint, at Paragraphs 28 and 29 and see also Exhibit 10, 11 and 12.

13.    Despite the fact that on September 10, 2007, Plaintiff provided specific documentation to the Defendant that unequivocally indicated that he was enrolled in the UMUC Paralegal certification training program that intended to prepare him for employment as a professional paralegal, on September 25, 2007, the Defendant affirmed its decision of September 10, 2007. See Answer of Defendant at 27 and 28 and see also Exhibit 13 and 14.

14.    A borrower whose student loan has not been discharged by the Secretary is subject to certain penalties if the borrower defaults, including seizure of federal tax refunds, 34 C.F.R. §30.33, reporting on their indebtedness to credit bureaus, 20 U.S.C. §1080a; 34 C.F.R. §682.410(b) (5), and disqualification from receiving any grant, loan or other financial assistance under Title IV federal financial aid programs. 20 U.S.C. §1091(a)(3); 34 C.F.R. §682.201(e). First Amended Complaint, at Paragraph 32.

15.    Discharge under 20 U.S.C. §1087(c), entitles the borrower to relief from all of the penalties associated with default on a student loan and reimbursement of any money paid voluntarily or through enforced collection of the loan obligation, 34 C.F.R. §682.402(d)(2). First Amended Complaint, at Paragraph 33.

16.    Plaintiff has paid over $2,977.32 on his student loan that has not been reimbursed through discharge. First Amended Complaint, at Paragraph 34 and see also Exhibit 15.

17.    The current balance on the consolidated loan is $32,143.60.

Respectfully submitted,

April 25, 2008

Joseph Johnson, Jr.
2600 Brinkley Road, #1005
Fort Washington, MD   20744

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by First-Class mail,

postage prepaid on:

Claire Whitaker
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, DC   20530

on this 25th day of April 2008

Joseph Johnson, Jr.

## UNITED STATES DISTRICT COURT
## FORTHE DISTRICT OF COLUMBIA

JOSEPH JOHNSON, JR.                              )

      Plaintiff,                                 )

Vs.                                              ) Civil No. 07-02183 (JR)

U.S. DEPARTMENT OF EDUCATION, et al.,            )

      Defendants.                                )

### <u>ORDER</u>

Upon consideration of the parties cross motions for summary judgment, the

oppositions and replies thereto, and after careful review of the entire record, it is this

_____day of _____, 2008;

ORDERED, that the Defendant's motion is denied; and it is,

FURTHER ORDERED, that the Plaintiff's motion is granted. Summary

Judgment is entered on behalf of the Plaintiff; and it is,

FURTHER ORDERED AND ADJUDGED, that (i) the Defendant's regulations

imposing conditions that requires a student inform the school of his status prior to

enrollment or provide documentation proving the denial for a license due to a criminal

record in order to qualify for discharge under Section 1087(c) are unlawful and void

because they are not authorized by the statute; (ii) the Defendant is directed to discharge

the liability on all of the student and parent loans of Plaintiff in accordance with 20

U.S.C. §1087(c), including reimburse Plaintiff for any amounts collected on the loans,

and report to credit agencies or eligible institutions that Plaintiff's loans have been

discharged.

James Robertson
United States District Judge

JOSEPH JOHNSON, JR.
2600 Brinkley Road #1005
Fort Washington, MD   20744

Defendants Served by ECF filing

93.321
(sm

V I R G I N I A :

### IN THE CIRCUIT COURT OF ARLINGTON COUNTY

#### February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSEPH JOHNSON JR. did break and enter or enter in the nighttime an office building located at 1735 N. Lynn Street, with intent to commit larceny.

Section 18.2-91, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
        Clerk

                                    [ ]    A True Bill
                                    [ ]    No True Bill

Indictment For Felony

                                    _____
                                         Foreman

93·3ɔɔ

**V I R G I N I A :**

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSPEH JOHNSON JR. did steal a laser jet printer and a modem having a value of $200.00 or more belonging to Resolution Trust Corporation.

Section 18.2-95, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
        Clerk

                                    [ ]    A True Bill
                                    [ ]    No True Bill

Indictment For Felony

                                    _____
                                    Foreman

VS                                                                    CR93-321

JOSEPH JOHNSON, JR.

THE 3rd day of May, 1996 came the Commonwealth of Virginia, by its Attorney, Esther Wiggins, the Probation Officer for the Circuit Court of Arlington County, Virginia, the Defendant in the custody of the Sheriff and his Retained Attorney, Charles King.

WHEREUPON the Commonwealth moved the Court to revoke the Defendant's probation and the Defendant conceded he had violated the terms and conditions of his probation.

UPON CONSIDERATION WHEREOF it is the opinion of the Court that the Defendant is "Guilty" of violating the conditions of his probation and so finds.

IT IS THEREFORE ORDERED by the Court that twelve (12) months of the sentence heretofore imposed and suspended in this Court's order of April 21, 1993 be and it hereby is ordered into execution.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein was on or about December 28, 1992.

AND the Defendant is hereby remanded to jail.

Entered this   16TH day of   May   , 1996.

_____
JUDGE

A COPY:
TESTE. DAVID A. BELL, CLERK
BY_____
DEPUTY CLERK

VIRGINIA: 951499

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 7th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR., did forge a public document, to wit: he did materially alter a Circuit Court Order.

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ Deputy Clerk
Clerk

[ ]    A True Bill
[ ]    No True Bill

Indictment For Felony

_____
Foreman

Executed the within process this the
____ of __August__ , 19 95 ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
    Given under my hand this the
    ____ day of __August__ , 19 95
Thomas N. Faust, Sheriff
Arlington County, Virginia
By: _____
        Deputy Sheriff

A Copy,
Teste: David A. Bell, Clerk

By _____
        Deputy Clerk

0001

COMMONWEALTH OF VIRGINIA

VS                                                                    CR95-1499

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, find the Defendant guilty of <u>forging a public record</u> as charged in the indictment.

<u>4/29/96</u>
Date

Brian Deitch
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, having found the Defendant guilty of <u>forging a public record</u> fix punishment at <u>1) imprisonment for a specific term of 2 years.</u>

<u>4/29/96</u>
Date

Brian Deitch
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Forging a Public Record" as charged in the indictment herein.

CR95-1499

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this _14th_ day of _June_, 1996.

_Judge_

A COPY
TESTE: DAVID A. BELL, CLERK
BY _____
DEPUTY CLERK

0023

V I R G I N I A :

## 951500

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 16th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR. did utter or attempt to employ as true, a forged public document, to wit: a materially altered Circuit Court Order, knowing the same to be forged. . .

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ _____ Deputy Clerk
　　　　　Clerk

[ ] 　A True Bill
[ ] 　No Tree Bill

Indictment For Felony

_____
Foreman

executed the within process this the
___24___ of ___August___ , 19_95_ ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
　　Given under my hand this the
　___24___ day of ___August___ , 19_95_
Thomas N. Faust, Sheriff
Arlington County, Virginia
By: _____
　　　　Deputy Sheriff

A Copy,
Teste: David A. Bell, Clerk

By _____
　　　　Deputy Clerk

COMMONWEALTH OF VIRGINIA

vs                                                                      CR95-1500

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

CR95-1500

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, find the Defendant guilty of <u>uttering a forged public record</u> as charged in the indictment.

<u>4/29/96</u>
Date

<u>Brian Deitch</u>
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, having found the Defendant guilty of <u>uttering a forged public record</u> fix punishment at <u>1) imprisonment for specific term of 2 years.</u>

<u>4/29/96</u>
Date

<u>Brian Deitch</u>
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Uttering a Forged Public Record" as charged in the indictment herein.

CR95-1500

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this 14th day of June , 1996.

_____
Judge

A COPY
TESTE: DAVID A. BELL. CLERK
BY _____
DEPUTY CLERK

VID A. BELL, CLERK
COUNTY
KG... N, VIRGINIA

0026

```
02/06/95  13:40                    UNIVERSITY OF MARYLAND                          PAGE   1
                                    UNIVERSITY COLLEGE
                              TENTATIVE EVALUATION AS OF 02/06/95
     PAC/SAC: PLGL/ENGL                                                      JOE JOHNSON JR
   · DEGREE: Bachelor of Science                                            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
CATALOG EDITION: 9109                                              ADVISOR : Sharon M. Aceti

     JOE JOHNSON JR
     607 AUDREY LANE #202
     FOREST HEIGHTS  MD  20745

     This evaluation is provided for advisement only. It is not an official record. Students are responsible for meeting
   requirements, and should be aware that a minimum of 120 cumulative hours and a 2.0 GPA overall are required for graduation.
```

| I.   GENERAL EDUCATION REQ. | COURSES | GRADE | CREDITS | DO NOT TAKE |
|---|---|---|---|---|
| **A.  COMMUNICATIONS  9 s.h.** | | | | |
| 01  ENGL101 or equivalent  3 s.h. | remaining credits | | 3.00 | |
| 02  Writing  3 s.h. | remaining credits | | 3.00 | |
| 03  Speech/Writing  3 s.h. | remaining credits | | 3.00 | |

```
OVERALL COMMUNICATIONS  9 s.h.
   Applicable Credits :     0.00
   Remaining Credits  :     9.00
```

| **B.  SOCIAL SCIENCES  6 s.h.** | | | | |
|---|---|---|---|---|
| 01  Social Sciences  6 s.h. | remaining credits | | 6.00 | |

```
OVERALL SOCIAL SCIENCES  6 s.h.
   Applicable Credits :     0.00
   Remaining Credits  :     6.00
```

| **C.  ARTS & HUMANITIES  6 s.h.** | | | | |
|---|---|---|---|---|
| 01  Arts & Humanities  6 s.h. | remaining credits | | 6.00 | |

```
OVERALL ARTS & HUMANITIES  6 s.h.
   Applicable Credits :     0.00
   Remaining Credits  :     6.00
```

| **D.  MATH/SCIENCE  9 s.h.** | | | | |
|---|---|---|---|---|
| 01  Mathematics  3 s.h. | remaining credits | | 3.00 | |
| 02  Math/Natural Science  6 s.h. | remaining credits | | 6.00 | |

```
OVERALL MATH/SCIENCE  9 s.h.
   Applicable Credits :     0.00
   Remaining Credits  :     9.00
```

| **E.  ELECTIVES  33 s.h. minimum** | | | | |
|---|---|---|---|---|
| 01  Upper-level electives | remaining credits | | 9.00 | |
| 02  Any-level electives | remaining credits | (3) | 24.00 | |

9502 CCJS 105
9502 CCJS 234  (3)

```
OVERALL ELECTIVES  33 s.h. minimum
   Applicable Credits :     0.00
   Remaining Credits  :    33.00
```

```
                                    UNIVERSITY OF MARYLAND
02/06/95  13:40                     UNIVERSITY COLLEGE                              PAGE   2
                                 TENTATIVE EVALUATION AS OF 02/06/95

     PAC/SAC: PLGL/ENGL                                                        JOE JOHNSON JR
        DEGREE: Bachelor of Science                                            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
CATALOG EDITION: 9109                                              ADVISOR : Sharon M. Aceti
```

```
II.  PARALEGAL STUDIES                              COURSES              GRADE      CREDITS     DO NOT TAKE
A.  PRIMARY CONC.- PLGL    24 s.h.  ------------------------------------------------------------------------
  01  Upper-level PAC   15 s.h.        9402  PLGL340    CONTRACT LAW          B      3.00
                                       9402  PLGL411    CONSUMER-PROT LAW     B      3.00
                                       9409  PLGL322    EVIDENCE              B      3.00
                                       9402  PLGL325    LITIGATION           C      3.00
                                       9409  PLGL312    TORTS                C      3.00

  02  Any-level PAC    9 s.h.          9309  PLGL201    LEGAL WRITING         B      3.00
                                       9409  PLGL200    TECH OF LEGAL RSRCH   C      3.00
                                       9409  PLGL223    INVESTIGATIVE TECH    C      3.00

OVERALL PRIMARY CONC.- PLGL    24 s.h.
   Applicable Credits :      24.00
   Remaining Credits  :       0.00
-----------------------------------------------------------------------------------------------------------
III. ENGL SECONDARY CONCENTRATION
A.  SECONDARY CONC.- ENGL  21 s.h.
  01  Upper-level SAC  15 s.h.                          remaining credits                15.00

  02  Any-level SAC    6 s.h.                           remaining credits                 6.00

OVERALL SECONDARY CONC.- ENGL  21 s.h.
   Applicable Credits :       0.00
   Remaining Credits  :      21.00
===========================================================================================================
                        RESIDENT           TRANSFER
Credits in PAC            24.00              0.00
Credits in PAC/SAC        24.00              0.00
===========================================================================================================
IV.  B. S. OPTION - PLGL
A.  B.S. OPTION  12 s.h.
  01  Related Courses  12 s.h.         9309  PLGL101    INTRO TO PARALEGAL    C      3.00
                                       9402  PLGL204    LGL ETH/LAW OFF SYS   C      3.00
                                     9502 PhGh 315      remaining credits          (3)   6.00
                                     9502 PhGh 401                                 (3)
OVERALL B.S. OPTION  12 s.h.
   Applicable Credits :       6.00
   Remaining Credits  :       6.00
-----------------------------------------------------------------------------------------------------------
```

```
02/06/95  13:40                        UNIVERSITY OF MARYLAND
                                       UNIVERSITY COLLEGE                              PAGE   3
                                    TENTATIVE EVALUATION AS OF 02/06/95
        PAC/SAC: PLGL/ENGL                                                        JOE JOHNSON JR
        DEGREE: Bachelor of Science                                                 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
CATALOG EDITION: 9109                                                   ADVISOR : Sharon M. Aceti

A. GRADUATION/DISTRIBUTION REQ.
   01 Any upper-level  45 s.h.        9402  PLGL340     CONTRACT LAW          B     3.00
                                      9402  PLGL411     CONSUMER-PROT LAW     B     3.00
                                      9409  PLGL322     EVIDENCE              B     3.00
                                      9402  PLGL325     LITIGATION           C     3.00
                                      9409  PLGL312     TORTS                C     3.00
                                                        remaining credits                   30.00

OVERALL GRADUATION/DISTRIBUTION REQ.
   Applicable Credits :      15.00
   Remaining Credits  :      30.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
B. GRAD'N/DIST'N - COMMUNICATIONS
   01 ENGL101 or equivalent  3 s.h.                     remaining credits                    3.00

   02 UL Intensive Writing 3 s.h.                       remaining credits                    3.00

   03 Writing  3 s.h.                 9309  PLGL201     LEGAL WRITING         B     3.00

   04 Speech/Writing  3 s.h.                            remaining credits                    3.00

OVERALL GRAD'N/DIST'N - COMMUNICATIONS
   Applicable Credits :       3.00
   Remaining Credits  :       9.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
C. GRAD./DIST. REQUIREMENTS
   01 Computer  3 s.h.                                  remaining credits                    3.00

   03 Natural Science  3 s.h.                           remaining credits                    3.00

   04 Historic Context  3 s.h.                          remaining credits                    3.00

   05 Global Context  3 s.h.                            remaining credits                    3.00
            OR                                                                                OR
   06 Foreign Language/Global 6 s.h.                    remaining credits                    6.00

OVERALL GRAD./DIST. REQUIREMENTS
   Applicable Credits :       0.00
   Remaining Credits: 12.00 OR 15.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   COURSES IN PROGRESS:
                                      9502  CCJS105     INTR TO CRIMINOLOGY         3.00
                                      9502  CCJS234     CRIM PROC&EVIDENCE          3.00
                                      9502  PLGL315     DOMESTIC RELATIONS          3.00
                                      9502  PLGL401     ADV LEGAL WRITING           3.00
=============================================================================================================

               COMMUNITY COLLEGE CREDITS :  00.00   EXPERIENTIAL LEARNING/COURSE CHALLENGE :  00.00
              STANDARDIZED CREDIT BY EXAM :  00.00           VOCATIONAL/TECHNICAL CREDITS :  00.00
           COOPERATIVE EDUCATION CREDITS :  00.00                  TOTAL PASS/FAIL CREDITS :  00.00

                             UNIVERSITY COLLEGE CREDITS :  30.00
                             TRANSFER CREDITS           :  00.00

                             TOTAL REMAINING CREDITS :  90
```

** AUDIT COMMENTS **

PLEASE NOTE that this is a TENTATIVE evaluation. I can't run this as an
official evaluation because we do not have your high school records. I have
enclosed a transcript request form for you to use. As soon as we receive this
transcript, I will make your evaluation official.

Also, please note that you need to take ENGL 101 as soon as possible. We
require students who are pursuing a bachelor's degree to take ENGL 101 within
their first 15 semester hours, and you are already past that point. Call 985-
7359 for English placement test information.

If you have questions about your bachelor's degree requirements, please come
in to see an advisor or contact me in writing.

Good luck with your studies.

**** END OF AUDIT REPORT ****

# Paralegals and Legal Assistants

(O*NET 23-2011.00)

### Significant Points

- Most entrants have an associate degree in paralegal studies, or a bachelor's degree coupled with a certificate in paralegal studies.
- About 7 out of 10 work for law firms; others work for corporate legal departments and government agencies.
- Employment is projected to grow much faster than average, as employers try to reduce costs by hiring paralegals to perform tasks once done by lawyers.
- Competition for jobs should continue; experienced, formally trained paralegals should have the best employment opportunities.

### Nature of the Work

While lawyers assume ultimate responsibility for legal work, they often delegate many of their tasks to paralegals. In fact, paralegals—also called legal assistants—are continuing to assume a growing range of tasks in legal offices and perform many of the same tasks as lawyers. Nevertheless, they are explicitly prohibited from carrying out duties considered to be the practice of law, such as setting legal fees, giving legal advice, and presenting cases in court.

One of a paralegal's most important tasks is helping lawyers prepare for closings, hearings, trials, and corporate meetings. Paralegals might investigate the facts of cases and ensure that all relevant information is considered. They also identify appropriate laws, judicial decisions, legal articles, and other materials that are relevant to assigned cases. After they analyze and organize the information, paralegals may prepare written reports that attorneys use in determining how cases should be handled. If attorneys decide to file lawsuits on behalf of clients, paralegals may help prepare the legal arguments, draft pleadings and motions to be filed with the court, obtain affidavits, and assist attorneys during trials. Paralegals also organize and track files of all important case documents and make them available and easily accessible to attorneys.

In addition to this preparatory work, paralegals perform a number of other functions. For example, they help draft contracts, mortgages, and separation agreements. They also may assist in preparing tax returns, establishing trust funds, and planning estates. Some paralegals coordinate the activities of other law office employees and maintain financial office records.

Computer software packages and the Internet are used to search legal literature stored in computer databases and on CD-ROM. In litigation involving many supporting documents, paralegals usually use computer databases to retrieve, organize, and index various materials. Imaging software allows paralegals to scan documents directly into a database, while billing programs help them to track hours billed to clients. Computer software packages also are used to perform tax computations and explore the consequences of various tax strategies for clients.

Paralegals are found in all types of organizations, but most are employed by law firms, corporate legal departments, and various government offices. In these organizations, they can work in many different areas of the law, including litigation, personal injury, corporate law, criminal law, employee benefits, intellectual property, labor law, bankruptcy, immigration, family law, and real estate. As the law becomes more complex, paralegals become more specialized. Within specialties, functions are often broken down further. For example, paralegals specializing in labor law may concentrate exclusively on employee benefits. In small and medium-size law firms, duties are often more general.

The tasks of paralegals differ widely according to the type of organization for which they work. A corporate paralegal often assists attorneys with employee contracts, shareholder agreements, stock-option plans, and employee benefit plans. They also may help prepare and file annual financial reports, maintain corporate minutes' record resolutions, and prepare forms to secure loans for the corporation. Corporate paralegals often monitor and review government regulations to ensure that the corporation is aware of new requirements and is operating within the law. Increasingly, experienced corporate paralegals or paralegal managers are assuming additional supervisory responsibilities such as overseeing team projects.

The duties of paralegals who work in the public sector usually vary by agency. In general, litigation paralegals analyze legal material for internal use, maintain reference files, conduct research for attorneys, and collect and analyze evidence for agency hearings. They may prepare informative or explanatory material on laws, agency regulations, and agency policy for general use by the agency and the public. Paralegals employed in community legal-service projects help the poor, the aged, and others who are in need of legal assistance. They file forms, conduct research, prepare documents, and, when authorized by law, may represent clients at administrative hearings.

***Work environment.*** Paralegals handle many routine assignments, particularly when they are inexperienced. As they gain experience, paralegals usually assume more varied tasks with



*In addition to investigating the facts of cases, paralegals identify relevant laws, judicial decisions, legal articles, and other materials.*

additional responsibility. Paralegals do most of their work in offices and law libraries. Occasionally, they travel to gather information and perform other duties.

Paralegals employed by corporations and government usually work a standard 40-hour week. Although most paralegals work year round, some are temporarily employed during busy times of the year and then released. Paralegals who work for law firms sometimes work very long hours when under pressure to meet deadlines.

## Training, Other Qualifications, and Advancement

Most entrants have an associate degree in paralegal studies, or a bachelor's degree coupled with a certificate in paralegal studies. Some employers train paralegals on the job.

*Education and training.* There are several ways to become a paralegal. The most common is through a community college paralegal program that leads to an associate degree. Another common method of entry, mainly for those who already have a college degree, is earning a certificate in paralegal studies. A small number of schools offer a bachelor's and master's degree in paralegal studies. Finally, some employers train paralegals on the job.

Associate and bachelor's degree programs usually combine paralegal training with courses in other academic subjects. Certificate programs vary significantly, with some only taking a few months to complete. Most certificate programs provide intensive paralegal training for individuals who already hold college degrees.

About 1,000 colleges and universities, law schools, and proprietary schools offer formal paralegal training programs. Approximately 260 paralegal programs are approved by the American Bar Association (ABA). Although many employers do not require such approval, graduation from an ABA-approved program can enhance employment opportunities. Admission requirements vary. Some require certain college courses or a bachelor's degree, while others accept high school graduates or those with legal experience. A few schools require standardized tests and personal interviews.

The quality of paralegal training programs varies; some programs may include job placement services. If possible, prospective students should examine the experiences of recent graduates before enrolling in a paralegal program. Any training program usually includes courses in legal research and the legal applications of computers. Many paralegal training programs also offer an internship in which students gain practical experience by working for several months in a private law firm, the office of a public defender or attorney general, a corporate legal department, a legal aid organization, a bank, or a government agency. Internship experience is an asset when one is seeking a job after graduation.

Some employers train paralegals on the job, hiring college graduates with no legal experience or promoting experienced legal secretaries. Other entrants have experience in a technical field that is useful to law firms, such as a background in tax preparation or criminal justice. Nursing or health administration experience is valuable in personal injury law practices.

*Certification and other qualifications.* Although most employers do not require certification, earning a voluntary certification from a professional society may offer advantages in the labor market. The National Association of Legal Assistants (NALA), for example, has established standards for certification requiring various combinations of education and experience. Paralegals who meet these standards are eligible to take a 2-day examination. Those who pass the exam may use the Certified Legal Assistant (CLA) or Certified Paralegal (CP) credential. The NALA also offers the Advanced Paralegal Certification for experienced paralegals who want to specialize. The Advanced Paralegal Certification program is a curriculum based program offered on the Internet.

The American Alliance of Paralegals, Inc. offers the American Alliance Certified Paralegal (AACP) credential, a voluntary certification program. Paralegals seeking the AACP certification must possess at least five years of paralegal experience and meet one of the three educational criteria. Certification must be renewed every two years, including the completion 18 hours of continuing education.

In addition, the National Federation of Paralegal Association offers the Registered Paralegal (RP) designation to paralegals with a bachelor's degree and at least 2 years of experience who pass an exam. To maintain the credential, workers must complete 12 hours of continuing education every 2 years. The National Association for Legal Professionals offers the Professional Paralegal (PP) certification to those who pass a four-part exam. Recertification requires 75 hours of continuing education.

Paralegals must be able to document and present their findings and opinions to their supervising attorney. They need to understand legal terminology and have good research and investigative skills. Familiarity with the operation and applications of computers in legal research and litigation support also is important. Paralegals should stay informed of new developments in the laws that affect their area of practice. Participation in continuing legal education seminars allows paralegals to maintain and expand their knowledge of the law. In fact, all paralegals in California must complete 4 hours of mandatory continuing education in either general law or in a specialized area of law.

Because paralegals frequently deal with the public, they should be courteous and uphold the ethical standards of the legal profession. The National Association of Legal Assistants, the National Federation of Paralegal Associations, and a few States have established ethical guidelines for paralegals to follow.

*Advancement.* Paralegals usually are given more responsibilities and require less supervision as they gain work experience. Experienced paralegals who work in large law firms, corporate legal departments, or government agencies may supervise and delegate assignments to other paralegals and clerical staff. Advancement opportunities also include promotion to managerial and other law-related positions within the firm or corporate legal department. However, some paralegals find

**Projections data from the National Employment Matrix**

| Occupational Title | SOC Code | Employment, 2006 | Projected employment, 2016 | Change, 2006-2016 | |
|---|---|---|---|---|---|
| | | | | Number | Percent |
| Paralegals and legal assistants....................................................... | 23-2011 | 238,000 | 291,000 | 53,000 | 22 |

NOTE: Data in this table are rounded. See the discussion of the employment projections table in the *Handbook* introductory chapter on *Occupational Information Included in the Handbook.*

it easier to move to another law firm when seeking increased responsibility or advancement.

**Employment**

Paralegals and legal assistants held about 238,000 jobs in 2006. Private law firms employed 7 out of 10 paralegals and legal assistants; most of the remainder worked for corporate legal departments and various levels of government. Within the Federal Government, the U.S. Department of Justice is the largest employer, followed by the Social Security Administration and the U.S. Department of the Treasury. A small number of paralegals own their own businesses and work as freelance legal assistants, contracting their services to attorneys or corporate legal departments.

**Job Outlook**

Despite projected rapid employment growth, competition for jobs is expected to continue as many people seek to go into this profession; experienced, formally trained paralegals should have the best employment opportunities.

*Employment change.* Employment of paralegals and legal assistants is projected to grow 22 percent between 2006 and 2016, much faster than the average for all occupations. Employers are trying to reduce costs and increase the availability and efficiency of legal services by hiring paralegals to perform tasks once done by lawyers. Paralegals are performing a wider variety of duties, making them more useful to businesses.

Demand for paralegals also is expected to grow as an expanding population increasingly requires legal services, especially in areas such as intellectual property, health care, international law, elder issues, criminal law, and environmental law. The growth of prepaid legal plans also should contribute to the demand for legal services.

Private law firms will continue to be the largest employers of paralegals, but a growing array of other organizations, such as corporate legal departments, insurance companies, real estate and title insurance firms, and banks also hire paralegals. Corporations in particular are expected to increase their in-house legal departments to cut costs. In part because of the range of tasks they can perform, paralegals are also increasingly employed in small and medium-size establishments of all types.

*Job prospects.* In addition to new jobs created by employment growth, more job openings will arise as people leave the occupation. There will be demand for paralegals who specialize in areas such as real estate, bankruptcy, medical malpractice, and product liability. Community legal service programs, which provide assistance to the poor, elderly, mi-

norities, and middle-income families, will employ additional paralegals to minimize expenses and serve the most people. Job opportunities also are expected in Federal, State, and local government agencies, consumer organizations, and the courts. However, this occupation attracts many applicants, creating competition for jobs. Experienced, formally trained paralegals should have the best job prospects.

To a limited extent, paralegal jobs are affected by the business cycle. During recessions, demand declines for some discretionary legal services, such as planning estates, drafting wills, and handling real estate transactions. Corporations are less inclined to initiate certain types of litigation when falling sales and profits lead to fiscal belt tightening. As a result, full-time paralegals employed in offices adversely affected by a recession may be laid off or have their work hours reduced. However, during recessions, corporations and individuals are more likely to face problems that require legal assistance, such as bankruptcies, foreclosures, and divorces. Paralegals, who provide many of the same legal services as lawyers at a lower cost, tend to fare relatively better in difficult economic conditions.

**Earnings**

Earnings of paralegals and legal assistants vary greatly. Salaries depend on education, training, experience, the type and size of employer, and the geographic location of the job. In general, paralegals who work for large law firms or in large metropolitan areas earn more than those who work for smaller firms or in less populated regions. In May 2006, full-time wage-and-salary paralegals and legal assistants had median annual earnings, including bonuses, of $43,040. The middle 50 percent earned between $33,920 and $54,690. The top 10 percent earned more than $67,540, and the bottom 10 percent earned less than $27,450. Median annual earnings in the industries employing the largest numbers of paralegals were:

| | |
|---|---|
| Federal Government | $56,080 |
| Management of companies and enterprises | 52,220 |
| Local government | 42,170 |
| Legal services | 41,460 |
| State government | 38,020 |

In addition to earning a salary, many paralegals receive bonuses, in part, to compensate them for sometimes having to work long hours. Paralegals also receive vacation, paid sick leave, a 401 savings plan, life insurance, personal paid time off, dental insurance, and reimbursement for continuing legal education.

## Related Occupations

Among the other occupations that call for a specialized understanding of the law but do not require the extensive training of a lawyer, are law clerks; title examiners, abstractors, and searchers; claims adjusters, appraisers, examiners, and investigators; and occupational health and safety specialists and technicians.

## Sources of Additional Information

General information on a career as a paralegal can be obtained from:

➤ Standing Committee on Paralegals, American Bar Association, 321 North Clark St., Chicago, IL 60610. Internet: **http://www.abanet.org/legalservices/paralegals**

For information on the Certified Legal Assistant exam, schools that offer training programs in a specific State, and standards and guidelines for paralegals, contact:

➤ National Association of Legal Assistants, Inc., 1516 South Boston St., Suite 200, Tulsa, OK 74119. Internet: **http://www.nala.org**

Information on the Paralegal Advanced Competency Exam, paralegal careers, paralegal training programs, job postings, and local associations is available from:

➤ National Federation of Paralegal Associations, PO Box 2016, Edmonds, WA 98020. Internet: **http://www.paralegals.org**

Information on paralegal training programs, including the pamphlet *How to Choose a Paralegal Education Program*, may be obtained from:

➤ American Association for Paralegal Education, 19 Mantua Rd., Mt. Royal, NJ 08061. Internet: **http://www.aafpe.org**

Information on paralegal careers, certification, and job postings is available from:

➤ American Alliance of Paralegals, Inc., 16815 East Shea Boulevard, Suite 110, No. 101, Fountain Hills, Arizona, 85268. Internet: **http://www.aapipara.org**

For information on the Professional Paralegal exam, schools that offer training programs in a specific State, and standards and guidelines for paralegals, contact:

➤ NALS, 314 E. 3rd St., Suite 210, Tulsa, OK 74120.

Internet: **http://www.nals.org**

Information on obtaining positions as a paralegal or legal assistant with the Federal Government is available from the Office of Personnel Management through USAJOBS, the Federal Government's official employment information system. This resource for locating and applying for job opportunities can be accessed through the Internet at **http://www.usajobs.opm.gov** or through an interactive voice response telephone system at (703) 724-1850 or TDD (978) 461-8404. These numbers are not toll free, and charges may result. For advice on how to find and apply for Federal jobs, see the Occupational Outlook Quarterly article "How to get a job in the Federal Government," online at:

**http://www.bls.gov/opub/ooq/2004/summer/art01.pdf.**

**Subject:** Transcript of chat session
**From:** "UMUC _CCSupport" <umuc_ccsupport@Intellimark-IT.com>
**Date:** Tue, May 15, 2007 14:01
**To:** JJohnson@nambco.com
**Priority:** Normal
**Options:** View Full Header | View Printable Version | Download this as a file

Meredith: Hi, this is Meredith how may I help you?
Johnson, Joe: Which office are you with at the University?
Meredith: The one in Adelphi.
Johnson, Joe: Which division?
Meredith: Stateside division in Maryland.
Johnson, Joe: Correction, which division of the University are you in?
Meredith: This is the call center.
Johnson, Joe: O. Ok...
Meredith: I'm sorry we have so many locations I wasn't sure if you were asking that.
Meredith: I can answer some questions for you.
Johnson, Joe: So then my question is: does the University policy require students to inform the school of any disqualifying status the student might have prior to enrollment, such as his/her physical condition, mental condition, criminal record, or incarceration status prior to enrollment?
Meredith: We do not ask that information.
Meredith: The only time we need that information when you require special help.
Meredith: We have a disabilities office.
Meredith: But we do not ask any of that information on the application.
Johnson, Joe: So then are you saying that the University does not require any of that information prior to enrollment?
Meredith: No, we do not.
Johnson, Joe: Ok. Thank you. That's all I needed to confirm. Do you have a call back number or extension to where you might be reached.
Meredith: You can the call center at 1-800-888-8682 and ask for Meredith. I'm the only one here.
Johnson, Joe: Ok. Thank's Meredith.
Meredith: Thank you and have a good day.
Johnson, Joe: Also, are you able to email me this Chat session?
Meredith: Yes I can.
Meredith: At the email address you provided?
Johnson, Joe: Yes, and also, can you send a copy to my work email address which is: JJohnson@nambco.com
Meredith: That is the one you gave us when you logged into the chat.
Meredith: Anything else I can help with?
Johnson, Joe: Ok. Thank you. That would be all. You also have a good day.
Meredith: Thank you and have a good day.

--
This message has been scanned for viruses and dangerous content by MailScanner, and is believed to be clean.

**Attachments:**

untitled-[1]                    **2.1 k**               [ text/plain ]                        Download | View

Delete & Prev | Delete & Next
Move to: INBOX [ Move ]

[ Take Address ]

**Viewing Full Header - View message**

```
X-NAM-MailScanner-From: myurkiewicz@technisource.com
X-NAM-MailScanner-SpamCheck: not spam, SpamAssassin (score=0.001, required 5,
      autolearn=not spam, HTML_MESSAGE 0.00)
X-NAM-MailScanner: Found to be clean
X-OriginalArrivalTime: 15 May 2007 18:01:20.0900 (UTC) FILETIME=[0B122C40:01C7971B]
To: <JJohnson@nambco.com>
Sender: "Yurkiewicz, Meredith" <myurkiewicz@Technisource.Com>
From: "UMUC _CCSupport" <umuc_ccsupport@Intellimark-IT.com>
Thread-Index: AceXGwsNG4hs7M+Z8pCSCQ+7mJCb6Q==
Thread-Topic: Transcript of chat session
X-MS-TNEF-Correlator:
X-MS-Has-Attach:
Message-ID: <7D2D0BBAAB69F54C8A1A3AD616793DC0025B793D@immail101.Intellimark-IT.Com>
Date: Tue, 15 May 2007 14:01:20 -0400
Subject: Transcript of chat session
Content-Type: multipart/alternative;
      boundary="----_=_NextPart_001_01C7971B.0B06716B"
MIME-Version: 1.0
Content-class: urn:content-classes:message
X-MimeOLE: Produced By Microsoft Exchange V6.5
Received: from immail101.Intellimark-IT.Com ([10.2.1.17]) by ns3.Intellimark-IT.Com with Microsoft SMTPSVC(6.0.3790.1830);
      Tue, 15 May 2007 14:01:20 -0400
Received: from ns3.Intellimark-IT.Com (unknown [206.192.20.68])
      by pluto.namgt.com (Postfix) with ESMTP id B29063E8022
      for <JJohnson@nambco.com>; Tue, 15 May 2007 18:01:21 +0000 (UTC)
Return-Path: myurkiewicz@technisource.com
```



## LOAN DISCHARGE APPLICATION:
## FALSE CERTIFICATION (DISQUALIFYING STATUS)

**Federal Family Education Loan Program / William D. Ford Federal Direct Loan Program**
WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any
accompanying documents will be subject to penalties which may include fines, imprisonment or both, under the U.S.
Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0015
Form Approved
Exp. Date 06/30/2005

### SECTION 1: BORROWER IDENTIFICATION

Please enter or correct the following information. If a correction, check this box: ☐

SSN |2|4|4|-|3|9|-|6|1|3|6|

Name _Joseph Johnson, Jr._

Address _'607 Audrey Ln. #102_

City, State, Zip _Oxon Hill, MD 20745_

Telephone - Home (_301_) _839-0716_

Telephone - Other (        )

E-mail (optional)

### SECTION 2: STUDENT INFORMATION

*Before responding, carefully read the entire form, including the instructions and other information on the following page. If you are a student borrower applying for loan discharge, begin with item 3. If you are a parent borrower applying for a PLUS loan discharge, begin with item 1.*

1. Student's name (last, first, middle initial):
_Joseph Johnson, Jr._

2. Student's SSN: |2|4|4|-|3|9|-|6|1|3|6|

3. School's name: _University of Maryland University College_

4. School's address (street, city, state, zip): 

5. Dates of attendance at the school: From |0|9|-|0|7|-|1|9|9|3| To |0|5|-| | |-|1|9|9|5|

6. Name of the program of study that you (or, for PLUS borrowers, the student) were enrolled in when the school certified or originated the loan that you are
requesting to have discharged: _Law_

7. To qualify for a loan discharge based on false certification due to a disqualifying status, you (or, for PLUS borrowers, the student) must have been unable – at the
time the school certified or originated your loan – to meet the legal requirements for employment in your state of residence (or, for PLUS borrowers, in the
student's state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or
other reason. Indicate your disqualifying status by checking the appropriate box(es) below:

☐ Age    ☑ Physical condition    ☐ Mental condition    ☑ Criminal record    ☑ Other (please specify): _Incarceration_

You must provide documentation to prove that you (or, for PLUS borrowers, the student) had this disqualifying status at the time the school certified or originated
your loan. Also, provide as much information as possible about the state legal requirements for employment that you (or, for PLUS borrowers, the student)
could not meet. Include the title and/or section number of the specific state law or regulation, or attach a copy of the law or regulation. You may obtain this
information from the appropriate state agency, such as the consumer protection office or department of labor and employment, from a public library, or from an
internet site that contains state laws and regulations.

_<see attached Narrative and Documentation>_

8. (a) Before certifying or originating the loan, did the school ask you (or, for PLUS borrowers, the student) if the disqualifying status explained in Item 7 existed?
☐ Yes  ☑ No  ☐ Don't Know

(b) Did you (or, for PLUS borrowers, the student) inform the school of the disqualifying status before the loan was certified or originated?
☐ Yes  ☐ No

9. Did the holder of your loan receive any money back (a refund) from the school on your behalf? ☐ Yes  ☐ No  ☑ Don't Know
If Yes, give the amount and explain why the money was refunded:

10. Did you (or, for PLUS borrowers, the student) make any monetary claim with, or receive any payment from, the school or any third party (see definition in Section
5) in connection with enrollment or attendance at the school? ☐ Yes  ☑ No  ☐ Don't Know  If Yes, please provide the following information:

(a) Name/address/telephone number of the party with whom the claim was made or from whom payment was received:

(b) Amount/status of claim:

(c) Amount of payment received: $
(Write "none" if no payment was received.)

### SECTION 3: BORROWER CERTIFICATION

My signature below certifies that I have read and agree to the terms and conditions that apply to this loan discharge, as specified in Section 6 on the following page.
Under penalty of perjury, I certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of
my knowledge and belief.

Borrower's Signature _Joseph Johnson Jr._          Date: _11/20/06_

November 21, 2006

# Narrative in Support of Loan Discharge Application: False Certification (Disqualifying Status)

On February 16, 1993, the borrower was under two criminal felony indictments in the Arlington County Circuit Court for burglary and grand larceny, and was placed on two year probation effective March 21, 1993. Thus, at the time the school certified or originated the loans, the borrower was unable to meet the legal requirements for employment in his state of residence in the occupation for which the program of study was intended because the borrower was on probation for having committed a felon. The Maryland Court of Appeals has held that Larceny pales in comparison to the taking of a human life during an armed robbery. See In re Application of G.S., 291 Md. 182, 433 A.2d 1159(1981)(denial of admission following conviction for petty thefts).In re John Curtis Dorth, Misc. No. 16, September Term, 1996.

Based on current Maryland State law, at the time the school certified or originated the loans, the borrower was unable to meet the legal requirements to pursue any occupation in either law enforcement or bar admission to practice law in the State of Maryland for which the program of study was intended because the borrower was convicted of felons and was on probation that operated as a bar to the borrower pursuing any occupation in law enforcement or admission to practice law in the State of Maryland.

A felony conviction is a ground for suspending, revoking, or denying a professional or occupational license in Maryland. Law Enforcement personnel are required to be licensed to carry firearms. A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed, or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, 36E(a)(2),(4); 36E(f).

The borrower was convicted of a felon and misdemeanor and thus under Maryland law could not be licensed to carry a firearm and therefore obtain an occupation in law enforcement.

Accordingly, at the time the school certified or originated the loans, the borrower was unable to meet the legal requirements for employment in Maryland in either Law Enforcement or Bar Admission to practice law in the Maryland. The loans should therefore be discharged based on false certification due to this disqualifying status.

Attached is relevant case law in the State of Maryland.

93.321
(sm

# V I R G I N I A :

## IN THE CIRCUIT COURT OF ARLINGTON COUNTY

### February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSEPH JOHNSON JR. did break and enter or enter in the nighttime an office building located at 1735 N. Lynn Street, with intent to commit larceny.

Section 18.2-91, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
     Clerk

[ ]    A True Bill
[ ]    No True Bill

<u>Indictment For Felony</u>

_____
       Foreman

93·322

V I R G I N I A :

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSPEH JOHNSON JR. did steal a laser jet printer and a modem  having a value of $200.00 or more belonging to Resolution Trust Corporation.


Section 18.2-95, Code of Va., 1950, as amended.



Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.


TESTE: _____
        Clerk


                                    [ ]    A True Bill
                                    [ ]    No True Bill


Indictment For Felony


                                    _____
                                      Foreman

VS                                                      CR93-321

JOSEPH JOHNSON, JR.

    THE 3rd day of May, 1996 came the Commonwealth of Virginia, by its Attorney, Esther Wiggins, the Probation Officer for the Circuit Court of Arlington County, Virginia, the Defendant in the custody of the Sheriff and his Retained Attorney, Charles King.

    WHEREUPON the Commonwealth moved the Court to revoke the Defendant's probation and the Defendant conceded he had violated the terms and conditions of his probation.

    UPON CONSIDERATION WHEREOF it is the opinion of the Court that the Defendant is "Guilty" of violating the conditions of his probation and so finds.

    IT IS THEREFORE ORDERED by the Court that twelve (12) months of the sentence heretofore imposed and suspended in this Court's order of April 21, 1993 be and it hereby is ordered into execution.

    THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

    THE birth date of the Defendant is reported to be May 31, 1970.

    BE IT REMEMBERED that the offense date herein was on or about December 28, 1992.

    AND the Defendant is hereby remanded to jail.

Entered this  16TH day of  May  , 1996.

_____
JUDGE

A COPY:
TESTE. DAVID A. BELL, CLERK
BY _____
                DEPUTY CLERK

VIRGINIA:                    951499

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 7th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR., did forge a public document, to wit: he did materially alter a Circuit Court Order.

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ Deputy Clerk
       Clerk

                              [ ]  A True Bill
                              [ ]  No True Bill

Indictment For Felony

                              _____
                                      Foreman

Executed the within process this the
__24__ of __August__, 19_95_,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
       Given under my hand this the
       _24_ day of __August__, 19_95_
       Thomas N. Faust, Sheriff
       Arlington County, Virginia
       By:_____
              Deputy Sheriff

A Copy,
Teste: David A. Bell, Clerk

By_____
       Deputy Clerk
                              0001

COMMONWEALTH OF VIRGINIA

VS                                                                                        CR95-1499

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

0021

CR95-1499

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, find the Defendant guilty of <u>forging a public record</u> as charged in the indictment.

<u>4/29/96</u>
Date

Brian Deitch
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, having found the Defendant guilty of <u>forging a public record</u> fix punishment at <u>1) imprisonment for a specific term of 2 years.</u>

<u>4/29/96</u>
Date

Brian Deitch
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Forging a Public Record" as charged in the indictment herein.

CR95-1499

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this 14th day of June, 1996.

_[signature]_
Judge

A COPY
TESTE: DAVID A. BELL, CLERK
BY _[signature]_
DEPUTY CLERK

0023

V I R G I N I A :                    **951500**

IN THE CIRCUIT COURT OF ARLINGTON COUNTY


August 21, 1995


The Grand Jury charges that:

On or about the 16th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR. did utter or attempt to employ as true, a forged public document, to wit: a materially altered Circuit Court Order, knowing the same to be forged. . .


Section 18.2-168, Code of Va., 1950, as amended.


Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.


TESTE: _____  Deputy Clerk
            Clerk


                                    [ ]  A True Bill
                                    [ ]  No True Bill


Indictment For Felony

                                    _____
                                            Foreman


executed the within process this the
___ of _____ , 19__ ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
        Given under my hand this the        A Copy,
        ___ day of _____ , 19__   Teste: David A. Bell, Clerk
        Thomas N. Faust, Sheriff
        Arlington County, Virginia      By_____
        By:_____               Deputy Clerk
                Deputy Sheriff

COMMONWEALTH OF VIRGINIA

vs.                                                                                          CR95-1500

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

CR95-1500

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, find the Defendant guilty of <u>uttering a forged public record</u> as charged in the indictment.

4/29/96
Date

Brian Deitch
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, having found the Defendant guilty of <u>uttering a forged public record</u> fix punishment at <u>1) imprisonment for specific term of 2 years.</u>

4/29/96
Date

Brian Deitch
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Uttering a Forged Public Record" as charged in the indictment herein.

CR95-1500

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this _14th_ day of _June_ , 1996.

_[signature]_
                                                                    Judge

A COPY
TESTE: DAVID A. BELL, CLERK
BY _[signature]_
      DEPUTY CLERK

VID A. BELL, CLERK
COUNTY
IG..__, VIRGINIA

0026

# MARYLAND

## I. RIGHTS TO VOTE, HOLD STATE OFFICE, AND SERVE ON A STATE JURY; SELECTED OCCUPATIONAL DISABILITIES

### A. LOSS OF RIGHTS

A person convicted of "theft or other infamous crime" loses the right to vote. Md. Ann. Code art. 33, § 3-4(c). Anyone convicted of such an offense also loses the rights to hold public office and to serve on a jury, because these rights are contingent upon being a registered voter. Md. Const. art. I, § 12; Md. Ann. Code art. 33, § 4A-1(a); Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(1). In addition, persons convicted of bribery or attempted bribery or of buying or selling votes are forever disenfranchised and disqualified from holding an office of profit or trust. Md. Const. art I, § 6; art. III, § 50; Md. Ann. Code art. 33, § 3-4(b)(6). A state elected official or a member of a state board or commission can be suspended and removed from office upon a felony conviction. Md. Const. art. XV, § 2; Md. Ann. Code art. 41, § 1-204(a). A state judge may be removed upon conviction of any crime, Md. Const. art. IV, § 4, and a state's attorney may be removed upon conviction of bribery. Md. Const. art. V, § 9.

In addition, a person who has been convicted of a crime punishable by a fine of more than $500 or by imprisonment of more than six months or both and who received a sentence of a fine of more than $500 or more than six months' imprisonment or both may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(5). A person convicted of falsifying a juror qualification form may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(6). Persons convicted of bribing a juror or accepting a bribe as a juror are forever disqualified from sitting on a jury. Md. Ann. Code art. 27, § 25.

A felony conviction may be grounds for suspending, revoking, or denying a professional or occupational license. E.g.: veterinary medicine (Md. Code Ann., Agric. § 2-310(2), (3), (4)); accounting (Md. Code Ann., Bus. Occ. & Prof. § 2-315(a)(3)); dentistry (Md. Code Ann., Health Occ. § 4-315(a)(4)); nursing (Md. Code Ann., Health Occ. § 8-316(a)(4)); optometry (Md. Code Ann., Health Occ. § 11-313(3)). A person convicted of a drug offense committed on or after January 1, 1991, may be required to disclose the conviction as a condition of the issuance or renewal of a license, and the license may be denied, suspended, or revoked because of the conviction. Md. Ann. Code art. 41, §§ 1-502, 1-503. See also Md. Ann. Code art. 27, § 298A (court to notify licensing authorities of certain drug convictions). Maryland has a registration requirement for child sex offenders. Md. Ann. Code art. 27, § 692B (renumbered to § 792 effective October 1, 1996).

### B. RESTORATION OF RIGHTS/REMOVAL OF DISABILITIES

The disability from voting for a first offender lasts only until the sentence is completed, including probation or parole, Md. Ann. Code, art. 33, § 3-4(c) (except for persons convicted of bribery, attempted bribery, or buying or selling votes, who are permanently disenfranchised and disqualified from holding office, Md. Const. art. I, § 6; art. III, § 50). As a result, first offenders

also regain the right to hold office upon completion of sentence.[3] The right to serve on a jury is also restored upon completion of sentence, to the extent that the disability flows from being ineligible to vote; however, any disability relating to the nature of the offense or sentence under Md. Code Ann. Cts. & Jud. Proc. § 8-207(b)(5), (6), or Md. Ann. Code art. 27, § 25, presumably must be removed by a pardon. Recidivists must obtain a pardon in order to regain their civil rights.

The pardon power is vested in the Governor, except in cases of impeachment. Md. Const. art. II, § 20. The Maryland Parole Commission makes a recommendation to the Governor about every pardon application. Md. Ann. Code art. 41, § 4-504(b)(3). According to the Maryland Parole Commission, a person convicted under federal law or the law of another state is ineligible for a gubernatorial pardon.

A person who has been convicted of only one state criminal act, which is not a "crime of violence,"[4] and who has received a full and unconditional pardon from the Governor, may petition for expungement of police and court records pertaining to the charge. Md. Ann. Code art. 27, § 737(a)(7).[5] In addition, a procedure for imposing probation prior to judgment is available for state offenses, which provides that upon successful completion of probation the person is discharged without judgment of conviction and is not "convicted" for the purposes of any disqualification or disability imposed because of conviction of crime. Md. Ann. Code art. 27, § 641.

## II. LOSS AND RESTORATION OF STATE FIREARMS PRIVILEGES

Effective October 1, 1996, a person convicted of a "crime of violence," a violation classified as a felony in Maryland, a violation classified as a misdemeanor in Maryland that carries a statutory penalty of more than two years, or a violation classified as a common-law offense for which the person received a term of imprisonment of more than two years loses the right to buy, rent, transfer, or possess a "regulated firearm,"[6] and may not be a licensed dealer of

---

[1] Md. Ann. Code art. 27, § 562C, however, provides that a state or local officer or employee who is convicted of extortion is, "notwithstanding any pardon," permanently barred from employment by state or local government.

[2] Effective October 1, 1996, "crime of violence" is defined to mean the following crimes or an attempt to commit any of them: abduction; arson in the first degree; burglary in the first, second, or third degree; carjacking; armed carjacking; escape; kidnapping; voluntary manslaughter; maiming; mayhem; murder in the first or second degree; rape in the first or second degree; robbery; robbery with a dangerous or deadly weapon; sexual offense in the first, second, or third degree. It also includes assault with intent to commit any of these offenses or any other offense punishable by imprisonment for more than one year. Md. Ann. Code art. 27, § 441(e).

[3] Expungement may be denied if the person has since been convicted of another crime (other than a traffic offense for which a prison sentence is not possible) or is presently under criminal charges. Md. Ann. Code art. 27, § 737(f)(1), (2).

[6] "Regulated firearm" means a handgun, defined in Md. Ann. Code art. 27, § 441(n) as a firearm with a barrel less than 16 inches long (including signal, starter, and blank pistols), or an assault weapon specified in Md. Ann. Code art. 27, § 441(d). Md. Ann. Code art. 27, § 441(r).

regulated firearms.  Md. Ann. Code art. 27, §§ 442(h)(2)(i); 443(d)(4)(iii); 445(b), (d).  Anyone convicted of a felony drug offense under Maryland law, or under federal law or the laws of any state if such conduct would be a felony drug offense under Maryland law, may not possess, own, carry, or transport a firearm.[7]  Md. Ann. Code art. 27, § 291A(b).  A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed (who has not been pardoned or granted relief from federal firearms disabilities), or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun.  Md. Ann. Code art. 27, § 36E(a)(2), (4); 36E(f).

---

[7] "Firearm" is defined to include handguns, rifles, shotguns, assault weapons, and machine guns.  Md. Ann. Code art. 27, § 291A(a).

IN THE COURT OF APPEALS OF MARYLAND

Misc. No. 16

September Term, 1996

---

IN THE MATTER OF THE APPLICATION OF
JOHN CURTIS DORTCH FOR ADMISSION TO
THE BAR OF MARYLAND

---

        *Murphy, C.J.
         Eldridge
         Rodowsky
         Chasanow
         Karwacki
         Bell
         Raker,

                        JJ.

---

  Concurring Opinion by Raker, J.,
in which Rodowsky, J., joins.

---

        Filed: January 6, 1997
*Murphy,   C.J.,   now   retired,
participated  in  the  hearing  and
conference  of  this  case  while  an
active  member  of  this  Court;  after
being   recalled   pursuant   to   the
Constitution,  Article  IV,  §3A,  he
also  participated  in  the  decision

and adoption of this opinion.

Seventeen years ago, Judge Marvin Smith asked "Do my colleagues propose permitting convicted murderers to become Maryland lawyers since they have not killed anyone lately?" *In re Application of A.T.*, 286 Md. 507, 518, 408 A.2d 1023, 1029 (1979) (Smith, J., dissenting). The answer to that question is "maybe."

Today, the Court holds that because Petitioner, a convicted murderer of a police officer, is still on parole, his "petition is therefore premature and is denied. He is free to file a new petition for admission if, and when, he is released from parole supervision." Maj. op. at 16. In so holding, the Court suggests that if Petitioner's parole were to be terminated tomorrow, he *might* be admitted. In contrast, I would deny his petition for admission to the Bar because he has not proven by clear and convincing evidence that he possesses the requisite present moral character to be admitted to the Bar of this State. *See In re Application of James G.*, 296 Md. 310, 314, 462 A.2d 1198, 1200-01 (1983). Six short years since Petitioner has been released from prison for second degree murder is an insufficient amount of time for us to find that he has satisfied his very heavy burden to establish that "he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion." *In re Application of Allan S.*, 282 Md. 683, 690, 387 A.2d 271, 275 (1978); *In re Application of George B.*, 297 Md. 421, 422, 466 A.2d 1286, 1286 (1983) (six years between release from prison and application for admission is "of

- 2 -

insufficient duration, considering the gravity of the offense committed"); *see also In re Polin*, 596 A. 2d 50, 54 n.5 (D.C. 1991).

It appears to me that Petitioner has not accepted responsibility for the crimes for which he was convicted. In his application to law school, dated August 6, 1990, after he served 15 years in prison, he characterized his murder conviction as an "injustice," an "abortion of justice," and one that was based on perjurious testimony by police officers. Petitioner's response to question 39D on his application to law school is indicative of his lack of responsibility, and reflects the following:

> Q. Describe a specific personal experience in which you were subjected to or witnessed some significant form of injustice. How did you deal with it? How do you think you should have dealt with it?

> A. I am an ex-offender, and I have witnessed and experienced improprieties in the administration of justice. By virtue of a guilty plea, I was convicted of second degree murder, attempted bank robbery, and conspiracy, and I served fifteen years in prison. I did not kill anyone nor did I attempt to kill anyone nor was I present at the scene of the homicide, but the alleged factual basis for my plea was predicated upon the felony murder concept, which stipulates that each conspirator is equally accountable for every and anything that transpires in the furtherance of a felony, even though he may not participate in the overt act. The injustice that I suffered was at the hands of both the defense counsel, whom I paid in advance, and the prosecution which condoned, if not encouraged, the perjurious testimonies of the complaining officers.

> However, I am not bitter, because I did break the law, but not to the extent to which I was charged and prosecuted. The bottom line is that I did break the law, and had not I broken the law, I would not have been

- 3 -

vulnerable to an abortion of justice.

I need not restate the facts surrounding this horrendous crime, committed when Petitioner was almost thirty years of age. It is significant to note, however, that Petitioner was the mastermind of an eight-person conspiracy to rob the Columbia Federal Savings and Loan. He went to the bank, armed with two loaded, sawed-off shotguns and two loaded revolvers. Although it was the bullet of his co-conspirator that killed Police Officer Gail Cobb, Dortch was obviously prepared to use deadly force to accomplish the goals of his criminal venture.[1]

Dortch was convicted of felony murder, attempted bank robbery and conspiracy. He was sentenced to prison for fifteen years to life, and released on parole in 1990. He graduated from law school in May, 1994, and applied for admission to the Maryland Bar in December, 1994. The Board of Law Examiners referred Petitioner's application to the Character Committee for the Sixth Judicial Circuit. Following an evidentiary hearing, the Committee recommended, by a 6-1 vote, that Petitioner be admitted to the Bar of Maryland. The State Board of Law Examiners decided that a formal hearing on the record on his fitness to practice law was

---

[1]     Petitioner testified at the hearing before the Character Committee of the Court of Appeals of Maryland for the Sixth Judicial Circuit that he envisioned firing "at most a warning shot, if any at all, a warning shot or something to get people's attention." It is patently obvious that sawed off shotguns are particularly deadly when fired, are not used for the purpose of firing warning shots.

- 4 -

unnecessary and instead conducted an informal hearing.[2]  *Cf. In re Polin*, 596 A.2d 50, 55 n.7 (D.C. 1991) (noting that when applicant has committed a felony or other serious crime, committee should conduct an independent investigation into applicant's behavior). While the Board's finding that the applicant possesses the requisite moral character is entitled to great weight, this Court must make its own independent evaluation of the applicant's present moral character.  *In re Application of Allan S.*, 282 Md. 683, 690-91, 387 A.2d 271, 276 (1978).  The ultimate decision regarding admission to the Bar rests with this Court.  *Id.* at 689, 387 A.2d at 275.

I recognize that this Court has joined with the majority of States in holding that there is no *per se* rule excluding all convicted felons from the bar.  *See* Maureen M. Carr, *The Effect of Prior Criminal Conduct on the Admission to Practice Law:  The Move to More Flexible Admission Standards*, 8 GEO. J. LEGAL ETHICS 367, 382-83 (describing majority approach of a presumptive disqualification for bar applicants convicted of a crime).  Nonetheless, I believe

---

[2]      In my view, under the circumstances of the this case, the Board of Law Examiners should have held a formal hearing.  The mere fact that a convicted murderer produces exemplary character references and has not committed a criminal act since his release from prison does not warrant an informal, off-the-record hearing by the Board of Law Examiners.  In fact, all this Court knows about Petitioner is the information he chose to present.  For example, we know little, if anything, about the business operation he headed in 1974, and the facts surrounding the sale of securities, which, at oral argument, Petitioner indicated were unregistered.

- 5 -

there are some crimes which are so serious that a *sufficient* showing of rehabilitation may be impossible to make. If any crime fits within that category, it is the murder of a police officer during the course of an attempted armed robbery of a bank. In this regard, the Supreme Court of New Jersey stated:

> An applicant's attitude and behavior subsequent to disqualifying misconduct must demonstrate a reformation of character so convincingly that it is proper to allow admission to a profession whose members must stand free from all suspicion. The more serious the misconduct, the greater showing of rehabilitation that will be required. . . . However, it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make. In all cases, the need to ensure the legitimacy of the judicial process remains paramount.

See *In re Matthews*, 94 N.J. 59, 462 A.2d 165, 176 (1983) (citations omitted). Murder, armed robbery, and conspiracy certainly qualify as "extremely damning past misconduct," thus making Petitioner's burden very heavy.

While agreeing with this Court that there is no litmus test to determine whether an applicant possesses good moral character, the District of Columbia Court of Appeals, in *In re Manville,* 494 A.2d 1289, 1296-97 (D.C. 1985) (*Manville I*), identified a list of factors the court found instructive in assessment of the moral fitness of applicant "whose backgrounds are tainted by criminal convictions." Those factors, intended to be illustrative and not exhaustive, read:

1. The nature and character of the offenses committed.

- 6 -

2.  The number and duration of offenses.

3.   The age and maturity of the applicant when the offenses were committed.

4.   The social and historical context in which the offenses were committed.

5.   The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6.   The grant or denial of a pardon for offenses committed.

7.  The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8.   The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9.  The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10.   The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11.   The opinions of character witnesses about the applicant's moral fitness.

*Id.* at 1296-97 (footnotes omitted).   At best, this applicant satisfies only three the eleven factors, specifically numbers 9, 10 and 11.  He fails to satisfy his heavy burden.

Moreover, the Court's ruling gives insufficient weight to the integrity of the legal system.   In the related area of attorney discipline, we have consistently noted that the purpose of disciplining attorneys is to protect the public.  *Attorney Griev. Comm. v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995).   The public's interest is not served by the admission of a convicted

- 7 -

murderer, a person who has demonstrated the most profound disregard for the law and for human life.

Not only must we be concerned with protecting the public, but we must also consider the public's respect for and confidence in the judicial system. I agree with the sentiments of Judge Terry on the District of Columbia Court of Appeals in *In re Manville,* 538 A.2d 1128, 1139 (D.C. 1988) (*Manville II*) (Terry, J., dissenting):

> The bar process is not . . . akin to the penal system where rehabilitation is one of the primary interests. The admissions process is aimed at selecting not only those persons who will honestly and competently handle their clients' interests, but also those persons who will not diminish respect for the legal profession as an institution . . . . Certainly the crimes involved here, murder, attempted armed robbery, and drug sales, are precisely the type of crimes which are serious enough to engender such public repugnance that admitting a person convicted of such a crime would seriously damage public confidence in the bar.

A person convicted of the murder of a police officer, attempted armed robbery, and conspiracy will not "`inspire the public confidence necessary to the proper performance of the duties of an attorney at law.'" *In re Prager*, 422 Mass. 86, 661 N.E.2d 84, 94 (1996) (quoting *In re Keenan*, 50 N.E.2d 785 (Mass. 1943)). The murder of a police officer, attempted armed robbery of a bank, and conspiracy rank among the most serious and repugnant crimes. I believe Dortch's admission to the Bar would be detrimental to the integrity of the Bar and the public interest.

It is ironic to note that if Petitioner were permitted to practice law in this State, and if he were to be called as a

- 8 -

witness in any judicial proceeding, his credibility could be impeached with his criminal convictions. *See* Maryland Rule 5-609; *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994). In addition, he cannot vote in this State, MD. CONST. art. I, § 4, he cannot hold office in this State, MD. CONST. art. I, § 12, he cannot serve on a jury, Md. Code (1974, 1995 Repl. Vol., 1996 Cum. Supp.) § 8-207(b)(5) of Courts and Judicial Proceedings Article, and he cannot hold a liquor license, Md. Code (1957, 1996 Repl. Vol.) Art. 2B, § 10-103.

Finally, the past decisions of this Court fully support denying Dortch's application to the Bar without encouragement to reapply when and if he is released from parole. We have denied admission to applicants who have committed much less serious crimes. In *In re David H.*, 283 Md. 632, 641, 392 A.2d 83, 88 (1978), we found a lack of good moral character based on five theft offenses over five years, the most serious of which involved breaking into a car and stealing a tape deck. Larceny pales in comparison to the taking of a human life during an armed robbery. *See also In re Application of G.S.*, 291 Md. 182, 433 A.2d 1159 (1981) (denial of admission following conviction for petty thefts).

If the Court's ruling even remotely suggests that Petitioner's application will be granted when his parole ends, then I cannot join the Court's opinion because Petitioner has not met, and indeed probably cannot meet, the heavy burden of proving good moral

- 9 -

character after the commission of a crime so heinous as this one.[3] If this Court's ruling means that we shall defer the decision on this petition with no intention of admitting Petitioner, then this ruling is unfair to Dortch as it holds out false hopes. *Cf. Manville I,* 494 A.2d at 1298 (Nebeker, J., dissenting) ("This court does the public, our bar, and our Admissions Committee an injustice when it hedges on these facts and orders further investigation."). This petition for admission to the Bar of Maryland should be denied, without any suggestion that Petitioner reapply when his parole is terminated.

I am authorized to state that Judge Rodowsky joins in the views expressed in this opinion.

---

[3]  It makes no sense to me for the Court to devote sixteen pages merely to state that we will not consider the application until Petitioner is released from parole.



**William D. Ford Federal Direct Loan Program**

DISCHARGE DENIED

FALSE CERTIFICATION OR

UNAUTHORIZED SIGNATURE/PAYMENT

5/7/2007

JOE JOHNSON JR.

607 AUDREY LN. APT 102
OXON HILL, MD  20745-2691

ACCOUNT #:  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-1

**Reason**
**For Notice**
Your loan(s) did not qualify for discharge for the reason(s) checked below:

| | |
|---|---|
| ☐ | Discharge Application not submitted and/or no response to our letter dated _____. |
| ☐ | Application still incomplete (another form is enclosed if you wish to resubmit). |
| ☐ | Student had a High School Diploma or GED at time of enrollment or received one before completing program of study at the school. |
| ☐ | Student received proper testing of the ability to benefit from the program of study before admission to the school. |
| ☐ | Student completed a developmental or remedial program at the school. |
| ☐ | After leaving school, student obtained a job in the occupation for which the school trained without further education or training. |
| ☐ | At the time the school certified or originated the loan(s), student met the legal requirements for employment in the state of residence in the occupation of the program of study. |
| ☐ | Signature sample documents either not received, not within the timeframe required, or do not clearly show that the signature in question was not yours. |
| ☐ | Information from another source (e.g., state licensing agency, school, Federal Student Aid (FSA) review) does not support a discharge. |
| ☒ | Other You did not inform the school of your status prior to enrollment. |

**Important**

| If loan(s): | Then we: |
|---|---|
| *In repayment** | Resumed collection of your loan(s) and granted a Forbearance of principal and interest for the period in which collection activity was suspended. You must resume repayment of your loan(s) immediately. We have capitalized any outstanding interest on the account. |
| *In school* | Show you leaving school on 06/30/2004 with a loan(s) balance of $30,259.06 and a grace period ending 06/30/2004. Your first payment of approximately $70.58 will be due two to six weeks after the grace period ends. |
| *In grace period* | Show your grace period will end 6/30/2004 and your first payment will be due two to six weeks after the grace period ends. |
| *\* PLUS loan(s) are considered in repayment within 60 days of final disbursement.* | |

If you have questions, please call our toll-free telephone number, which is **1-800-848-0979**. Hearing-impaired borrowers can call 1-800-848-0983.

DISKAV01



# LOAN DISCHARGE APPLICATION: FALSE CERTIFICATION (DISQUALIFYING STATUS)

Federal Family Education Loan Program / William D. Ford Federal Direct Loan Program

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying documents will be subject to penalties which may include fines, imprisonment or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0015
Form Approved
Exp. Date 8/31/2008

## SECTION 1: BORROWER IDENTIFICATION

**Last Name / First Name / Middle Initial:** Johnson, Joseph, JR.

**Social Security Number:** 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

**Street Address:** 607 Audrey La., #102

**Area Code/Telephone Number (Home):** (301) 839-0716

**City / State / Zip Code:** Oxon Hill MD 20745

**Area Code/Telephone Number (Other):**

**E-mail Address (optional):**

## SECTION 2: STUDENT INFORMATION

Before completing this section, carefully read the entire form, including the instructions, definitions, and terms and conditions in Sections 4, 5, and 6 on this form. If you are a student borrower applying for loan discharge, begin with item 3. If you are a parent borrower applying for a PLUS loan discharge, begin with item 1.

1. Student's name (last, first, middle initial): Johnson, Joseph Jr.

2. Student's SSN: |2|4|4|-|3|9|-|6|1|3|6|

3. School's name: University of Maryland University College

4. School's address (street, city, state, zip): Adelphi MD

5. Dates of attendance at the school: From |0|9|-|0|7|-|1|9|9|3| To |0|5|-|_|_|-|1|9|9|5|

6. Name of the program of study that you (or, for PLUS borrowers, the student) were enrolled in when the school certified or originated the loan that you are requesting to have discharged: LAW

7. To qualify for a loan discharge based on false certification due to a disqualifying status, you (or, for PLUS borrowers, the student) must have been unable – at the time the school certified or originated your loan – to meet the legal requirements for employment in your state of residence (or, for PLUS borrowers, in the student's state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or other reason. Indicate your disqualifying status by checking the appropriate box(es) below:

☐ Age  ☐ Physical condition  ☐ Mental condition  ☑ Criminal record  ☑ Other (please specify): incarceration

**Important:** You must provide documentation to prove that you (or, for PLUS borrowers, the student) had the disqualifying status at the time the school certified or originated your loan. Also, provide as much information as possible about the state legal requirements for employment that you (or, for PLUS borrowers, the student) could not meet. Include the title and/or section number of the specific state law or regulation, or attach a copy of the law or regulation. You may obtain this information from the appropriate state agency, such as the consumer protection office or department of labor and employment, from a public library, or from an internet site that contains state laws and regulations.

<see Attached Narrative 7

8. (a) Before certifying or originating the loan, did the school ask you (or, for PLUS borrowers, the student) if the disqualifying status explained in Item 7 existed?
☐ Yes  ☑ No  ☐ Don't Know

(b) Did you (or, for PLUS borrowers, the student) inform the school of the disqualifying status before the loan was certified or originated?
☐ Yes  ☐ No

9. Did the holder of your loan receive any money back (a refund) from the school on your behalf? ☐ Yes  ☐ No  ☑ Don't Know
If Yes, give the amount and explain why the money was refunded:

10. Did you (or, for PLUS borrowers, the student) make any monetary claim with, or receive any payment from, the school or any third party (see definition in Section 5) in connection with enrollment or attendance at the school? ☐ Yes  ☑ No  ☐ Don't Know    If Yes, please provide the following information:

(a) Name/address/telephone number of the party with whom the claim was made or from whom payment was received:

(b) Amount/status of claim: _____

(c) Amount of payment received: $ _____
(Write "none" if no payment was received.)

## SECTION 3: BORROWER CERTIFICATION

My signature below certifies that I have read and agree to the terms and conditions that apply to this loan discharge, as specified in Section 6 on the following page. Under penalty of perjury, I certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief.

**Borrower's Signature:** Joseph Johnson, Jr.    **Date:** 5/15/07

Page 1 of 2

## SECTION 4: INSTRUCTIONS FOR COMPLETING THE APPLICATION

Type or print using dark ink. For all dates, give month, day (if known), and year. Show dates as MM-DD-YYYY (for example, "January 31, 2006" = "01-31-2006"). If you need more space to answer any of the items, continue on separate sheets of paper and attach them to this form. Indicate the number of the item(s) you are answering and include your name and social security number (SSN) on all attached pages.

**Sign and date the form. Then, send the completed form and any attachments to the address in Section 8.**

## SECTION 5: DEFINITIONS

- The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans (both subsidized and unsubsidized), Federal Supplemental Loans for Students (SLS), Federal PLUS Loans, and Federal Consolidation Loans.

- The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Federal Direct Stafford/Ford Loans (Direct Subsidized Loans), Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans), Federal Direct PLUS Loans (Direct PLUS Loans), and Federal Direct Consolidation Loans (Direct Consolidation Loans).

- The **holder** of a borrower's FFEL Program loan(s) may be a lender, a guaranty agency, or the U.S. Department of Education (the Department). The holder of a borrower's Direct Loan Program loan(s) is the Department.

- **Loan discharge** due to false certification (disqualifying status) cancels the obligation of a borrower (and endorser, if applicable) to repay the remaining balance on a FFEL Program or Direct Loan Program loan, and qualifies the borrower for reimbursement of any amounts paid voluntarily or through forced collection on the loan. For consolidation loans, only the amount of the underlying loans (the loans that were consolidated) that were used to pay for the program of study listed in Item 6 will be considered for discharge. The loan holder reports the discharge to all credit reporting agencies to which the holder previously reported the status of the loan.

- The **student** refers to the student for whom a parent borrower obtained a Federal PLUS loan or Direct PLUS loan.

- **Program of study** means the instructional program leading to a degree or certificate in which you (or, for PLUS borrowers, the student) were enrolled.

- **Certification and origination** are steps in a school's processing of a loan. In the FFEL Program, a loan is certified when the school signs a loan application or submits an electronic loan record to the lender or guaranty agency after determining that the borrower meets all loan eligibility requirements. In the Direct Loan Program, a loan is originated when the school creates an electronic loan origination record after determining that the borrower meets all loan eligibility requirements.

- **Third party** refers to any entity that may provide reimbursement for a refund owed by the school, such as a tuition recovery program or performance bond.

## SECTION 6: TERMS AND CONDITIONS FOR LOAN DISCHARGE BASED ON FALSE CERTIFICATION (DISQUALIFYING STATUS)

- I received FFEL or Direct Loan program loan funds on or after January 1, 1986, to attend (or, if I am a PLUS borrower, for the student to attend) the school identified in Section 2 of this form. Those funds were either received by me directly, or applied as a credit to the amount owed to the school.

- I will provide, upon request, testimony, a sworn statement, or other documentation reasonably available to me that demonstrates to the satisfaction of the Department or its designee that I meet the qualifications for loan discharge based on false certification (disqualifying status), or that supports any representation that I made on this form or on any accompanying documents.

- I agree to cooperate with the Department or its designee regarding any enforcement actions related to my request for loan discharge.

- I understand that my request for loan discharge may be denied, or my discharge may be revoked, if I fail to provide testimony, a sworn statement, or documentation upon request, or if I provide testimony, a sworn statement, or documentation that does not support the material representations I have made on this form or on any accompanying documents.

- I further understand that if my loan(s) is discharged based on any false, fictitious, or fraudulent statements that I knowingly made on this form or on any accompanying documents, I may be subject to civil and criminal penalties under applicable federal law.

- I hereby assign and transfer to the Department any right to a refund on the discharged loan(s) that I may have from the school identified in Section 2 of this form and/or any owners, affiliates, or assigns of the school, and from any third party that may pay claims for a refund because of the actions of the school, up to the amounts discharged by the Department on my loan(s).

## SECTION 7: IMPORTANT NOTICES

**Privacy Act Disclosure Notice:** The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authorities for collecting the requested information from and about you are 428(b)(2)(A) et seq. and 451 et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq. and 20 U.S.C. 1087a et seq.) and the authority for collecting and using your Social Security Number (SSN) is 484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan (FFEL) Program or the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the FFEL Program and/or Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) becomes delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to financial and educational institutions, to guaranty agencies, and to contractors in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0015. The time required to complete this information collection is estimated to average 0.5 hours (30 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of this time estimate(s) or suggestions for improving this application, please write to: U.S. Department of Education, Washington, DC 20202-4651.

If you have questions regarding the status of your individual submission of this application, contact your loan holder (see Section 8).

## SECTION 8: WHERE TO SEND THE COMPLETED LOAN DISCHARGE APPLICATION

| *Send the completed loan discharge application and any attachments to:* *(If no address is shown, return to your loan holder.)* | *If you need help completing this form, call:* |
|---|---|
| **U.S. Department of Education** **Direct Loan Servicing Center** **PO Box 5609** **Greenville, TX 75403-5609** | **1(800) 848-0979** |

May 15, 2007

# Narrative in Support of Loan Discharge Application: False Certification (Disqualifying Status)

On February 16, 1993, the borrower was indicted on two felony offenses in the Arlington County Circuit Court for burglary and grand larceny, and was placed on two-year probation effective March 21, 1993. Thereafter, on August 21, 1995, the student was indicted on two felony offenses in the Arlington County Circuit Court for forgery and uttering a public record, which offenses occurred on or about June 7, 1995. The borrower was subsequently convicted and sentenced to four years in prison for those offenses on April 29, 1996. See Attachment 1 and 2.

Moreover, between January 11, 1993 and May 15, 2000, the borrower was incarcerated in State and Federal prisons, and the offenses that led to the borrower's convictions occurred prior to and during a period of enrollment for which the student was receiving federal student aid and when the loans were originated. See Attachment 3.

The borrower enrolled at the school following his convictions to obtain a degree in legal studies. Prior to the borrower's enrollment at the school, the school never inquired of the borrower of any disqualifying status that would otherwise prevent the borrower from meeting the legal requirements for employment in the occupation for which the program of study was intended. In fact, the schools' policy did not require the borrower to inform the school that the borrower had a physical condition, mental condition, criminal record, or incarceration status prior to enrollment. Nor did the school "ask any of that information" of the borrower. See Attachment 4.

The U.S. Department of Education has stated however that "[i]t is not required that the school be aware of the borrower's disqualifying condition when it certifies or originates the loan". See Attachment 5.

Before certifying or originating the loans, the school was responsible for verifying whether the borrower had a disqualifying status as defined under the Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations. The school failed to do so.

The borrower was unable to meet the legal requirements for employment in his state of residence in the occupation for which the program of study was intended at the time the school certified or originated the loans because of the borrower's prior felony criminal record and incarceration status.

A felony conviction is a ground for suspending, revoking, or denying a professional or occupational license in Maryland. Law Enforcement personnel are required to be licensed to carry firearms. A person convicted of a felony, a misdemeanor for which a sentence of imprisonment of more than one year has been imposed, or a misdemeanor drug offense

may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, 36E(a)(2),(e); 36E(f). See Attachment 6.

The Maryland Court of Appeals has held that Larceny pales in comparison to the taking of a human life during an armed robbery and is a sufficient basis to deny a license to practice law in Maryland. See In re Application of G.S., 291 Md. 182, 433 A.2d 1159 (1981)(denial of admission following conviction for petty thefts). In re John Curtis Dorth, Misc. No. 16, September Term, 1996. See Attachment 7.

The Maryland Department of Labor, Licensing and Regulation have stated that "obviously someone with such a conviction will have problems finding employment". See Attachment 8.

In sum, at the time the school certified or originated the loans, the school knew of the borrower's status prior to enrollment or should have known of the borrower's status but failed to inquire as was required of all Federal student loans. The borrower was unable to meet the legal requirements to pursue any occupation in Law Enforcement, or obtain a license to practice law in the State of Maryland, or obtain employment as a Paralegal for which the program of study was intended; at the time the school certified or originated the loans. The borrower's criminal record and incarceration status prevented the borrower from pursuing employment in his state of residence in the occupation for which the program of study was intended because there would certainly be some security questions or background checks that would be necessary for obtaining employment in the occupational field that was intended.

Accordingly, the loans should be discharged based on false certification due to these disqualifying statuses at the time the school certified or originated the loans.

## Attachment 1

93.321
Lm

V I R G I N I A :

### IN THE CIRCUIT COURT OF ARLINGTON COUNTY

#### February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSEPH JOHNSON JR. did break and enter or enter in the nighttime an office building located at 1735 N. Lynn Street, with intent to commit larceny.

Section 18.2-91, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
       Clerk

[ ]    A True Bill
[ ]    No True Bill

Indictment For Felony

_____
       Foreman

93·322

V I R G I N I A :

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSPEH JOHNSON JR. did steal a laser jet printer and a modem  having a value of $200.00 or more belonging to Resolution Trust Corporation.

Section 18.2-95, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
     Clerk

[ ]    A True Bill
[ ].   No True Bill

Indictment For Felony

_____
Foreman

COMMONWEALTH OF VIRGINIA

VS

CR93-321

JOSEPH JOHNSON, JR.

THE 3rd day of May, 1996 came the Commonwealth of Virginia, by its Attorney, Esther Wiggins, the Probation Officer for the Circuit Court of Arlington County, Virginia, the Defendant in the custody of the Sheriff and his Retained Attorney, Charles King.

WHEREUPON the Commonwealth moved the Court to revoke the Defendant's probation and the Defendant conceded he had violated the terms and conditions of his probation.

UPON CONSIDERATION WHEREOF it is the opinion of the Court that the Defendant is "Guilty" of violating the conditions of his probation and so finds.

IT IS THEREFORE ORDERED by the Court that twelve (12) months of the sentence heretofore imposed and suspended in this Court's order of April 21, 1993 be and it hereby is ordered into execution.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein was on or about December 28, 1992.

AND the Defendant is hereby remanded to jail.

Entered this 16TH day of May, 1996.

_____
JUDGE

A COPY:
TESTE. DAVID A. BELL, CLERK
BY _____
DEPUTY CLERK

VID A. BELL, CLERK
LINGTON COUNTY
LINGTON, VIRGINIA

**Attachment 2**

VIRGINIA:

951499

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 7th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR., did forge a public document, to wit: he did materially alter a Circuit Court Order.

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ Deputy Clerk
        Clerk

[ ]    A True Bill
[ ]    No True Bill

<u>Indictment For Felony</u>

_____
Foreman

Executed the within process this the
___ of _____ , 1995 ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
    Given under my hand this the
___ day of _____ , 19 95
Thomas N. Faust, Sheriff
Arlington County, Virginia
By:_____
        Deputy Sheriff

A Copy,
Teste: David A. Bell, Clerk

By_____
        Deputy Clerk
                        0001

COMMONWEALTH OF VIRGINIA

VS                                                                    CR95-1499

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

CR95-1499

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, find the Defendant guilty of <u>forging a public record</u> as charged in the indictment.

4/29/96                                                                              Brian Deitch
Date                                                                                    Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, having found the Defendant guilty of <u>forging a public record</u> fix punishment at <u>1) imprisonment for a specific term of 2 years.</u>

4/29/96                                                                              Brian Deitch
Date                                                                                    Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Forging a Public Record" as charged in the indictment herein.

0022

CR95-1499

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this _14th_ day of _June_, 1996.

_[signature]_
Judge

A COPY
TESTE: DAVID A. BELL, CLERK
BY _[signature]_
DEPUTY CLERK

0023

V I R G I N I A :

# 951500

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 16th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR. did utter or attempt to employ as true, a forged public document, to wit: a materially altered Circuit Court Order, knowing the same to be forged.

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ Deputy Clerk
      Clerk

[ ✓ ]   A True Bill
[ ]   No True Bill

Indictment For Felony

_____
Foreman

Executed the within process this the
24 of August , 19 95 ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
    Given under my hand this the
    24 day of August , 19 95
    Thomas N. Faust, Sheriff
    Arlington County, Virginia
    By: _____
        Deputy Sheriff

A Copy,
Teste: David A. Bell, Clerk

By _____
    Deputy Clerk

COMMONWEALTH OF VIRGINIA

vs                                                                                              CR95-1500

JOSEPH JOHNSON, JR.

    THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

    THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

    WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

    THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

    WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

    THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

    WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

    THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

    WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

    WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

YID  ...UL CLERK
  COUNTY
...GTON, VIRGINIA

CR95-1500

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, find the Defendant guilty of <u>uttering a forged public record</u> as charged in the indictment.

<u>4/29/96</u>
Date

<u>Brian Deitch</u>
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, having found the Defendant guilty of <u>uttering a forged public record</u> fix punishment at <u>1) imprisonment for specific term of 2 years.</u>

<u>4/29/96</u>
Date

<u>Brian Deitch</u>
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Uttering a Forged Public Record" as charged in the indictment herein.

GENERAL ORDER BOOK 0018 PAGE 1348

CR95-1500

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this 14th day of June, 1996.

_____
Judge

A COPY
TESTE: DAVID A. BELL, CLERK

BY _____
DEPUTY CLERK

VID A. BELL, CLERK
COUNTY
..... , VIRGINIA

0026

**Attachment 3**



**BETH ARTHUR
SHERIFF**

**ARLINGTON COUNTY, VIRGINIA**
OFFICE OF THE SHERIFF
COURTHOUSE
1425 N. COURTHOUSE ROAD, ROOM 9100
ARLINGTON, VIRGINIA 22201
(703) 228-4460
**DETENTION FACILITY**
1435 N. COURTHOUSE ROAD
ARLINGTON, VIRGINIA 22201
(703) 228-7287 OR 7286



December 28, 2006

Joseph Johnson, Jr.
607 Audrey Lane, 102
Oxon Hill, MD 20745
P-39585

Reference: Incarceration Dates

Dear Mr. Johnson

Per your request dated December 08, 2006 for your incarceration dates are as follows:

| | | |
|---|---|---|
| 01/11/93 to 01/12/93 | Grand Larceny & Burglary | Released to Bond |
| 08/11/95 to 10/26/95 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Bond |
| 04/29/96 to 05/15/96 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Federal Authority |
| 07/12/96 to 07/18/96 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Federal Authority |
| 08/23/96 to 09/11/96 | Forge Document (CR93-1500) | Released to VA Department of Corrections |

Unfortunately we only keep hard copy of our files for 3 years. This is the only information I am able to certify. You will have to contact the Federal Authorities and DOC that detained you for further documentation.

If you need any further information you may contact records at (703)228-4486.

D. A. Grenier S410
Deputy Sheriff II
Case Manager



# COMMONWEALTH of VIRGINIA

**GENE M. JOHNSON**
**DIRECTOR**

*Department of Corrections*

P. O. BOX 26963
RICHMOND, VIRGINIA 23261
(804) 674-3000

December 14, 2006

Mr. Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, Maryland 20745

Re: Incarceration History — Former VSP # 239045

Dear Mr. Johnson:

This office is in receipt of your request for verification of incarceration within the Virginia Department of Corrections.

Your incarceration history is as follows:

**VSP# 239045**

| | |
|---|---|
| 05/15/2000 | Not Active – Discharged Direct |
| 11/19/1999 | Greensville Correctional Center |
| 05/08/1998 | Lunenburg Correctional Center |
| 07/15/1997 | St. Brides Correctional Center |
| 07/10/1997 | Deep Meadow Correctional Center – Returned from Court |
| 01/16/1997 | Out of State Court |
| 11/01/1996 | Deep Meadow Correctional Center – Returned from Court |
| 09/25/1996 | Northern Neck Regional Jail – Out to Court |
| 09/11/1996 | Deep Meadow Correctional Center – New Prisoner Received |

I trust this information is helpful to you.

Sincerely,

*J. Tiede*

J. Tiede, Research Specialist
Central Criminal Records

Cc: File

**Attachment 4**

Compose  | Folders | Search |  Options

Message List | Delete                                    Previous | Next                    Forward | Forward as Attachment | Reply | Reply All

**Subject:** Transcript of chat session
**From:** "UMUC _CCSupport" <umuc_ccsupport@intellimark-IT.com>
**Date:** Tue, May 15, 2007 14:01
**To:** JJohnson@nambco.com
**Priority:** Normal
**Options:** View Full Header | View Printable Version | Download this as a file

Meredith: Hi, this is Meredith how may I help you?
Johnson, Joe: Which office are you with at the University?
Meredith: The one in Adelphi.
Johnson, Joe: Which division?
Meredith: Stateside division in Maryland.
Johnson, Joe: Correction, which division of the University are you in?
Meredith: This is the call center.
Johnson, Joe: O. Ok...
Meredith: I'm sorry we have so many locations I wasn't sure if you were asking that.
Meredith: I can answer some questions for you.
Johnson, Joe: So then my question is: does the University policy require students to inform the school of any disqualifying status the student might have prior to enrollment, such as his/her physical condition, mental condition, criminal record, or incarceration status prior to enrollment?
Meredith: We do not ask that information.
Meredith: The only time we need that information when you require special help.
Meredith: We have a disabilties office.
Meredith: But we do not ask any of that information on the application.
Johnson, Joe: So then are you saying that the University does not require any of that information prior to enrollment?
Meredith: No, we do not.
Johnson, Joe: Ok. Thank you. That's all I needed to confirm. Do you have a call back number or extension to where you might be reached.
Meredith: You can the call center at 1-800-888-8682 and ask for Meredith. I'm the only one here.
Johnson, Joe: Ok. Thank's Meredith.
Meredith: Thank you and have a good day.
Johnson, Joe: Also, are you able to email me this Chat session?
Meredith: Yes I can.
Meredith: At the email address you provided?
Johnson, Joe: Yes, and also, can you send a copy to my work email address which is: JJohnson@nambco.com
Meredith: That is the one you gave us when you logged into the chat.
Meredith: Anything else I can help with?
Johnson, Joe: Ok. Thank you. That would be all. You also have a good day.
Meredith: Thank you and have a good day.

This message has been scanned for viruses and dangerous content by MailScanner, and is believed to be clean.

**Attachments:**

untitled-[1]                    **2.1 k**            [ text/plain ]                    Download | View

Delete & Prev | Delete & Next

Move to: | INBOX |  Move

Take Address

**Viewing Full Header** - View message

X-NAM-MailScanner-From: myurkiewicz@technisource.com
X-NAM-MailScanner-SpamCheck: not spam, SpamAssassin (score=0.001, required 5,
    autolearn=not spam, HTML_MESSAGE 0.00)
X-NAM-MailScanner: Found to be clean
X-OriginalArrivalTime: 15 May 2007 18:01:20.0900 (UTC) FILETIME=[0B122C40:01C7971B]
To: <JJohnson@nambco.com>
Sender: "Yurkiewicz, Meredith" <myurkiewicz@Technisource.Com>
From: "UMUC _CCSupport" <umuc_ccsupport@Intellimark-IT.com>
Thread-Index: AceXGwsNG4hs7M+ZSpCSCQ+7mJCb6Q==
Thread-Topic: Transcript of chat session
X-MS-TNEF-Correlator:
X-MS-Has-Attach:
Message-ID: <7D2D0BBAAB69F54C8A1A3AD616793DC0025B793D@immail101.Intellimark-IT.Com>
Date: Tue, 15 May 2007 14:01:20 -0400
Subject: Transcript of chat session
Content-Type: multipart/alternative;
    boundary="----_=_NextPart_001_01C7971B.0B06716B"
MIME-Version: 1.0
Content-class: urn:content-classes:message
X-MimeOLE: Produced By Microsoft Exchange V6.5
Received: from immail101.Intellimark-IT.Com ([10.2.1.17]) by ns3.Intellimark-IT.Com with Microsoft SMTPSVC(6.0.3790.1830);
    Tue, 15 May 2007 14:01:20 -0400
Received: from ns3.Intellimark-IT.Com (unknown [206.192.20.68])
    by pluto.namgt.com (Postfix) with ESMTP id B29063E8022
    for <JJohnson@nambco.com>; Tue, 15 May 2007 18:01:21 +0000 (UTC)
Return-Path: myurkiewicz@technisource.com

**Attachment 5**

**Joe Johnson**

| | |
|---|---|
| **From:** | StudentAid [StudentAid@ncs.ed.gov] |
| **Sent:** | Monday, May 14, 2007 3:27 PM |
| **To:** | 'joe.johnson@namgt.com' |
| **Subject:** | RE: Loan Discharge: False Certification |

Thank you for your inquiry about federal student aid.

Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations state that a loan may be discharged if the student had a condition or status--including one based on physical or mental condition, age, or criminal record--that prevented the student from satisfying the physical or legal requirements of his or her state for admission to the program or from performing the occupation for.which the program of study was intended to prepare the student.

FFELs comprise FFEL Stafford Loans, FFEL PLUS Loans and FFEL Consolidation Loans. Direct Loans comprise Direct Stafford Loans, Direct PLUS Loans and Direct Consolidation Loans.

It is not required that the school be aware of the borrower's disqualifying condiñon when it certifies or originates the loan.

For spcific information, a borrower should contact the loan holder.

We hope this information is helpful.

E-Mail Unit
Student Aid on the Web
www.studentaid.ed.gov
Federal Student Aid


-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Friday, May 11, 2007 2:26 PM
To: dcs help
Subject: Loan Discharge: False Certification


To qualify for a loan discharge based on False Certification due to a disqualifying status, is a student required to inform a school of his/her disqualifying status prior to enrollment in order to be entitled to a discharge based on that disqualifying status, such as at the time the school certified or originated the loan the student was unable to meet the legal requirements for employment in his/her state in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or other reason?


--
This message has been scanned for viruses and dangerous content by MailScanner, and is believed to be clean.

************************************************************************

This email may contain confidential material.
If you were not an intended recipient,
Please notify the sender and delete all copies.
We may monitor email to and from our network.
************************************************************************

--
This message has been scanned for viruses and dangerous content by MailScanner, and is

**Viewing Full Header** - View message

```
X-NAM-MailScanner-From: studentaid@ncs.ed.gov
X-NAM-MailScanner-SpamCheck: not spam, SpamAssassin (score=0, required 5,
    autolearn=not spam)
X-NAM-MailScanner: Found to be clean
Content-Type: text/plain
X-Mailer: Internet Mail Service (5.5.2657.72)
MIME-Version: 1.0
Date: Mon, 14 May 2007 14:26:38 -0500
Subject: RE: Loan Discharge: False Certification
To: "'joe.johnson@namgt.com'" <joe.johnson@namgt.com>
From: StudentAid <StudentAid@ncs.ed.gov>
Message-ID: <8C7F8DCD39DE55429C6FA41FAEA5AD6BD72CC4@iowacescexch1.ic.ncs.com>
Received: by iowacescexch1.ic.ncs.com with Internet Mail Service (5.5.2657.72)
    id <29Z7T5NA>; Mon, 14 May 2007 14:26:45 -0500
Received: from iowacescexch1.ic.ncs.com ([159.182.114.124])
    by pedcsmx1.ncs.com with ESMTP; 14 May 2007 14:15:07 -0500
Received: from pedcsmx1.ncs.com (unknown [159.182.31.103])
    by pluto.namgt.com (Postfix) with ESMTP id 2E3AA3E8022
    for <joe.johnson@namgt.com>; Mon, 14 May 2007 19:15:07 +0000 (UTC)
Return-Path: studentaid@ncs.ed.gov
```

**Attachment 6**

# MARYLAND

## I.  RIGHTS TO VOTE, HOLD STATE OFFICE, AND SERVE ON A STATE JURY; SELECTED OCCUPATIONAL DISABILITIES

### A.    LOSS OF RIGHTS

A person convicted of "theft or other infamous crime" loses the right to vote. Md. Ann. Code art. 33, § 3-4(c). Anyone convicted of such an offense also loses the rights to hold public office and to serve on a jury, because these rights are contingent upon being a registered voter. Md. Const. art. I, § 12; Md. Ann. Code art. 33, § 4A-1(a); Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(1). In addition, persons convicted of bribery or attempted bribery or of buying or selling votes are forever disenfranchised and disqualified from holding an office of profit or trust. Md. Const. art I, § 6; art. III, § 50; Md. Ann. Code art. 33, § 3-4(b)(6). A state elected official or a member of a state board or commission can be suspended and removed from office upon a felony conviction. Md. Const. art. XV, § 2; Md. Ann. Code art. 41, § 1-204(a). A state judge may be removed upon conviction of any crime, Md. Const. art. IV, § 4, and a state's attorney may be removed upon conviction of bribery. Md. Const. art. V, § 9.

In addition, a person who has been convicted of a crime punishable by a fine of more than $500 or by imprisonment of more than six months or both and who received a sentence of a fine of more than $500 or more than six months' imprisonment or both may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(5). A person convicted of falsifying a juror qualification form may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(6). Persons convicted of bribing a juror or accepting a bribe as a juror are forever disqualified from sitting on a jury. Md. Ann. Code art. 27, § 25.

A felony conviction may be grounds for suspending, revoking, or denying a professional or occupational license. E.g.: veterinary medicine (Md. Code Ann., Agric. § 2-310(2), (3), (4)); accounting (Md. Code Ann., Bus. Occ. & Prof. § 2-315(a)(3)); dentistry (Md. Code Ann., Health Occ. § 4-315(a)(4)); nursing (Md. Code Ann., Health Occ. § 8-316(a)(4)); optometry (Md. Code Ann., Health Occ. § 11-313(3)). A person convicted of a drug offense committed on or after January 1, 1991, may be required to disclose the conviction as a condition of the issuance or renewal of a license, and the license may be denied, suspended, or revoked because of the conviction. Md. Ann. Code art. 41, §§ 1-502, 1-503. See also Md. Ann. Code art. 27, § 298A (court to notify licensing authorities of certain drug convictions). Maryland has a registration requirement for child sex offenders. Md. Ann. Code art. 27, § 692B (renumbered to § 792 effective October 1, 1996).

### B.    RESTORATION OF RIGHTS/REMOVAL OF DISABILITIES

The disability from voting for a first offender lasts only until the sentence is completed, including probation or parole, Md. Ann. Code, art. 33, § 3-4(c) (except for persons convicted of bribery, attempted bribery, or buying or selling votes, who are permanently disenfranchised and disqualified from holding office, Md. Const. art. I, § 6; art. III, § 50). As a result, first offenders

also regain the right to hold office upon completion of sentence.[3] The right to serve on a jury is also restored upon completion of sentence, to the extent that the disability flows from being ineligible to vote; however, any disability relating to the nature of the offense or sentence under Md. Code Ann. Cts. & Jud. Proc. § 8-207(b)(5), (6), or Md. Ann. Code art. 27, § 25, presumably must be removed by a pardon. Recidivists must obtain a pardon in order to regain their civil rights.

The pardon power is vested in the Governor, except in cases of impeachment. Md. Const. art. II, § 20. The Maryland Parole Commission makes a recommendation to the Governor about every pardon application. Md. Ann. Code art. 41, § 4-504(b)(3). According to the Maryland Parole Commission, a person convicted under federal law or the law of another state is ineligible for a gubernatorial pardon.

A person who has been convicted of only one state criminal act, which is not a "crime of violence,"[4] and who has received a full and unconditional pardon from the Governor, may petition for expungement of police and court records pertaining to the charge. Md. Ann. Code art. 27, § 737(a)(7).[5] In addition, a procedure for imposing probation prior to judgment is available for state offenses, which provides that upon successful completion of probation the person is discharged without judgment of conviction and is not "convicted" for the purposes of any disqualification or disability imposed because of conviction of crime. Md. Ann. Code art. 27, § 641.

## II.    LOSS AND RESTORATION OF STATE FIREARMS PRIVILEGES

Effective October 1, 1996, a person convicted of a "crime of violence," a violation classified as a felony in Maryland, a violation classified as a misdemeanor in Maryland that carries a statutory penalty of more than two years, or a violation classified as a common-law offense for which the person received a term of imprisonment of more than two years loses the right to buy, rent, transfer, or possess a "regulated firearm,"[6] and may not be a licensed dealer of

---

[1] Md. Ann. Code art. 27, § 562C, however, provides that a state or local officer or employee who is convicted of extortion is, "notwithstanding any pardon," permanently barred from employment by state or local government.

[2] Effective October 1, 1996, "crime of violence" is defined to mean the following crimes or an attempt to commit any of them: abduction; arson in the first degree; burglary in the first, second, or third degree; carjacking; armed carjacking; escape; kidnapping; voluntary manslaughter; maiming; mayhem; murder in the first or second degree; rape in the first or second degree; robbery; robbery with a dangerous or deadly weapon; sexual offense in the first, second, or third degree. It also includes assault with intent to commit any of these offenses or any other offense punishable by imprisonment for more than one year. Md. Ann. Code art. 27, § 441(e).

[3] Expungement may be denied if the person has since been convicted of another crime (other than a traffic offense for which a prison sentence is not possible) or is presently under criminal charges. Md. Ann. Code art. 27, § 737(f)(1), (2).

[6] "Regulated firearm" means a handgun, defined in Md. Ann. Code art. 27, § 441(n) as a firearm with a barrel less than 16 inches long (including signal, starter, and blank pistols), or an assault weapon specified in Md. Ann. Code art. 27, § 441(d). Md. Ann. Code art. 27, § 441(r).

regulated firearms. Md. Ann. Code art. 27, §§ 442(h)(2)(i); 443(d)(4)(iii); 445(b), (d). Anyone convicted of a felony drug offense under Maryland law, or under federal law or the laws of any state if such conduct would be a felony drug offense under Maryland law, may not possess, own, carry, or transport a firearm.[7] Md. Ann. Code art. 27, § 291A(b). A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed (who has not been pardoned or granted relief from federal firearms disabilities), or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, § 36E(a)(2), (4); 36E(f).

---

[7] "Firearm" is defined to include handguns, rifles, shotguns, assault weapons, and machine guns. Md. Ann. Code art. 27, § 291A(a).

**Attachment 7**

<u>IN THE COURT OF APPEALS OF MARYLAND</u>

Misc. No. 16

September Term, 1996

---

IN THE MATTER OF THE APPLICATION OF
JOHN CURTIS DORTCH FOR ADMISSION TO
THE BAR OF MARYLAND

---

*Murphy, C.J.
Eldridge
Rodowsky
Chasanow
Karwacki
Bell
Raker,

JJ.

---

Concurring Opinion by Raker, J.,
in which Rodowsky, J., joins.

---

Filed: January 6, 1997
*Murphy, C.J., now retired,
participated in the hearing and
conference of this case while an
active member of this Court; after
being recalled pursuant to the
Constitution, Article IV, §3A, he
also participated in the decision

and adoption of this opinion.

Seventeen years ago, Judge Marvin Smith asked "Do my colleagues propose permitting convicted murderers to become Maryland lawyers since they have not killed anyone lately?" *In re Application of A.T.*, 286 Md. 507, 518, 408 A.2d 1023, 1029 (1979) (Smith, J., dissenting). The answer to that question is "maybe."

Today, the Court holds that because Petitioner, a convicted murderer of a police officer, is still on parole, his "petition is therefore premature and is denied. He is free to file a new petition for admission if, and when, he is released from parole supervision." Maj. op. at 16. In so holding, the Court suggests that if Petitioner's parole were to be terminated tomorrow, he *might* be admitted. In contrast, I would deny his petition for admission to the Bar because he has not proven by clear and convincing evidence that he possesses the requisite present moral character to be admitted to the Bar of this State. *See In re Application of James G.*, 296 Md. 310, 314, 462 A.2d 1198, 1200-01 (1983). Six short years since Petitioner has been released from prison for second degree murder is an insufficient amount of time for us to find that he has satisfied his very heavy burden to establish that "he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion." *In re Application of Allan S.*, 282 Md. 683, 690, 387 A.2d 271, 275 (1978); *In re Application of George B.*, 297 Md. 421, 422, 466 A.2d 1286, 1286 (1983) (six years between release from prison and application for admission is "of

- 2 -

insufficient duration, considering the gravity of the offense committed"); *see also In re Polin*, 596 A. 2d 50, 54 n.5 (D.C. 1991).

It appears to me that Petitioner has not accepted responsibility for the crimes for which he was convicted. In his application to law school, dated August 6, 1990, after he served 15 years in prison, he characterized his murder conviction as an "injustice," an "abortion of justice," and one that was based on perjurious testimony by police officers. Petitioner's response to question 39D on his application to law school is indicative of his lack of responsibility, and reflects the following:

Q. Describe a specific personal experience in which you were subjected to or witnessed some significant form of injustice. How did you deal with it? How do you think you should have dealt with it?

A. I am an ex-offender, and I have witnessed and experienced improprieties in the administration of justice. By virtue of a guilty plea, I was convicted of second degree murder, attempted bank robbery, and conspiracy, and I served fifteen years in prison. I did not kill anyone nor did I attempt to kill anyone nor was I present at the scene of the homicide, but the alleged factual basis for my plea was predicated upon the felony murder concept, which stipulates that each conspirator is equally accountable for every and anything that transpires in the furtherance of a felony, even though he may not participate in the overt act. The injustice that I suffered was at the hands of both the defense counsel, whom I paid in advance, and the prosecution which condoned, if not encouraged, the perjurious testimonies of the complaining officers.

However, I am not bitter, because I did break the law, but not to the extent to which I was charged and prosecuted. The bottom line is that I did break the law, and had not I broken the law, I would not have been

- 3 -

vulnerable to an abortion of justice.

I need not restate the facts surrounding this horrendous crime, committed when Petitioner was almost thirty years of age. It is significant to note, however, that Petitioner was the mastermind of an eight-person conspiracy to rob the Columbia Federal Savings and Loan. He went to the bank, armed with two loaded, sawed-off shotguns and two loaded revolvers. Although it was the bullet of his co-conspirator that killed Police Officer Gail Cobb, Dortch was obviously prepared to use deadly force to accomplish the goals of his criminal venture.[1]

Dortch was convicted of felony murder, attempted bank robbery and conspiracy. He was sentenced to prison for fifteen years to life, and released on parole in 1990. He graduated from law school in May, 1994, and applied for admission to the Maryland Bar in December, 1994. The Board of Law Examiners referred Petitioner's application to the Character Committee for the Sixth Judicial Circuit. Following an evidentiary hearing, the Committee recommended, by a 6-1 vote, that Petitioner be admitted to the Bar of Maryland. The State Board of Law Examiners decided that a formal hearing on the record on his fitness to practice law was

---

[1]    Petitioner testified at the hearing before the Character Committee of the Court of Appeals of Maryland for the Sixth Judicial Circuit that he envisioned firing "at most a warning shot, if any at all, a warning shot or something to get people's attention." It is patently obvious that sawed off shotguns are particularly deadly when fired, are not used for the purpose of firing warning shots.

- 4 -

unnecessary and instead conducted an informal hearing.[2]  *Cf. In re*

*Polin*, 596 A.2d 50, 55 n.7 (D.C. 1991) (noting that when applicant

has committed a felony or other serious crime, committee should

conduct an independent investigation into applicant's behavior).

While the Board's finding that the applicant possesses the

requisite moral character is entitled to great weight, this Court

must make its own independent evaluation of the applicant's present

moral character.  *In re Application of Allan S.*, 282 Md. 683, 690-

91, 387 A.2d 271, 276 (1978).   The ultimate decision regarding

admission to the Bar rests with this Court.  *Id.* at 689, 387 A.2d

at 275.

I recognize that this Court has joined with the majority of

States in holding that there is no *per se* rule excluding all

convicted felons from the bar.  *See* Maureen M. Carr, *The Effect of*

*Prior Criminal Conduct on the Admission to Practice Law:   The Move*

*to More Flexible Admission Standards*, 8 GEO. J. LEGAL ETHICS 367, 382-

83 (describing majority approach of a presumptive disqualification

for bar applicants convicted of a crime).   Nonetheless, I believe

---

[2]   In my view, under the circumstances of the this case, the
Board of Law Examiners should have held a formal hearing.  The mere
fact that a convicted murderer produces exemplary character
references and has not committed a criminal act since his release
from prison does not warrant an informal, off-the-record hearing by
the Board of Law Examiners.  In fact, all this Court knows about
Petitioner is the information he chose to present.  For example, we
know little, if anything, about the business operation he headed in
1974, and the facts surrounding the sale of securities, which, at
oral argument, Petitioner indicated were unregistered.

- 5 -

there are some crimes which are so serious that a *sufficient* showing of rehabilitation may be impossible to make.  If any crime fits within that category, it is the murder of a police officer during the course of an attempted armed robbery of a bank.  In this regard, the Supreme Court of New Jersey stated:

> An applicant's attitude and behavior subsequent to disqualifying misconduct must demonstrate a reformation of character so convincingly that it is proper to allow admission to a profession whose members must stand free from all suspicion.  The more serious the misconduct, the greater showing of rehabilitation that will be required. . . . However, it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make.  In all cases, the need to ensure the legitimacy of the judicial process remains paramount.

*See In re Matthews,* 94 N.J. 59, 462 A.2d 165, 176 (1983) (citations omitted).  Murder, armed robbery, and conspiracy certainly qualify as "extremely damning past misconduct," thus making Petitioner's burden very heavy.

While agreeing with this Court that there is no litmus test to determine whether an applicant possesses good moral character, the District of Columbia Court of Appeals, in *In re Manville,* 494 A.2d 1289, 1296-97 (D.C. 1985) (*Manville I*), identified a list of factors the court found instructive in assessment of the moral fitness of applicant "whose backgrounds are tainted by criminal convictions."  Those factors, intended to be illustrative and not exhaustive, read:

1.  The nature and character of the offenses committed.

- 6 -

2.   The number and duration of offenses.

3.   The age and maturity of the applicant when the offenses were committed.

4.   The social and historical context in which the offenses were committed.

5.   The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6.   The grant or denial of a pardon for offenses committed.

7.   The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8.   The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9.   The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10.   The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11.   The opinions of character witnesses about the applicant's moral fitness.

*Id.* at 1296-97 (footnotes omitted).   At best, this applicant satisfies only three the eleven factors, specifically numbers 9, 10 and 11.  He fails to satisfy his heavy burden.

Moreover, the Court's ruling gives insufficient weight to the integrity of the legal system.  In the related area of attorney discipline, we have consistently noted that the purpose of disciplining attorneys is to protect the public.  *Attorney Griev. Comm. v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995).  The public's interest is not served by the admission of a convicted

- . 7 -

murderer, a person who has demonstrated the most profound disregard for the law and for human life.

Not only must we be concerned with protecting the public, but we must also consider the public's respect for and confidence in the judicial system. I agree with the sentiments of Judge Terry on the District of Columbia Court of Appeals in *In re Manville*, 538 A.2d 1128, 1139 (D.C. 1988) (*Manville II*) (Terry, J., dissenting):

> The bar process is not . . . akin to the penal system where rehabilitation is one of the primary interests. The admissions process is aimed at selecting not only those persons who will honestly and competently handle their clients' interests, but also those persons who will not diminish respect for the legal profession as an institution . . . . Certainly the crimes involved here, murder, attempted armed robbery, and drug sales, are precisely the type of crimes which are serious enough to engender such public repugnance that admitting a person convicted of such a crime would seriously damage public confidence in the bar.

A person convicted of the murder of a police officer, attempted armed robbery, and conspiracy will not "'inspire the public confidence necessary to the proper performance of the duties of an attorney at law.'" *In re Prager*, 422 Mass. 86, 661 N.E.2d 84, 94 (1996) (quoting *In re Keenan*, 50 N.E.2d 785 (Mass. 1943)). The murder of a police officer, attempted armed robbery of a bank, and conspiracy rank among the most serious and repugnant crimes. I believe Dortch's admission to the Bar would be detrimental to the integrity of the Bar and the public interest.

It is ironic to note that if Petitioner were permitted to practice law in this State, and if he were to be called as a

- 8 -

witness in any judicial proceeding, his credibility could be impeached with his criminal convictions. *See* Maryland Rule 5-609; *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994). In addition, he cannot vote in this State, MD. CONST. art. I, § 4, he cannot hold office in this State, MD. CONST. art. I, § 12, he cannot serve on a jury, Md. Code (1974, 1995 Repl. Vol., 1996 Cum. Supp.) § 8-207(b)(5) of Courts and Judicial Proceedings Article, and he cannot hold a liquor license, Md. Code (1957, 1996 Repl. Vol.) Art. 2B, § 10-103.

Finally, the past decisions of this Court fully support denying Dortch's application to the Bar without encouragement to reapply when and if he is released from parole. We have denied admission to applicants who have committed much less serious crimes. In *In re David H.*, 283 Md. 632, 641, 392 A.2d 83, 88 (1978), we found a lack of good moral character based on five theft offenses over five years, the most serious of which involved breaking into a car and stealing a tape deck. Larceny pales in comparison to the taking of a human life during an armed robbery. *See also In re Application of G.S.*, 291 Md. 182, 433 A.2d 1159 (1981) (denial of admission following conviction for petty thefts).

If the Court's ruling even remotely suggests that Petitioner's application will be granted when his parole ends, then I cannot join the Court's opinion because Petitioner has not met, and indeed probably cannot meet, the heavy burden of proving good moral

- 9 -

character after the commission of a crime so heinous as this one.[3] If this Court's ruling means that we shall defer the decision on this petition with no intention of admitting Petitioner, then this ruling is unfair to Dortch as it holds out false hopes. *Cf. Manville I,* 494 A.2d at 1298 (Nebeker, J., dissenting) ("This court does the public, our bar, and our Admissions Committee an injustice when it hedges on these facts and orders further investigation."). This petition for admission to the Bar of Maryland should be denied, without any suggestion that Petitioner reapply when his parole is terminated.

I am authorized to state that Judge Rodowsky joins in the views expressed in this opinion.

---

[3]    It makes no sense to me for the Court to devote sixteen pages merely to state that we will not consider the application until Petitioner is released from parole.

**Attachment 8**



"Sarah Harian"
<sharian@dllr.state.md
.us>

02/02/2007 11:51 AM

To:
cc: "ehoward" <ehoward@dllr.state.md.us>
Subject: Re: Employment Restriction

As an attorney with the Department of Labor, Licensing and Regulation, I can only address legal matters.
Obviously someone with such a conviction will have problems finding employment.

Julie Squire.



**DISCHARGE DENIED**

FALSE CERTIFICATION OR

UNAUTHORIZED SIGNATURE/PAYMENT

6/14/2007

JOE JOHNSON JR

607 AUDREY LN. APT 102
OXON HILL, MD 20745-2691

ACCOUNT #: 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-1

**Reason
For Notice**
Your loan(s) did not qualify for discharge for the reason(s) checked below:

☐ Discharge Application not submitted and/or no response to our letter dated _____.

☐ Application still incomplete (another form is enclosed if you wish to resubmit).

☐ Student had a High School Diploma or GED at time of enrollment or received one before completing program of study at the school.

☐ Student received proper testing of the ability to benefit from the program of study before admission to the school.

☐ Student completed a developmental or remedial program at the school.

☐ After leaving school, student obtained a job in the occupation for which the school trained without further education or training.

☐ At the time the school certified or originated the loan(s), student met the legal requirements for employment in the state of residence in the occupation of the program of study.

☐ Signature sample documents either not received, not within the timeframe required, or do not clearly show that the signature in question was not yours.

☐ Information from another source (e.g., state licensing agency, school, Federal Student Aid (FSA) review) does not support a discharge.

☒ Other You must provide documentation proving you were denied for a license due to a criminal record.

**Important**

| If loan(s): | Then we: |
|---|---|
| *In repayment** | Resumed collection of your loan(s) and granted a Forbearance of principal and interest for the period in which collection activity was suspended. You must resume repayment of your loan(s) immediately. We have capitalized any outstanding interest on the account. |
| *In school* | Show you leaving school on 06/30/2004 with a loan(s) balance of $30,259.06 and a grace period ending 06/30/2004. Your first payment of approximately $70.58 will be due two to six weeks after the grace period ends. |
| *In grace period* | Show your grace period will end 6/30/2004 and your first payment will be due two to six weeks after the grace period ends. |
| *** PLUS loan(s) are considered in repayment within 60 days of final disbursement.* | |

If you have questions, please call our toll-free telephone number, which is **1-800-848-0979.** Hearing-impaired borrowers can call 1-800-848-0983.

DISKAV01

May 15, 2007

Jeff Baker
PLI
Federal Student Aid
U.S. Department of Education
830 First Street, Room 113C1
Washington, DC   20202

      Re:    Loan Discharge Application
              Account #244396136

Dear Mr. Baker:

The purpose of this correspondence is to appeal the decision rendered by the lender of the above referenced Student loan account.

Specifically, on or about November 20, 2006, the undersigned submitted a Loan Discharge Application to the lender of the above referenced Student loan account based on false certification due to a disqualifying status. The documentation submitted in support of the application established that at the time the school certified or originated the loan the undersigned was unable to meet the legal requirements for employment in the State of Maryland in the occupation for which the program of study was intended because of the undersigned's criminal record and incarceration status. See Attachment 1.

By letter dated May 7, 2007, the lender denied the discharge and held that the undersigned did not inform the school of the undersigned's status prior to enrollment. See Attachment 2.

Prior to the undersigned's enrollment at the school, the school never inquired of the undersigned of any disqualifying status that would otherwise prevent the undersigned from meeting the legal requirements for employment in the occupation for which the program of study was intended. In fact, the school's policy does not require a student to inform the school that he/she has a physical condition, mental condition, criminal record, or incarceration status prior to enrollment. Nor does the school "ask any of that information" of prospective students. See Attachment 3.

Moreover, by an email dated May 14, 2007, the U.S. Department of Education, Email Unit stated that "[i]t is not required that the school be aware of the borrower's disqualifying condition when it certifies or originates the loan". See Attachment 4.

Before certifying or originating the loans, the school was responsible for verifying whether the undersigned had a disqualifying status as defined under the Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations. The school failed to do so.

Based on the foregoing, it is requested that the lender's decision be overturned and the application for discharge be granted based on the disqualifying statuses stated therein. In the event this appeal is not handled by your office, the undersigned would appreciate that you extend the courtesy and forward this appeal to the appropriate Departmental office within your agency that does review these types of appeals

Should you have any questions, please let me know.

Sincerely,

*Joseph Johnson, Jr.*
Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, MD   20745

Enclosure

## Attachment 1



## LOAN DISCHARGE APPLICATION:
## FALSE CERTIFICATION (DISQUALIFYING STATUS)
**Federal Family Education Loan Program / William D. Ford Federal Direct Loan Program**
WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or on any
accompanying documents will be subject to penalties which may include fines, imprisonment or both, under the U.S.
Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0015
Form Approved
Exp. Date 06/30/2005

### SECTION 1: BORROWER IDENTIFICATION

Please enter or correct the following information. If a correction, check this box: ☐

SSN |2|4|4|-|3|9|-|6|1|3|6|

Name _Joseph Johnson, Jr._

Address _607 Audrey Ln. #102_

City, State, Zip _Oxon Hill, MD  20745_

Telephone - Home (_301_) _839-0716_

Telephone - Other (___) _____

E-mail (optional) _____

### SECTION 2: STUDENT INFORMATION

*Before responding, carefully read the entire form, including the instructions and other information on the following page. If you are a student borrower applying for loan discharge, begin with Item 3. If you are a parent borrower applying for a PLUS loan discharge, begin with Item 1.*

1. Student's name (last, first, middle initial):
_Joseph Johnson, Jr._

2. Student's SSN: |2|4|4|-|3|9|-|6|1|3|6|

3. School's name:
_University of Maryland University College_

4. School's address (street, city, state, zip):

5. Dates of attendance at the school: From |0|9|-|0|7|-|1|9|9|3| To |0|5|-|_|-|1|9|9|5|

6. Name of the program of study that you (or, for PLUS borrowers, the student) were enrolled in when the school certified or originated the loan that you are requesting to have discharged: _Law_

7. To qualify for a loan discharge based on false certification due to a disqualifying status, you (or, for PLUS borrowers, the student) must have been unable – at the time the school certified or originated your loan – to meet the legal requirements for employment in your state of residence (or, for PLUS borrowers, in the student's state of residence) in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or other reason. Indicate your disqualifying status by checking the appropriate box(es) below:

☐ Age   ☐ Physical condition   ☐ Mental condition   ☑ Criminal record   ☑ Other (please specify): _Incarceration_

You must provide documentation to prove that you (or, for PLUS borrowers, the student) had the disqualifying status at the time the school certified or originated your loan. Also, provide as much information as possible about the state legal requirements for employment that you (or, for PLUS borrowers, the student) could not meet. Include the title and/or section number of the specific state law or regulation, or attach a copy of the law or regulation. You may obtain this information from the appropriate state agency, such as the consumer protection office or department of labor and employment, from a public library, or from an internet site that contains state laws and regulations.

_< see attached Narrative and Documentation >_

8. (a) Before certifying or originating the loan, did the school ask you (or, for PLUS borrowers, the student) if the disqualifying status explained in Item 7 existed?
☐ Yes   ☑ No   ☐ Don't Know

(b) Did you (or, for PLUS borrowers, the student) inform the school of the disqualifying status before the loan was certified or originated?
☐ Yes   ☐ No

9. Did the holder of your loan receive any money back (a refund) from the school on your behalf? ☐ Yes   ☐ No   ☑ Don't Know
If Yes, give the amount and explain why the money was refunded:

10. Did you (or, for PLUS borrowers, the student) make any monetary claim with, or receive any payment from, the school or any third party (see definition in Section 6) in connection with enrollment or attendance at the school? ☐ Yes   ☑ No   ☐ Don't Know   If Yes, please provide the following information:

(a) Name/address/telephone number of the party with whom the claim was made or from whom payment was received:

(b) Amount/status of claim:

(c) Amount of payment received: $_____
(Write "none" if no payment was received.)

### SECTION 3: BORROWER CERTIFICATION

My signature below certifies that I have read and agree to the terms and conditions that apply to this loan discharge, as specified in Section 6 on the following page. Under penalty of perjury, I certify that all of the information I have provided on this form and in any accompanying documentation is true and accurate to the best of my knowledge and belief.

Borrower's Signature: _Joseph Johnson, Jr._                        Date: _11/20/06_

November 21, 2006

## Narrative in Support of Loan Discharge Application: False Certification (Disqualifying Status)

On February 16, 1993, the borrower was under two criminal felony indictments in the Arlington County Circuit Court for burglary and grand larceny, and was placed on two year probation effective March 21, 1993. Thus, at the time the school certified or originated the loans, the borrower was unable to meet the legal requirement for employment in his state of residence in the occupation for which the program of study was intended because the borrower was on probation for having committed a felon. The Maryland Court of Appeals has held that Larceny pales in comparison to the taking of a human life during an armed robbery. See In re Application of G.S., 291 Md. 182, 433 A.2d 1159(1981)(denial of admission following conviction for petty thefts).In re John Curtis Dorth, Misc. No. 16, September Term, 1996.

Based on current Maryland State law, at the time the school certified  or originated the loans, the borrower was unable to meet the legal requirements to pursue any occupation in either law enforcement or bar admission to practice law in the State of Maryland for which the program of study was intended because the borrower was convicted of felons and was on probation that operated as a bar to the borrower pursuing any occupation in law enforcement or admission to practice law in the State of Maryland.

A felony conviction is a ground for suspending, revoking, or denying a professional or occupational license in Maryland. Law Enforcement personnel are required to be licensed to carry firearms. A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed, or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun. Md. Ann. Code art. 27, 36E(a)(2),(4); 36E(f).

The borrower was convicted of a felon and misdemeanor and thus under Maryland law could not be licensed to carry a firearm and therefore obtain an occupation in law enforcement.

Accordingly, at the time the school certified or originated the loans, the borrower was unable to meet the legal requirements for employment in Maryland in either Law Enforcement or Bar Admission to practice law in the Maryland. The loans should therefore be discharged based on false certification due to this disqualifying status.

Attached is relevant case law in the State of Maryland.

93.321
Lm

V I R G I N I A :

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSEPH JOHNSON JR. did break and enter or enter in the nighttime an office building located at 1735 N. Lynn Street, with intent to commit larceny.

Section 18.2-91, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand Jury by the Court to give evidence: Detective Laravie, Arlington County Police Dept.

TESTE: _____
       Clerk

[ ]   A True Bill
[ ]   No True Bill

<u>Indictment For Felony</u>

_____
       Foreman

93·322

VIRGINIA:

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

February 16, 1993

The Grand Jury charges that:

On or about the 28th of December, 1992, in the County of Arlington, JOSPEH JOHNSON JR. did steal a laser jet printer and a modem  having a value of $200.00 or more belonging to Resolution Trust Corporation.

Section 18.2-95, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Detective Laravie, Arlington County Police Dept.

TESTE: _____
       Clerk

[ ]    A True Bill
[ ]    No True Bill

Indictment For Felony

_____
Foreman

VS

CR93-321

JOSEPH JOHNSON, JR.

THE 3rd day of May, 1996 came the Commonwealth of Virginia, by its Attorney, Esther Wiggins, the Probation Officer for the Circuit Court of Arlington County, Virginia, the Defendant in the custody of the Sheriff and his Retained Attorney, Charles King.

WHEREUPON the Commonwealth moved the Court to revoke the Defendant's probation and the Defendant conceded he had violated the terms and conditions of his probation.

UPON CONSIDERATION WHEREOF it is the opinion of the Court that the Defendant is "Guilty" of violating the conditions of his probation and so finds.

IT IS THEREFORE ORDERED by the Court that twelve (12) months of the sentence heretofore imposed and suspended in this Court's order of April 21, 1993 be and it hereby is ordered into execution.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein was on or about December 28, 1992.

AND the Defendant is hereby remanded to jail.

Entered this _16TH_ day of _May_ , 1996.

_____
JUDGE

A COPY:
TESTE: DAVID A. BELL, CLERK
BY_____
DEPUTY CLERK

V I R G I N I A :                    951499

IN THE CIRCUIT COURT OF ARLINGTON COUNTY


August 21, 1995


The Grand Jury charges that:

On or about the 7th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR., did forge a public document, to wit: he did materially alter a Circuit Court Order.


Section 18.2-168, Code of Va., 1950, as amended.


Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.


TESTE: _____) Deputy Clerk
        Clerk


                                    [ ]   A True Bill
                                    [ ]   No True Bill


<u>Indictment For Felony</u>

                                    _____
                                        Foreman


Executed the within process this the
____ of _____ , 19 95 ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.
     Given under my hand this the
     ____ day of _____ , 19 95       A Copy,
     Thomas N. Faust, Sheriff            Teste: David A. Bell, Clerk
     Arlington County, Virginia
     By: _____        By _____
              Deputy Sheriff                    Deputy Clerk
                                                          0001

COMMONWEALTH OF VIRGINIA

VS                                                                              CR95-1499

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

CR95-1499

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, find the Defendant guilty of <u>forging a public record</u> as charged in the indictment.

4/29/96                                            Brian Deitch
Date                                                Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1499

We, the Jury, having found the Defendant guilty of <u>forging a public record</u> fix punishment at <u>1) imprisonment for a specific term of 2 years.</u>

4/29/96                                            Brian Deitch
Date                                                Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Forging a Public Record" as charged in the indictment herein.

0022

CR95-1499

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this _14th_ day of _June_ , 1996.

_____
Judge

A COPY
TESTE· DAVID A. BELL. CLERK
BY_____
DEPUTY CLERK

0023

VIRGINIA:

**951500**

IN THE CIRCUIT COURT OF ARLINGTON COUNTY

August 21, 1995

The Grand Jury charges that:

On or about the 16th day of June, 1995, in the County of Arlington, JOSEPH JOHNSON, JR. did utter or attempt to employ as true, a forged public document, to wit: a materially altered Circuit Court Order, knowing the same to be forged.

Section 18.2-168, Code of Va., 1950, as amended.

Witnesses sworn and sent to the Grand
Jury by the Court to give evidence:
Det. T. Baer, Arlington County Police Dept.

TESTE: _____ Deputy Clerk
       Clerk

                                    [✓]   A True Bill
                                    [ ]   No True Bill

Indictment For Felony

                                    _____
                                    Foreman

Executed the within process this the
___24___ of ___August___ , 19_95___ ,
in Arlington County, Virginia, by
taking into custody and placing in
the Arlington County Jail.

        Given under my hand this the        A Copy,
        ___24___ day of ___August___, 19_95_  Teste: David A. Bell, Clerk
        Thomas N. Faust, Sheriff
        Arlington County, Virginia          By_____
        By:_____              Deputy Clerk
              Deputy Sheriff

COMMONWEALTH OF VIRGINIA

VS                                                                    CR95-1500

JOSEPH JOHNSON, JR.

THE 29th day of April, 1996 came the Commonwealth of Virginia by its Attorney, Molly Smith, the Defendant pursuant to his recognizance and his Retained Attorneys, Charles King and Raymond Kline.

THEREUPON the Commonwealth moved the Court to amend the indictment to "public record", which motion the Court granted, the Defendant having no objection thereto, and accordingly the Court so amended the indictment in open Court.

WHEREUPON the Defendant was arraigned and after conferring with his Attorney, entered a plea of "Not Guilty" to the charge in the indictment.

THEREUPON the Court made inquiry and the Defendant personally stated to the Court that he was ready to go forward with his case.

WHEREUPON from the veniremen reporting for Jury duty on this date came a panel of twenty (20), which was sworn on its voir dire and found free from exception, from which panel each side struck four (4).

THEREUPON came a Jury of twelve (12), which was sworn as the law directs as a Jury for the trial of this case.

WHEREUPON the Clerk delivered the charge to the Jury and thereafter all witnesses were duly sworn as the law directs and on motion of the defendant, were excluded from the Courtroom, after they were cautioned not to discuss their testimony with one another.

THEREUPON opening statements were made by the Attorney for the Commonwealth and counsel for the Defendant; and at the conclusion thereof the Court adjourned for the luncheon recess and the Jury was excused after the members thereof were admonished not to discuss this case nor to permit anyone to discuss it in their presence, nor to reach any conclusion until so directed by the Court.

WHEREUPON after the luncheon recess the Jury returned to its box and the Commonwealth proceeded with the introduction of its evidence; and at the conclusion thereof the Court directed the Jury to retire to its room, and the Defendant moved the Court to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the Defendant informed the Court that he did not desire to present any evidence and accordingly rested his case.

DAVID BELL, CLERK
COUNTY
ARLINGTON, VIRGINIA

0024

CR95-1500

THEREUPON the Defendant renewed his motion to strike the evidence of the Commonwealth; which said motion the Court denied.

WHEREUPON the matter of instructions was argued by counsel.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, find the Defendant guilty of <u>uttering a forged public record</u> as charged in the indictment.

<u>4/29/96</u>
Date

Brian Deitch
Foreman

WHEREUPON, on motion of the Defendant, the Jury was polled and each member thereof answered affirmatively as to the foregoing being their verdict.

THEREUPON the Commonwealth and the Defendant each indicated to the Court that they did not desire to present evidence on punishment.

WHEREUPON the Jury returned to its box and was instructed by the Court and after hearing closing arguments of the Attorney for the Commonwealth and counsel for the Defendant, the Jury retired to its room to consider its verdict and, after a time, returned into Court and presented the following verdict, to-wit;

CR95-1500

We, the Jury, having found the Defendant guilty of <u>uttering a forged public record</u> fix punishment at <u>1) imprisonment for specific term of 2 years.</u>

<u>4/29/96</u>
Date

Brian Deitch
Foreman

THEREUPON the Jury was discharged.

THEREUPON the Court being of the opinion that the verdict of the Jury is right and proper does hereby find the Defendant "Guilty" of "Uttering a Forged Public Record" as charged in the indictment herein.

CR95-1500

AND IT BEING DEMANDED of the accused if he desired to make a statement or to advance any reason why judgment should not be pronounced against him according to law, and nothing being offered or alleged in delay of judgment, it is accordingly the Judgment of this Court, pursuant to the verdict of the Jury, that the said Joseph Johnson, Jr., be and he hereby is sentenced to confinement in the Penitentiary of this Commonwealth for a period of two (2) years, the period by the Jury ascertained as aforesaid, and payment of the costs of these proceedings.

WHEREUPON the Court advised the Defendant of his right to appeal to the Court of Appeals, and further advised the Defendant that counsel would be appointed to represent him if he were without sufficient funds to retain counsel.

IT IS FURTHER ORDERED that, if a notice of appeal is filed herein within 30 days after the entry of this order, then the Court Reporter shall without further order prepare three (3) copies of a transcript of the record of the trial of this case, the costs of which are to be paid by the Commonwealth of Virginia out of the appropriation for criminal charges and a copy of this order shall be forwarded to the aforesaid Court Reporter and Charles King, a discreet and competent Attorney at law, who represented the Defendant at the trial, shall be, without further order of the Court, appointed to represent the Defendant for the purpose of appeal to the Court of Appeals; and it is further Ordered that upon the timely filing of the transcript of the trial herein, the same shall become a part of the record pursuant to Rule 5:9(a) of the Rules of the Supreme Court of Virginia, subject to the right of either party to object thereto pursuant to Rule 5:11.

THE COURT CERTIFIES that at all times during the trial of this case, the accused was personally present.

THE birth date of the Defendant is reported to be May 31, 1970.

BE IT REMEMBERED that the offense date herein is on or about June 16, 1995.

BE IT REMEMBERED that various motions were made during the course of this trial, which were ruled upon by the Court as are more specifically set forth in the stenographic record of this case.

IT IS FURTHER ORDERED by the Court that the appearance bond of the Defendant be revoked and the surety thereon relieved and released from further liability thereunder and the Clerk is hereby directed to so indicate in his records, referring to this order for his authority.

And the Defendant is hereby remanded to Jail.

Entered this _14th_ day of _June_ , 1996.

_____
Judge

A COPY
TESTE: DAVID A. BELL, CLERK
BY _____
      DEPUTY CLERK

VID A. BELL, CLERK
   COUNTY
K..-.., VIRGINIA

0026

# MARYLAND

## I.   RIGHTS TO VOTE, HOLD STATE OFFICE, AND SERVE ON A STATE JURY; SELECTED OCCUPATIONAL DISABILITIES

### A.   LOSS OF RIGHTS

A person convicted of "theft or other infamous crime" loses the right to vote. Md. Ann. Code art. 33, § 3-4(c). Anyone convicted of such an offense also loses the rights to hold public office and to serve on a jury, because these rights are contingent upon being a registered voter. Md. Const. art. I, § 12; Md. Ann. Code art. 33, § 4A-1(a); Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(1). In addition, persons convicted of bribery or attempted bribery or of buying or selling votes are forever disenfranchised and disqualified from holding an office of profit or trust. Md. Const. art I, § 6; art. III, § 50; Md. Ann. Code art. 33, § 3-4(b)(6). A state elected official or a member of a state board or commission can be suspended and removed from office upon a felony conviction. Md. Const. art. XV, § 2; Md. Ann. Code art. 41, § 1-204(a). A state judge may be removed upon conviction of any crime, Md. Const. art. IV, § 4, and a state's attorney may be removed upon conviction of bribery. Md. Const. art. V, § 9.

In addition, a person who has been convicted of a crime punishable by a fine of more than $500 or by imprisonment of more than six months or both and who received a sentence of a fine of more than $500 or more than six months' imprisonment or both may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(5). A person convicted of falsifying a juror qualification form may not serve as a juror. Md. Code Ann., Cts. & Jud. Proc. § 8-207(b)(6). Persons convicted of bribing a juror or accepting a bribe as a juror are forever disqualified from sitting on a jury. Md. Ann. Code art. 27, § 25.

A felony conviction may be grounds for suspending, revoking, or denying a professional or occupational license. E.g.: veterinary medicine (Md. Code Ann., Agric. § 2-310(2), (3), (4)); accounting (Md. Code Ann., Bus. Occ. & Prof. § 2-315(a)(3)); dentistry (Md. Code Ann., Health Occ. § 4-315(a)(4)); nursing (Md. Code Ann., Health Occ. § 8-316(a)(4)); optometry (Md. Code Ann., Health Occ. § 11-313(3)). A person convicted of a drug offense committed on or after January 1, 1991, may be required to disclose the conviction as a condition of the issuance or renewal of a license, and the license may be denied, suspended, or revoked because of the conviction. Md. Ann. Code art. 41, §§ 1-502, 1-503. See also Md. Ann. Code art. 27, § 298A (court to notify licensing authorities of certain drug convictions). Maryland has a registration requirement for child sex offenders. Md. Ann. Code art. 27, § 692B (renumbered to § 792 effective October 1, 1996).

### B.   RESTORATION OF RIGHTS/REMOVAL OF DISABILITIES

The disability from voting for a first offender lasts only until the sentence is completed, including probation or parole, Md. Ann. Code, art. 33, § 3-4(c) (except for persons convicted of bribery, attempted bribery, or buying or selling votes, who are permanently disenfranchised and disqualified from holding office, Md. Const. art. I, § 6; art. III, § 50). As a result, first offenders

also regain the right to hold office upon completion of sentence.[3]  The right to serve on a jury is also restored upon completion of sentence, to the extent that the disability flows from being ineligible to vote; however, any disability relating to the nature of the offense or sentence under Md. Code Ann. Cts. & Jud. Proc. § 8-207(b)(5), (6), or Md. Ann. Code art. 27, § 25, presumably must be removed by a pardon.  Recidivists must obtain a pardon in order to regain their civil rights.

        The pardon power is vested in the Governor, except in cases of impeachment.  Md. Const. art. II, § 20.  The Maryland Parole Commission makes a recommendation to the Governor about every pardon application..Md. Ann. Code art. 41, § 4-504(b)(3).  According to the Maryland Parole Commission, a person convicted under federal law or the law of another state is ineligible for a gubernatorial pardon.

        A person who has been convicted of only one state criminal act, which is not a "crime of violence,"[4] and who has received a full and unconditional pardon from the Governor, may petition for expungement of police and court records pertaining to the charge.  Md. Ann. Code art. 27, § 737(a)(7).[5]  In addition, a procedure for imposing probation prior to judgment is available for state offenses, which provides that upon successful completion of probation the person is discharged without judgment of conviction and is not "convicted" for the purposes of any disqualification or disability imposed because of conviction of crime.  Md. Ann. Code art. 27, § 641.

## II.    LOSS AND RESTORATION OF STATE FIREARMS PRIVILEGES

        Effective October 1, 1996, a person convicted of a "crime of violence," a violation classified as a felony in Maryland, a violation classified as a misdemeanor in Maryland that carries a statutory penalty of more than two years, or a violation classified as a common-law offense for which the person received a term of imprisonment of more than two years loses the right to buy, rent, transfer, or possess a "regulated firearm,"[6] and may not be a licensed dealer of

---

[1] Md. Ann. Code art. 27, § 562C, however, provides that a state or local officer or employee who is convicted of extortion is, "notwithstanding any pardon," permanently barred from employment by state or local government.

[2] Effective October 1, 1996, "crime of violence" is defined to mean the following crimes or an attempt to commit any of them:  abduction; arson in the first degree; burglary in the first, second, or third degree; carjacking; armed carjacking; escape; kidnapping; voluntary manslaughter; maiming; mayhem; murder in the first or second degree; rape in the first or second degree; robbery; robbery with a dangerous or deadly weapon; sexual offense in the first, second, or third degree.  It also includes assault with intent to commit any of these offenses or any other offense punishable by imprisonment for more than one year.  Md. Ann. Code art. 27, § 441(e).

[3] Expungement may be denied if the person has since been convicted of another crime (other than a traffic offense for which a prison sentence is not possible) or is presently under criminal charges.  Md. Ann. Code art. 27, § 737(f)(1), (2).

[6] "Regulated firearm" means a handgun, defined in Md. Ann. Code art. 27, § 441(n) as a firearm with a barrel less than 16 inches long (including signal, starter, and blank pistols), or an assault weapon specified in Md. Ann. Code art. 27, § 441(d).  Md. Ann. Code art. 27, § 441(r).

regulated firearms. Md. Ann. Code art. 27, §§ 442(h)(2)(i); 443(d)(4)(iii); 445(b), (d).  Anyone convicted of a felony drug offense under Maryland law, or under federal law or the laws of any state if such conduct would be a felony drug offense under Maryland law, may not possess, own, carry, or transport a firearm.[7]  Md. Ann. Code art. 27, § 291A(b).  A person convicted of a felony, a misdemeanor for which a sentence of imprisonment for more than one year has been imposed (who has not been pardoned or granted relief from federal firearms disabilities), or a misdemeanor drug offense may not obtain or keep a permit to carry a handgun.  Md. Ann. Code art. 27, § 36E(a)(2), (4); 36E(f).

---

[7] "Firearm" is defined to include handguns, rifles, shotguns, assault weapons, and machine guns.  Md. Ann. Code art. 27, § 291A(a).

<u>IN THE COURT OF APPEALS OF MARYLAND</u>

Misc. No. 16

September Term, 1996

---

IN THE MATTER OF THE APPLICATION OF
JOHN CURTIS DORTCH FOR ADMISSION TO
THE BAR OF MARYLAND

---

*Murphy, C.J.
Eldridge
Rodowsky
Chasanow
Karwacki
Bell
Raker,

                    JJ.

---

Concurring Opinion by Raker, J.,
in which Rodowsky, J., joins.

---

Filed: January 6, 1997
*Murphy, C.J., now retired,
participated in the hearing and
conference of this case while an
active member of this Court; after
being recalled pursuant to the
Constitution, Article IV, §3A, he
also participated in the decision

and adoption of this opinion.

Seventeen years ago, Judge Marvin Smith asked "Do my colleagues propose permitting convicted murderers to become Maryland lawyers since they have not killed anyone lately?" *In re Application of A.T.*, 286 Md. 507, 518, 408 A.2d 1023, 1029 (1979) (Smith, J., dissenting). The answer to that question is "maybe."

Today, the Court holds that because Petitioner, a convicted murderer of a police officer, is still on parole, his "petition is therefore premature and is denied. He is free to file a new petition for admission if, and when, he is released from parole supervision." Maj. op. at 16. In so holding, the Court suggests that if Petitioner's parole were to be terminated tomorrow, he *might* be admitted. In contrast, I would deny his petition for admission to the Bar because he has not proven by clear and convincing evidence that he possesses the requisite present moral character to be admitted to the Bar of this State. *See In re Application of James G.*, 296 Md. 310, 314, 462 A.2d 1198, 1200-01 (1983). Six short years since Petitioner has been released from prison for second degree murder is an insufficient amount of time for us to find that he has satisfied his very heavy burden to establish that "he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion." *In re Application of Allan S.*, 282 Md. 683, 690, 387 A.2d 271, 275 (1978); *In re Application of George B.*, 297 Md. 421, 422, 466 A.2d 1286, 1286 (1983) (six years between release from prison and application for admission is "of

- 2 -

insufficient duration, considering the gravity of the offense committed"); *see also In re Polin*, 596 A. 2d 50, 54 n.5 (D.C. 1991).

It appears to me that Petitioner has not accepted responsibility for the crimes for which he was convicted. In his application to law school, dated August 6, 1990, after he served 15 years in prison, he characterized his murder conviction as an "injustice," an "abortion of justice," and one that was based on perjurious testimony by police officers. Petitioner's response to question 39D on his application to law school is indicative of his lack of responsibility, and reflects the following:

> Q. Describe a specific personal experience in which you were subjected to or witnessed some significant form of injustice. How did you deal with it? How do you think you should have dealt with it?
>
> A.    I am an ex-offender, and I have witnessed and experienced improprieties in the administration of justice. By virtue of a guilty plea, I was convicted of second degree murder, attempted bank robbery, and conspiracy, and I served fifteen years in prison. I did not kill anyone nor did I attempt to kill anyone nor was I present at the scene of the homicide, but the alleged factual basis for my plea was predicated upon the felony murder concept, which stipulates that each conspirator is equally accountable for every and anything that transpires in the furtherance of a felony, even though he may not participate in the overt act. The injustice that I suffered was at the hands of both the defense counsel, whom I paid in advance, and the prosecution which condoned, if not encouraged, the perjurious testimonies of the complaining officers.
>
> However, I am not bitter, because I did break the law, but not to the extent to which I was charged and prosecuted. The bottom line is that I did break the law, and had not I broken the law, I would not have been

- 3 -

vulnerable to an abortion of justice.

I need not restate the facts surrounding this horrendous crime, committed when Petitioner was almost thirty years of age. It is significant to note, however, that Petitioner was the mastermind of an eight-person conspiracy to rob the Columbia Federal Savings and Loan. He went to the bank, armed with two loaded, sawed-off shotguns and two loaded revolvers. Although it was the bullet of his co-conspirator that killed Police Officer Gail Cobb, Dortch was obviously prepared to use deadly force to accomplish the goals of his criminal venture.[1]

Dortch was convicted of felony murder, attempted bank robbery and conspiracy. He was sentenced to prison for fifteen years to life, and released on parole in 1990. He graduated from law school in May, 1994, and applied for admission to the Maryland Bar in December, 1994. The Board of Law Examiners referred Petitioner's application to the Character Committee for the Sixth Judicial Circuit. Following an evidentiary hearing, the Committee recommended, by a 6-1 vote, that Petitioner be admitted to the Bar of Maryland. The State Board of Law Examiners decided that a formal hearing on the record on his fitness to practice law was

---

[1]    Petitioner testified at the hearing before the Character Committee of the Court of Appeals of Maryland for the Sixth Judicial Circuit that he envisioned firing "at most a warning shot, if any at all, a warning shot or something to get people's attention." It is patently obvious that sawed off shotguns are particularly deadly when fired, are not used for the purpose of firing warning shots.

- 4 -

unnecessary and instead conducted an informal hearing.[2] *Cf. In re
Polin,* 596 A.2d 50, 55 n.7 (D.C. 1991) (noting that when applicant
has committed a felony or other serious crime, committee should
conduct an independent investigation into applicant's behavior).
While the Board's finding that the applicant possesses the
requisite moral character is entitled to great weight, this Court
must make its own independent evaluation of the applicant's present
moral character. *In re Application of Allan S.,* 282 Md. 683, 690-
91, 387 A.2d 271, 276 (1978). The ultimate decision regarding
admission to the Bar rests with this Court. *Id.* at 689, 387 A.2d
at 275.

I recognize that this Court has joined with the majority of
States in holding that there is no *per se* rule excluding all
convicted felons from the bar. *See* Maureen M. Carr, *The Effect of
Prior Criminal Conduct on the Admission to Practice Law: The Move
to More Flexible Admission Standards,* 8 GEO. J. LEGAL ETHICS 367, 382-
83 (describing majority approach of a presumptive disqualification
for bar applicants convicted of a crime). Nonetheless, I believe

---

[2]  In my view, under the circumstances of the this case, the
Board of Law Examiners should have held a formal hearing. The mere
fact that a convicted murderer produces exemplary character
references and has not committed a criminal act since his release
from prison does not warrant an informal, off-the-record hearing by
the Board of Law Examiners. In fact, all this Court knows about
Petitioner is the information he chose to present. For example, we
know little, if anything, about the business operation he headed in
1974, and the facts surrounding the sale of securities, which, at
oral argument, Petitioner indicated were unregistered.

- 5 -

there are some crimes which are so serious that a *sufficient* showing of rehabilitation may be impossible to make. If any crime fits within that category, it is the murder of a police officer during the course of an attempted armed robbery of a bank. In this regard, the Supreme Court of New Jersey stated:

> An applicant's attitude and behavior subsequent to disqualifying misconduct must demonstrate a reformation of character so convincingly that it is proper to allow admission to a profession whose members must stand free from all suspicion. The more serious the misconduct, the greater showing of rehabilitation that will be required. . . . However, it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make. In all cases, the need to ensure the legitimacy of the judicial process remains paramount.

*See In re Matthews*, 94 N.J. 59, 462 A.2d 165, 176 (1983) (citations omitted). Murder, armed robbery, and conspiracy certainly qualify as "extremely damning past misconduct," thus making Petitioner's burden very heavy.

While agreeing with this Court that there is no litmus test to determine whether an applicant possesses good moral character, the District of Columbia Court of Appeals, in *In re Manville,* 494 A.2d 1289, 1296-97 (D.C. 1985) (*Manville I*), identified a list of factors the court found instructive in assessment of the moral fitness of applicant "whose backgrounds are tainted by criminal convictions." Those factors, intended to be illustrative and not exhaustive, read:

1. The nature and character of the offenses committed.

- 6 -

2.  The number and duration of offenses.

3.  The age and maturity of the applicant when the offenses were committed.

4.  The social and historical context in which the offenses were committed.

5.  The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6.  The grant or denial of a pardon for offenses committed.

7.  The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8.  The applicant's current attitude about the prior offenses (*e.g.*, acceptance of responsibility for and renunciation of past wrongdoing, and remorse).

9.  The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10.  The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11.  The opinions of character witnesses about the applicant's moral fitness.

*Id.* at 1296-97 (footnotes omitted).  At best, this applicant satisfies only three the eleven factors, specifically numbers 9, 10 and 11.  He fails to satisfy his heavy burden.

Moreover, the Court's ruling gives insufficient weight to the integrity of the legal system.  In the related area of attorney discipline, we have consistently noted that the purpose of disciplining attorneys is to protect the public.  *Attorney Griev. Comm. v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995).  The public's interest is not served by the admission of a convicted

- 7 -

murderer, a person who has demonstrated the most profound disregard for the law and for human life.

Not only must we be concerned with protecting the public, but we must also consider the public's respect for and confidence in the judicial system. I agree with the sentiments of Judge Terry on the District of Columbia Court of Appeals in *In re Manville,* 538 A.2d 1128, 1139 (D.C. 1988) (*Manville II*) (Terry, J., dissenting):

> The bar process is not . . . akin to the penal system where rehabilitation is one of the primary interests. The admissions process is aimed at selecting not only those persons who will honestly and competently handle their clients' interests, but also those persons who will not diminish respect for the legal profession as an institution . . . . Certainly the crimes involved here, murder, attempted armed robbery, and drug sales, are precisely the type of crimes which are serious enough to engender such public repugnance that admitting a person convicted of such a crime would seriously damage public confidence in the bar.

A person convicted of the murder of a police officer, attempted armed robbery, and conspiracy will not "`inspire the public confidence necessary to the proper performance of the duties of an attorney at law.'" *In re Prager*, 422 Mass. 86, 661 N.E.2d 84, 94 (1996) (quoting *In re Keenan*, 50 N.E.2d 785 (Mass. 1943)). The murder of a police officer, attempted armed robbery of a bank, and conspiracy rank among the most serious and repugnant crimes. I believe Dortch's admission to the Bar would be detrimental to the integrity of the Bar and the public interest.

It is ironic to note that if Petitioner were permitted to practice law in this State, and if he were to be called as a

- 8 -

witness in any judicial proceeding, his credibility could be impeached with his criminal convictions. *See* Maryland Rule 5-609; *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994). In addition, he cannot vote in this State, MD. CONST. art. I, § 4, he cannot hold office in this State, MD. CONST. art. I, § 12, he cannot serve on a jury, Md. Code (1974, 1995 Repl. Vol., 1996 Cum. Supp.) § 8-207(b)(5) of Courts and Judicial Proceedings Article, and he cannot hold a liquor license, Md. Code (1957, 1996 Repl. Vol.) Art. 2B, § 10-103.

Finally, the past decisions of this Court fully support denying Dortch's application to the Bar without encouragement to reapply when and if he is released from parole. We have denied admission to applicants who have committed much less serious crimes. In *In re David H.*, 283 Md. 632, 641, 392 A.2d 83, 88 (1978), we found a lack of good moral character based on five theft offenses over five years, the most serious of which involved breaking into a car and stealing a tape deck. Larceny pales in comparison to the taking of a human life during an armed robbery. *See also In re Application of G.S.*, 291 Md. 182, 433 A.2d 1159 (1981) (denial of admission following conviction for petty thefts).

If the Court's ruling even remotely suggests that Petitioner's application will be granted when his parole ends, then I cannot join the Court's opinion because Petitioner has not met, and indeed probably cannot meet, the heavy burden of proving good moral

- 9 -

character after the commission of a crime so heinous as this one.[3]
If this Court's ruling means that we shall defer the decision on
this petition with no intention of admitting Petitioner, then this
ruling is unfair to Dortch as it holds out false hopes. *Cf.*
*Manville I,* 494 A.2d at 1298 (Nebeker, J., dissenting) ("This court
does the public, our bar, and our Admissions Committee an injustice
when it hedges on these facts and orders further investigation.").
This petition for admission to the Bar of Maryland should be
denied, without any suggestion that Petitioner reapply when his
parole is terminated.

I am authorized to state that Judge Rodowsky joins in the
views expressed in this opinion.

---

[3]    It makes no sense to me for the Court to devote sixteen
pages merely to state that we will not consider the application
until Petitioner is released from parole.

**Attachment 2**

# Direct Loans

William D. Ford Federal Direct Loan Program

 **DISCHARGE DENIED**

FALSE CERTIFICATION OR

UNAUTHORIZED SIGNATURE/PAYMENT

5/7/2007

JOE JOHNSON JR.

607 AUDREY LN. APT 102
OXON HILL, MD 20745-2691

ACCOUNT #: 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-1

**Reason**
**For Notice**
Your loan(s) did not qualify for discharge for the reason(s) checked below:

☐    Discharge Application not submitted and/or no response to our letter dated _____

☐    Application still incomplete (another form is enclosed if you wish to resubmit).

☐    Student had a High School Diploma or GED at time of enrollment or received one before completing program of study at the school.

☐    Student received proper testing of the ability to benefit from the program of study before admission to the school.

☐    Student completed a developmental or remedial program at the school.

☐    After leaving school, student obtained a job in the occupation for which the school trained without further education or training.

☐    At the time the school certified or originated the loan(s), student met the legal requirements for employment in the state of residence in the occupation of the program of study.

☐    Signature sample documents either not received, not within the timeframe required, or do not clearly show that the signature in question was not yours.

☐    Information from another source (e.g., state licensing agency, school, Federal Student Aid (FSA) review) does not support a discharge.

☒    Other You did not inform the school of your status prior to enrollment.

**Important**

| If loan(s): | Then we: |
|---|---|
| *In repayment** | Resumed collection of your loan(s) and granted a Forbearance of principal and interest for the period in which collection activity was suspended. You must resume repayment of your loan(s) immediately. We have capitalized any outstanding interest on the account. |
| *In school* | Show you leaving school on 06/30/2004 with a loan(s) balance of $30,259.06 and a grace period ending 06/30/2004. Your first payment of approximately $70.58 will be due two to six weeks after the grace period ends. |
| *In grace period* | Show your grace period will end 6/30/2004 and your first payment will be due two to six weeks after the grace period ends. |
| *\* PLUS loan(s) are considered in repayment within 60 days of final disbursement.* | |

If you have questions, please call our toll-free telephone number, which is **1-800-848-0979**. Hearing-impaired borrowers can call 1-800-848-0983.

DISKAV01

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*
U.S. Department of Education ✦ P.O. Box 5609, Greenville, TX 75403-5609

**Attachment 3**

**Subject:** Transcript of chat session
**From:** "UMUC _CCSupport" <umuc_ccsupport@Intellimark-IT.com>
**Date:** Tue, May 15, 2007 14:01
**To:** JJohnson@nambco.com
**Priority:** Normal
**Options:** View Full Header | View Printable Version | Download this as a file

Meredith: Hi, this is Meredith how may I help you?
Johnson, Joe: Which office are you with at the University?
Meredith: The one in Adelphi.
Johnson, Joe: Which division?
Meredith: Stateside division in Maryland.
Johnson, Joe: Correction, which division of the University are you in?
Meredith: This is the call center.
Johnson, Joe: O. Ok...
Meredith: I'm sorry we have so many locations I wasn't sure if you were asking that.
Meredith: I can answer some questions for you.
Johnson, Joe: So then my question is: does the University policy require students to inform the school of any disqualifying status the student might have prior to enrollment, such as his/her physical condition, mental condition, criminal record, or incarceration status prior to enrollment?
Meredith: We do not ask that information.
Meredith: The only time we need that information when you require special help.
Meredith: We have a disabilities office.
Meredith: But we do not ask any of that information on the application.
Johnson, Joe: So then are you saying that the University does not require any of that information prior to enrollment?
Meredith: No, we do not.
Johnson, Joe: Ok. Thank you. That's all I needed to confirm. Do you have a call back number or extension to where you might be reached.
Meredith: You can the call center at 1-800-888-8682 and ask for Meredith. I'm the only one here.
Johnson, Joe: Ok. Thank's Meredith.
Meredith: Thank you and have a good day.
Johnson, Joe: Also, are you able to email me this Chat session?
Meredith: Yes I can.
Meredith: At the email address you provided?
Johnson, Joe: Yes, and also, can you send a copy to my work email address which is: JJohnson@nambco.com
Meredith: That is the one you gave us when you logged into the chat.
Meredith: Anything else I can help with?
Johnson, Joe: Ok. Thank you. That would be all. You also have a good day.
Meredith: Thank you and have a good day.

--
This message has been scanned for viruses and dangerous content by MailScanner, and is believed to be clean.

**Attachments:**

untitled-[1]              2.1 k              [ text/plain ]                    Download | View

Delete & Prev | Delete & Next

Move to: | INBOX ▓ | Move

Take Address

**Viewing Full Header** - View message

X-NAM-MailScanner-From: myurkiewicz@technisource.com
X-NAM-MailScanner-SpamCheck: not spam, SpamAssassin (score=0.001, required 5,
    autolearn=not spam, HTML_MESSAGE 0.00)
X-NAM-MailScanner: Found to be clean
X-OriginalArrivalTime: 15 May 2007 18:01:20.0900 (UTC) FILETIME=[0B122C40:01C7971B]
To: <JJohnson@nambco.com>
Sender: "Yurkiewicz, Meredith" <myurkiewicz@Technisource.Com>
From: "UMUC _CCSupport" <umuc_ccsupport@Intellimark-IT.com>
Thread-Index: AceXGwsNG4hs7M+ZSpCSCQ+7mJCb6Q==
Thread-Topic: Transcript of chat session
X-MS-TNEF-Correlator:
X-MS-Has-Attach:
Message-ID: <7D2D0BBAAB69F54C8A1A3AD616793DC0025B793D@immail01.Intellimark-IT.Com>
Date: Tue, 15 May 2007 14:01:20 -0400
Subject: Transcript of chat session
Content-Type: multipart/alternative;
    boundary="----_=_NextPart_001_01C7971B.0B06716B"
MIME-Version: 1.0
Content-class: urn:content-classes:message
X-MimeOLE: Produced By Microsoft Exchange V6.5
Received: from immail01.Intellimark-IT.Com ([10.2.1.17]) by ns3.Intellimark-IT.Com with Microsoft SMTPSVC(6.0.3790.1830);
    Tue, 15 May 2007 14:01:20 -0400
Received: from ns3.Intellimark-IT.Com (unknown [206.192.20.68])
    by pluto.namgt.com (Postfix) with ESMTP id B29063E8022
    for <JJohnson@nambco.com>; Tue, 15 May 2007 18:01:21 +0000 (UTC)
Return-Path: myurkiewicz@technisource.com

**Joe Johnson**

| | |
|---|---|
| **From:** | StudentAid [StudentAid@ncs.ed.gov] |
| **Sent:** | Monday, May 14, 2007 3:27 PM |
| **To:** | 'joe.johnson@namgt.com' |
| **Subject:** | RE: Loan Discharge: False Certification |

Thank you for your inquiry about federal student aid.

Federal Family Education Loan (FFEL) and William D. Ford Federal Direct Loan (Direct Loan) program regulations state that a loan may be discharged if the student had a condition or status--including one based on physical or mental condition, age, or criminal record--that prevented the student from satisfying the physical or legal requirements of his or her state for admission to the program or from performing the occupation for which the program of study was intended to prepare the student.

FFELs comprise FFEL Stafford Loans, FFEL PLUS Loans and FFEL Consolidation Loans. Direct Loans comprise Direct Stafford Loans, Direct PLUS Loans and Direct Consolidation Loans.

It is not required that the school be aware of the borrower's disqualifying condidon when it certifies or originates the loan.

For spcific information, a borrower should contact the loan holder.

We hope this information is helpful.

E-Mail Unit
Student Aid on the Web
www.studentaid.ed.gov
Federal Student Aid


-----Original Message-----
From: Joe Johnson [mailto:joe.johnson@namgt.com]
Sent: Friday, May 11, 2007 2:26 PM
To: dcs help
Subject: Loan Discharge: False Certification


To qualify for a loan discharge based on False Certification due to a disqualifying status, is a student required to inform a school of his/her disqualifying status prior to enrollment in order to be entitled to a discharge based on that disqualifying status, such as at the time the school certified or originated the loan the student was unable to meet the legal requirements for employment in his/her state in the occupation for which the program of study was intended because of age, a physical or mental condition, criminal record, or other reason?

--
This message has been scanned for viruses and dangerous content by MailScanner, and is believed to be clean.

*************************************************************************

This email may contain confidential material.
If you were not an intended recipient,
Please notify the sender and delete all copies.
We may monitor email to and from our network.
*************************************************************************

--
This message has been scanned for viruses and dangerous content by MailScanner, and is

believed to be clean.

**Viewing Full Header** - View message

X-NAM-MailScanner-From: studentaid@ncs.ed.gov
X-NAM-MailScanner-SpamCheck: not spam, SpamAssassin (score=0, required 5,
    autolearn=not spam)
X-NAM-MailScanner: Found to be clean
Content-Type: text/plain
X-Mailer: Internet Mail Service (5.5.2657.72)
MIME-Version: 1.0
Date: Mon, 14 May 2007 14:26:38 -0500
Subject: RE: Loan Discharge: False Certification
To: "'joe.johnson@namgt.com'" <joe.johnson@namgt.com>
From: StudentAid <StudentAid@ncs.ed.gov>
Message-ID: <8C7F8DCD39DE55429C6FA41FAEA5AD6BD72CC4@iowacescexch1.ic.ncs.com>
Received: by iowacescexch1.ic.ncs.com with Internet Mail Service (5.5.2657.72)
    id <29Z7T5NA>; Mon, 14 May 2007 14:26:45 -0500
Received: from iowacescexch1.ic.ncs.com ([159.182.114.124])
    by pedcsmx1.ncs.com with ESMTP; 14 May 2007 14:15:07 -0500
Received: from pedcsmx1.ncs.com (unknown [159.182.31.103])
    by pluto.namgt.com (Postfix) with ESMTP id 2E3AA3E8022
    for <joe.johnson@namgt.com>; Mon, 14 May 2007 19:15:07 +0000 (UTC)
Return-Path: studentaid@ncs.ed.gov

**Attachment 4**

TRANSMISSION VERIFICATION REPORT

```
                                         TIME  : 05/15/2007 16:02
                                         NAME  :
                                         FAX   :
                                         TEL   :
                                         SER.# : BROC4J332640
```

```
    DATE,TIME                05/15  15:53
    FAX NO./NAME             2022755000
    DURATION                 00:09:07
    PAGE(S)                  40
    RESULT                   OK
    MODE                     STANDARD
                             ECM
```

## Fax Coversheet

To:        Jeff Baker, PLI, Federal Student Aid
           (202) 275-5000

From:      Joseph Johnson, Jr.

Subject:   Loan Discharge Application

Pages:     -39-, including this coversheet

June 26, 2007

Jeff Baker
PLI
Federal Student Aid
U.S. Department of Education
830 First Street, Room 113C1
Washington, DC  20202

      Re:    Loan Discharge Application
              Account #244396136

Dear Mr. Baker:

The purpose of this correspondence is to appeal the second decision rendered by the lender of the above referenced Student loan account.

Specifically, on or about May 21, 2007, the undersigned submitted a second Loan Discharge Application to the lender of the above referenced Student loan account based on false certification due to a disqualifying status. The documentation submitted in support of the application established that at the time the school certified or originated the loan, the undersigned was unable to meet the legal requirements for employment in the State of Maryland in the occupation for which the program of study was intended because of the undersigned's criminal record and incarceration status. See Exhibit 1.

By letter dated June 14, 2007, the lender denied the discharge and held that the undersigned must provide documentation proving that the undersigned was denied for a license due to a criminal record. See Exhibit 2.

By correspondence dated June 22, 2007, the U.S. Department of Education stated that "there is no requirement that the borrower apply for and be denied the license". See Attachment 9 of Exhibit 1.[1]

---

[1] Previously the lender denied the Loan Discharge Application on the basis that the undersigned did not inform the school of the undersigned's status prior to enrollment. An appeal of that decision was submitted to your office on May 15, 2007, and a decision to the undersigned's knowledge has not been rendered.

Based on the foregoing, it is requested that the lender's second decision also be overturned and the application for discharge be granted based on the disqualifying statuses stated therein. In the event this appeal is not handled by your office, the undersigned would appreciate that you extend the courtesy and forward this appeal to the appropriate Departmental office within your agency that does review these types of appeals.

Enclosed also is a duplicate copy of the appeal submitted to your office on May 15, 2007.

Should you have any questions, please let me know.

Sincerely,

*Joseph Johnson Jr.*

Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, MD   20745

Enclosure



September 6, 2007

Mr. Joseph Johnson
607 Audrey Lane, #102
Oxon Hill, MD 20745

Re:    Loan Discharge Appeal

Dear Mr. Johnson:

This responds to your letters to me dated May 15 and June 26, 2007. You requested discharge of Federal Direct student loans under False Certification, Disqualifying Status, asserting you could not meet requirements established by State law for employment in your field of study. On two separate occasions, our Direct Loan servicer denied your application. You wish to appeal those decisions, asserting that Direct Loans used an invalid basis for denial.

The Higher Education Act of 1965, as amended (HEA), establishes discharge requirements under the circumstances you describe. These requirements are implemented through regulation at 34 C.F.R. 685.215(a), which states:

Basis for discharge — (1) False certification. The Secretary discharges a borrower's (and any endorser's) obligation to repay a Direct Loan in accordance with the provisions of this section if a school falsely certifies the eligibility of the borrower (or the student on whose behalf a parent borrowed) to receive the loan. The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school—

(iii) Certified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.

To be eligible for discharge, the borrower must provide convincing documentation that supports the discharge request.

FEDERAL STUDENT AID ▓▓▓ START HERE. GO FURTHER.

Mr. Joseph Johnson
September 6, 2007
Page 2 of 3

To support your eligibility for this discharge, you provided a narrative; copies of court documents showing your convictions; dates of incarceration; and State laws you deemed relevant to your circumstance. While your application simply states that your program of study was law, your narrative makes reference to employment in three specific areas: law enforcement, with emphasis on your inability to obtain a license to carry a firearm; admission to the Maryland State Bar to practice law; and as a paralegal.

Based on my review of the documents you provided, federal regulations governing discharge of student loans, and records available to me, you do not meet the criteria for discharge on the basis of False Certification, Disqualifying Status. The basis for my determination is as follows:

There are no records that indicate you were enrolled in a training program that specifically and exclusively prepared you for employment in law enforcement or as a paralegal, nor were you enrolled in law school.

Although my basis for determining that you would not be eligible for discharge differs from that provided by Direct Loans, that denial is upheld.

Sincerely,

Jeff Baker
Director
Policy Liaison and Implementation


C:    Direct Loans

September 10, 2007

Jeff Baker
Director
Policy Liaison and Implementation
Federal Student Aid
U.S. Department of Education
830 First Street, N.E., Room 113C1
Washington, DC  20202

      Re:    Loan Discharge Appeal

Dear Mr. Baker:

This will acknowledge and respond to your letter dated September 6, 2007 responding to
my letters to you dated May 15 and June 26, 2007, which requested a discharge of
Federal Direct student loans under the False Certification, Disqualifying Status provision.

You stated that based on your review of the documents the undersigned provided, federal
regulations governing discharge of student loans, and records then available to you, that
the undersigned did not meet the criteria for discharge on the basis of False Certification
because there were no records that indicate the undersigned was enrolled in a training
program that specifically and exclusively prepared the undersigned for employment in
law enforcement or as a paralegal, nor was the undersigned enrolled in law school.

The purpose of the correspondence is to request that you reconsider your decision based
upon the following additional documentation and supportive facts.

Specifically, the school upon which the undersigned enrolled offered programs in Legal
Studies, Criminal Justice, and Public Safety which were designed to help students prepare
for—or advance in—careers in criminal justice, government and politics, legal studies, or
fire science. See Attachment 1.

At the time the undersigned was enrolled at the school, courses in paralegal studies[1] were
designated PLGL in the school's undergraduate catalog and required ten paralegal studies
courses, at least eight of which must have been taken at the school and 30 semester hours

---

[1] The school's "paralegal studies" program was recently renamed to "legal studies" program and is now
designated as LGST in the school's current undergraduate catalog. See Attachment 3.

of additional college coursework (including ENGL 101 Introduction to Writing) to obtain a paralegal studies document. See Attachment 2.

The undersigned enrolled in the school's paralegal studies training program that specifically and exclusively intended to prepare the undersigned for employment in the "legal environment". The undersigned's transcript of courses attempted at the school demonstrate that the undersigned was registered in PLGL 340 – Contract Law, PLGL411 – Consumer-Protection Law, PLGL322 – Evidence, PLGL325 – Litigation, PLGL312 – Torts, PLGL201 – Legal Writings, PLGL200 – Techniques of Legal Research, PLGL223 – Investigative Techniques, PLGL101 – Introduction to Paralegal and PLGL204 – Legal Ethics/Law Office system. See Attachment 4.

These courses were required courses in the paralegal studies training program which were necessary to specifically and exclusively prepare the undersigned for employment in the "legal environment". See Attachments 2 and 3.

Thus, the undersigned does meet the criteria for discharge on the basis of False Certification, Disqualifying status because the undersigned was enrolled at the school in a training program that specifically and exclusively prepared the undersigned for employment in the "legal environment"; more specifically as a paralegal.

Accordingly, based on this additional information the undersigned request the application for discharge be granted based under the circumstances described in the application for loan discharge.

Alternatively, the undersigned requests that the discharge be granted because the school falsely certified the undersigned's eligibility to receive title IV, HEA program assistant.

Specifically, pursuant to 34 CFR §668.32(c)(2)(ii) a student is eligible to receive title IV, HEA program assistance if the student "*is not incarcerated in a Federal or State penal institution*". (Emphasis added). An incarcerated student is defined under 34 CFR §600.2, as a student who is "serving a criminal sentence in a Federal, State, or local penitentiary, prison, jail, reformatory, work farm, or other similar correctional institution"

The undersigned was incarcerated in State and Federal jails and prisons serving both State and Federal sentences between January 11, 1993 and May 15, 2000. See Attachments 5.

On each of the promissory notes, the school falsely certified the undersigned's eligibility. At the time the school made each of the certifications the undersigned was not eligible to receive any title IV, HEA program assistance because at the time of the school's certification, the school knew or should have known that the undersigned was incarcerated in State and Federal jails and prisons. Under the Act, a student is ineligible to receive federal financial Aid during the period of his incarceration. Thus, the undersigned was not eligible for Federal Financial Aid at the time the school certified each of the loans.

Accordingly, the undersigned's eligibility was "falsely certified by the institution" and a discharge of the loans is required.

Should you have any questions or require additional information, please let me know.

Sincerely,

Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, MD  20745

Enclosures

## **Attachment** 1

## School of Undergraduate Studies – Programs



### Legal Studies, Criminal Justice, and Public Safety

These UMUC programs are designed help you prepare for—or advance in—careers in criminal justice, government and politics, legal studies, or fire science. Each program provides a unique combination of academic and theoretical context with workplace-specific knowledge and skills designed to prepare you for today's demanding professions.

### Majors:

- Criminal Justice
- Emergency Management
- Fire Science
- Homeland Security
- Investigative Forensics
- Legal Studies
- Political Science

### Minors:

- Criminal Justice
- Emergency Management
- Forensics
- Fire Science
- Homeland Security
- Political Science

**Attachment 2**

1998-1999 *Undergraduate* Catalog



One or more upper-level courses in computing, statistics, cost accounting, business finance, business law, and economics are also recommended to provide a broad perspective on management.

## Mathematics

The mathematics specialization studies number systems and their relationships, generally using rigorously defined numerical and operational symbols. The applications of mathematics form an important component of other specializations, many of which require competence in areas such as algebra, analysis, statistics, and computational and applied mathematics. A knowledge of mathematics also helps in interpreting data and organizing information in many areas, including computer science, psychology, and business management.

### Scope
The mathematics specialization focuses on abstract algebra, real analysis, differential equations, applied probability and statistics, number theory, and logic for computer science. Students can choose from an application-oriented or a theory-based principal area of specialization.

### Goals
The mathematics specialization produces graduates who have an understanding of the nature and importance of mathematics in the world and human endeavor and the ability to exhibit written and oral communication skills consistent with the mathematics and professional environment. Studies in mathematics also help adult learners become mathematically mature, expert problem solvers and reasoners with complex, technical materials. Graduates are prepared for careers in a wide variety of mathematical or statistical fields, including education, engineering, statistics, technical research, and actuarial work.

### Objectives
The student who graduates with a specialization in mathematics will be able to
- Demonstrate an understanding of the theories and reasoning skills in the analysis of a specific area or situation, such as linear algebra, advanced calculus, differential equations, or testing hypotheses.
- Use appropriate tools and software in the formulation and generation of solutions to problems.
- Demonstrate knowledge of content in diverse areas of mathematics.
- Demonstrate the utility of mathematics in the world.
- Interpret mathematical research projects.
- Demonstrate proficiency in written assignments and oral presentations.

### Specialization Requirements
A primary specialization in mathematics requires the completion of 24 semester hours from courses in mathematics and statistics. At least 15 of the 24 semester hours must be in courses numbered 300 or above.

## Paralegal Studies

The paralegal studies specialization focuses on those legal concepts, procedures, and skills that are utilized in a wide variety of legal environments. Paralegal studies prepares students for challenging and responsible work in the legal environment. Paralegals work with attorneys, performing tasks that require substantive and practical legal knowledge. Career opportunities include positions in law firms, government agencies, legal services offices, corporations, professional and trade associations, banks, real estate organizations, publishing companies, and other public- and private-sector businesses.

### Scope
The paralegal studies specialization addresses the organization, functions, and processes of institutions in the U.S. legal system, roles and issues in the paralegal field, legal ethics, and selected specialty areas. The curriculum emphasizes important skills, including legal analysis, communication, legal research, computer competence, legal drafting, investigation, organization, and specialized legal skills.

### Goals
Students who specialize in paralegal studies will be prepared to participate as efficient and effective members of legal teams. They will be able to apply their acquired knowledge and skills in a wide variety of legal settings.

### Objectives
The student who graduates with a specialization or completes a document in paralegal studies will be able to
- Explain the basic constitutional principles of the U.S. legal system.
- Explain, both in speaking and in writing, legal topics and analyses.
- Discuss issues relevant to the paralegal profession.
- Recognize and discuss ethical considerations involved in the practice of law.
- Explain basic concepts in selected specialty areas of legal practice.
- Describe basic procedures in litigation.
- Identify ways that computers can assist in the legal environment.
- Analyze facts, law, and legal issues.

41

- Perform book-based and computer-assisted legal research tasks.
- Draft writings and perform other tasks typically assigned to paralegals in selected specialty areas of legal practice.
- Use selected software to accomplish tasks in the legal environment.

### Specialization Requirements

A primary specialization in paralegal studies requires the completion of 24 semester hours from courses in paralegal studies. At least 15 of the 24 semester hours must be in courses numbered 300 or above. The courses required for a specialization are listed below.

*The following three courses are required:*

| PLGL 200 | Techniques of Legal Research |
|----------|------------------------------|
| PLGL 201 | Legal Writing |
| PLGL 204 | Legal Ethics/Law Office Systems |

### Research Support

Students enrolled in paralegal courses should have access to a law library. UMUC provides access to LEXIS/NEXIS, a computer-assisted research system. In addition, the UMUC Office of Library Services can help paralegal students locate legal research sources.

### Document Requirements

A paralegal studies document requires ten paralegal studies courses, at least eight of which must be taken at UMUC, and 30 semester hours of additional college coursework (including ENGL 101 Introduction to Writing). The 30 semester hours must include 18 semester hours of general education coursework in disciplines such as communications, humanities, science, and mathematics.

*The following five courses are required:*

| PLGL 101 | Introduction to Law for the Paralegal |
|----------|----------------------------------------|
| PLGL 200 | Techniques of Legal Research |
| PLGL 201 | Legal Writing |
| PLGL 204 | Legal Ethics/Law Office Systems |
| ENGL 101 | Introduction to Writing |

## Psychology

The psychology specialization follows an interdisciplinary curriculum that investigates the nature of mind and behavior. A specialization in psychology leads to successful careers in clinical treatment programs, human resource management, organizational consulting, schooling and education programs, basic research, and teaching, and to graduate study.

### Scope

The psychology specialization addresses a broad range of issues from many disciplines, including biology, economics, linguistics, medicine, pharmacology, philosophy, and sociology. Psychology studies support a wide range of professions—from nurse to engineer to homemaker—and varied perspectives in the workplace, including those of manager, technician, and entrepreneur. The psychology curriculum provides graduates with an understanding of a broad spectrum of areas, including the biological basis of behavior, perception, memory and cognition, the influence of environmental and social forces on the individual, personality, lifespan development and adjustment, research methods, and statistical analysis.

### Goals

The psychology specialization produces graduates who possess a knowledge base of theory and research in the psychological sciences and the ability to apply the principles of psychology for the improvement of human welfare. The specialization applies psychological knowledge to nonscientific fields and the workplace and promotes multicultural and multinational awareness. It also introduces students to the basis of collaborative and professional relationships within psychology, identifies the foundations and delivery systems of the mental health profession, and prepares students for graduate study in psychology.

### Objectives

The student who graduates with a specialization in psychology will be able to

- Recognize how psychology aids job promotability and improves interpersonal relationships.
- Examine psychology in a wide context of interdisciplinary approaches, covering political overviews, cultural diversity, and timely issues.
- Demonstrate how critical observation, experimentation, and empirical reasoning are cornerstones of psychology.
- Apply theory and research in psychology to practical situations and problems.
- Communicate psychological concepts in oral and written form.
- Conduct scientific research projects, including accessing technical information, writing papers and presenting research, and utilizing computers in psychology.

## MUSIC

*Courses in music (designated MUSC) may be applied toward*
- the general education requirement in the arts and humanities; and
- electives.

### MUSC 130
#### Survey of Music Literature (3)
A study of the principles upon which music is based, along with an introduction to the musical repertoires performed in the United States today. Students may receive credit for only one of the following courses: MUSC 130 or MUSC 131.

### MUSC 140
#### Music Fundamentals I (3)
An introductory course in music theory. Notation, scales, intervals, triads, rhythm, form, and basic aural skills are covered.

### MUSC 210
#### The Impact of Music on Life (3)
(Fulfills the international perspective requirement.) A study of music as a part of culture. Materials are drawn from traditions throughout the globe to illustrate issues of historical and contemporary significance, including the impact of race, class, and gender on the study of music.

### MUSC 436
#### Jazz: Then and Now (3)
An examination of the past 75 years of jazz, its major styles and its influential artists.

### MUSC 448B
#### Special Topics in Music: The Musical Symphony (1)
An overview of the symphony from its birth in the courts of the nobility through its growth into the definitive public musical form in the Western concert arena. Topics include the elements of the symphony; its construction, performers, and composers; and its development as a means of expression in a changing culture. Selected works are explored through reading, discussion, and active listening. The goal is to become familiar with broader trends in the symphonic style.

## NUTRITION

*Courses in nutrition (designated NUTR) may be applied toward*
- electives.

NUTR 100 may be applied toward the general education requirement in the biological and physical sciences.

### NUTR 100
#### Elements of Nutrition (3)
A study of the fundamentals of human nutrition. The changing nutritional needs of individuals and families are explored. Students may receive credit for only one of the following courses: NUTR 100 or NUTR 200.

## PARALEGAL STUDIES

*Courses in paralegal studies (designated PLGL) may be applied toward*
- a document in paralegal studies, or
- bachelor's degree coursework (as part of a primary or a secondary specialization in paralegal studies or as electives).

With the approval of a counselor, certain courses may be applied toward supporting credit for a primary or a secondary specialization in business and management, criminology/criminal justice, government and politics, management, or management studies.

PLGL 401 may be applied toward the general education requirement in upper-level writing; PLGL 360 and 363A may be applied toward the general education requirement in computing.

A description of the curriculum begins on p. 41.

### PLGL 101
#### Introduction to Law for the Paralegal (3)
(Prerequisite to all other paralegal courses. No prior legal knowledge needed.) A survey of the American legal system and an overview of the role of the paralegal in the legal environment. Topics include the organization and powers of federal and state lawmaking institutions, as well as court procedures. Skills taught are those necessary for paralegal work, such as the analysis of statutory provisions and judicial opinions, along with the identification of legal issues.

## PLGL 200
### Techniques of Legal Research (3)
Prerequisite: PLGL 101. An introduction to the methods paralegals use to analyze problems and locate relevant, mandatory, and current rules and interpretations. Presentation covers the analysis, publication, and citation of judicial opinions, statutory provisions, administrative law, and legislative history. The features and use of secondary sources, digests, and other indexes are explained. The use of citators to update and identify related case law is explained, and computer-assisted research systems are introduced.

## PLGL 201
### Legal Writing (3)
Prerequisite: PLGL 200. An introduction to the principles of writing clearly and effectively, with techniques for doing so in the legal environment. Emphasis is on types of documents that paralegals may be called upon to draft, including intake memos, legal memos, and client letters.

## PLGL 204
### Legal Ethics/Law Office Systems (3)
A survey of basic principles relating to the practice of law and the responsibilities of paralegals. Rules and guidelines governing the ethical conduct of lawyers and nonlawyers are introduced. Also covered are law office management principles relevant to ethical requirements.

## PLGL 223
### Investigative Techniques (3)
Prerequisite: PLGL 201. An overview of the techniques of legal investigation used by paralegals during the processes of discovery in civil and criminal litigation. Techniques taught include those of interviewing and taking notes and statements, and using reports as testimony in court. Application of technical and scientific advances in investigative work is covered. Assignments include legal research and written and oral analysis. Students may receive credit for only one of the following courses: CJUS 220 or PLGL 223.

## PLGL 312
### Torts (3)
Prerequisite: PLGL 201. A study of the causes of action, defenses, and remedies in the major categories of tort law. Tort-litigation procedures and writings that a paralegal may be responsible for are introduced. Topics include the various intentional torts, negligence, strict liability, damages, workers' compensation, and civil procedures. Assignments include legal research and written and oral analysis.

## PLGL 315
### Domestic Relations (3)
Prerequisite: PLGL 201. A study of the legal aspects of divorce and separation. Emphasis is on Maryland law and on the processes, procedures, and writings a paralegal may handle. Topics include grounds for, defenses in, and jurisdictional issues of divorce, separation, and annulment; child custody and visitation; and alimony, child support, disposition of property, and tax consequences. Relevant aspects of civil procedures, enforcement, and the modification of orders and agreements are covered. Assignments include legal research and written and oral analysis. Students may receive credit for only one of the following courses: FMCD 487 or PLGL 315.

## PLGL 316
### Estates and Probate (3)
Prerequisite: PLGL 201. A study of the legal concepts entailed in drafting and preparing simple wills and administering estates in Maryland, as well as the processes, procedures, and writings for which a paralegal may be responsible. Topics include preliminary and practical considerations of administering an estate; the appraisal of estate assets and probate inventory; inheritance taxes; claims against the estate; management of debts, accounting, and distribution considerations; the drafting and execution of wills; and guardianships. Assignments include legal research and written and oral analysis. Students may receive credit for only one of the following courses: PLGL 216 or PLGL 316.

## PLGL 320
### Criminal Law and Procedures (3)
Prerequisite: PLGL 201. A study of the substantive and procedural aspects of the criminal-justice system. Aspects stressed are those that may affect the work of a paralegal. Topics include crimes and defenses, potential charges, and penalties. Court procedures are reviewed and explained. Assignments include legal research and written and oral analysis. Students may receive credit for only one of the following courses: CJUS 234 or PLGL 320.

## PLGL 321
### Economic-Crime Investigation (3)
Prerequisite: PLGL 201. An introduction to specific techniques for investigating white-collar crime. Presentation covers the recognition of fraud in such enterprises as real estate, purported business opportunities, planned bankruptcies, and arson, as well as classic frauds such as pyramid and Ponzi schemes. Statutory mechanisms for dealing with fraud are outlined and discussed. Assignments include legal research and written and oral analysis.

**Attachment** 3

## Objectives

The student who graduates with a minor in journalism will be able to

- Understand communication theory and how it applies to particular types of communication, including mass communication.
- Understand fundamental concepts and techniques in public relations theory and practice and in news writing and editing for print media, broadcast media, magazines, and advertising.
- Write and edit effectively.
- Develop journalism products and processes appropriate to a given audience, environment, and need.
- Gather information from a variety of sources and critically identify, examine, and present issues associated with information communicated to diverse audiences.
- Learn about and apply techniques of independent research, including research that uses technology and fosters information literacy.
- Recognize the legal and ethical implications of communication and produce communications that are ethically and legally responsible.

## Requirements for the Minor

A minor in journalism requires the completion of 15 semester hours of coursework in journalism and communication studies; at least 9 semester hours must be earned in courses numbered 300 or above. Specific course requirements are listed below. If a specific course required for the minor is taken instead to satisfy the requirements for the major, another course in the same discipline should be substituted to fulfill the required minimum number of semester hours for the minor. Any course used to replace an upper-level course should also be upper level.

For a listing of all the requirements for the bachelor's degree, students should refer to p. 16.

### Journalism Coursework (15 s.h.)

**Required Courses (12 s.h.)**
Students must take the following foundation courses:

| | | |
|------|-----|----------------------------------|
| COMM | 300 | Communication Theory (3) |
| COMM | 400 | Communication and the Law (3) |
| JOUR | 201 | Writing for the Mass Media (3) |
| JOUR | 202 | Editing for the Mass Media (3) |

**Supplemental Minor Courses (3 s.h. )**
Students must choose one of the following courses to complete the 15 semester hours required for the minor:

| | | |
|------|-----|--------------------------------------|
| JOUR | 320 | News Reporting (3) |
| JOUR | 330 | Public Relations Theory (3) |
| JOUR | 331 | Public Relations Techniques (3) |
| JOUR | 334 | Public Relations Programs (3) |
| JOUR | 340 | Advertising Communication (3) |
| JOUR | 341 | Advertising Techniques (3) |
| JOUR | 350 | Photojournalism in the Digital Age (3) |
| JOUR | 371 | Magazine Article and Feature Writing (3) |
| JOUR | 380 | Science Writing for Magazines and Newspapers (3) |
| JOUR | 410 | History of Mass Communication (3) |
| JOUR | 459 | Special Topics in Mass Communication (3) |

# Legal Studies

Students may seek an academic major in legal studies.

## Major in Legal Studies

The legal studies major prepares students for challenging and responsible work in the legal environment. The curriculum is relevant and current for work in various legal settings that use paralegals and focuses on fundamental legal knowledge, skills, and ethical principles. The curriculum addresses the organization, function, and processes of the lawmaking institutions in the American legal system, as well as the role of the paralegal in the legal system and the governing rules of legal ethics. It emphasizes legal analysis, legal writing and drafting, legal research, and computer competence in the legal environment.

## Objectives

The student who graduates with a major in legal studies will be able to

- Explain the historical development and the basic constitutional principles of the American legal system.
- Compare and contrast the American legal system with other legal systems.
- Discuss issues relevant to the paralegal profession.
- Recognize and discuss ethical considerations involved in the practice of law.
- Explain substantive concepts in selected areas of legal specialization.
- Describe the procedures for settlement of civil, criminal, and administrative disputes.
- Identify ways that computers assist in the legal environment.
- Analyze facts, law, and legal issues.
- Explain legal topics and analysis.
- Complete book-based and computer-assisted legal research tasks.
- Draft writings typically assigned to paralegals in selected areas of legal practice.
- Perform tasks typically assigned to paralegals in selected areas of legal practice.
- Use selected software to accomplish tasks in the legal environment.

## Requirements for the Major

A major in legal studies requires the completion of 33 semester hours of coursework in legal studies; at least 17 semester hours must be earned in courses numbered 300 or above. Specific course requirements are listed below.

For a listing of all the requirements for the bachelor's degree, students should refer to p. 16.

### Legal Studies Coursework (33 s.h.)

*Required Foundation Courses (12 s.h.)*
Students must take the following foundation courses:

| | | |
|---|---|---|
| LGST | 101 | Introduction to Law (3) |
| LGST | 200 | Techniques of Legal Research (3) |
| LGST | 201 | Legal Writing (3) |
| LGST | 204 | Legal Ethics (3) |

*Procedure and Skill Courses (9 s.h. )*
Students must choose three of the following procedure and skill courses:*

| | | |
|---|---|---|
| LGST | 320 | Criminal Law and Procedures (3) |
| LGST | 322 | Evidence (3) |
| LGST | 325 | Litigation (3) |
| LGST | 327 | Alternative Dispute Resolution (3) |
| LGST | 330 | Administrative Law (3) |
| LGST | 333 | Administrative Advocacy (3) |
| LGST | 360 | Computer Applications in the Legal Environment (3) |
| LGST | 363A | Computer-Assisted Litigation Support (3) |
| LGST | 370 | Advanced Legal Analysis (3) |
| LGST | 400 | Advanced Legal Research (3) |
| LGST | 401 | Advanced Legal Writing (3) |
| LGST | 425 | Advanced Civil Litigation (3) |
| LGST | 486A | Legal Studies Internship Through Co-op (3) |
| LGST | 486B | Legal Studies Internship Through Co-op (6) |

*Substantive Law Courses (9 s.h. )*
Students must choose three of the following substantive law courses:*

| | | |
|---|---|---|
| LGST | 312 | Torts (3) |
| LGST | 315 | Domestic Relations (3) |
| LGST | 316 | Estates and Probate (3) |
| LGST | 335 | Elder Law (3) |
| LGST | 340 | Contract Law (3) |
| LGST | 343 | Real Estate Transactions (3) |
| LGST | 411 | Consumer Protection Law (3) |
| LGST | 415 | Intellectual Property (3) |
| LGST | 420 | Immigration Law (3) |
| LGST | 431 | Government Information Practices (3) |
| LGST | 432 | Environmental Law (3) |
| LGST | 434 | Government Contracts (3) |
| LGST | 442 | Business Organizations (3) |
| LGST | 445 | Employment Law (3) |
| LGST | 450 | Bankruptcy Law (3) |

*\* Up to 6 semester hours of 1-semester-hour special topic courses in legal studies may also be used to satisfy the substantive law or the procedure and skill course requirements.*

*Supplemental Major Course (3 s.h.)*
Students must choose one additional course, to be selected either from the two previous lists or from the following courses in related disciplines:

| | | |
|---|---|---|
| CCJS | 432 | Law of Corrections (3) |
| CCJS | 453 | White-Collar and Organized Crime (3) |
| COMM | 400 | Communication and the Law (3) |
| ENMT | 493 | Environmental Regulations and Policy (3) |
| FSCN | 412 | Political and Legal Foundations of Fire Protection (3) |
| GVPT | 399B | The Legislative Process and Lobbying Techniques (3) |
| GVPT | 402 | International Law (3) |
| GVPT | 434 | Race Relations and Public Law (3) |
| HMGT | 416 | Legal Aspects of Health Services Administration (3) |

# Management Studies

Students may seek either an academic major or minor in management studies.

## Major in Management Studies

The management studies major provides a multidisciplinary approach to management and problem solving, based on the premise that many for-profit, nonprofit, and governmental organizations require a knowledge of management principles best gained from a holistic approach to decision making. The management studies curriculum includes a foundation in business, accounting, economics, statistics, communications, and management theory and focuses on analysis and decision making across a wide spectrum of management activities. It prepares students for a variety of management-related careers.

## Objectives

The student who graduates with a major in management studies will be able to

- Apply a multidisciplinary approach to the task of researching organizational problems, issues, and opportunities.

- Analyze information, solve problems, and make decisions across a broad range of management positions from a holistic, global orientation.

- Apply important management concepts and theories from several disciplines.

- Effectively compare different strategies and operations for businesses, not-for-profit, and governmental organizations in determining the best alternative from a number of possibilities.

- Examine the global dimensions involved in managing business and not-for-profit and governmental organizations.

- Analyze global competition and competitive strategies.

- Assess important trends in international ventures, marketing, financing, and human resource management.

## JOUR 486B Internship in Journalism Through Co-op (6)

Prerequisite: Formal admission to the Co-op program (program requirements are listed on p. 12). An opportunity to combine academic theory with new, career-related experience in journalism. At least 20 hours per week must be devoted to new tasks for a total of 300 hours during the Co-op session; five to eight new tasks must be delineated in the Learning Proposal; and the course requirements must be completed. May be repeated upon approval of a new Learning Proposal that demonstrates new tasks and objectives related to journalism and that continues to advance application of academic theory in the workplace. Students may earn up to 15 semester hours in all internship coursework through Co-op toward a first bachelor's degree and up to 9 semester hours toward a second bachelor's degree.

# Legal Studies

Courses in legal studies (designated LGST) may be applied as appropriate (according to individual program requirements) toward

- a major in legal studies;
- a certificate in Paralegal Studies; and
- electives.

LGST 401 may be applied toward the general education requirement in upper-level writing; LGST 360 and 363A may be applied toward the general education requirement in computing.

Students who have already received credit for courses designated PLGL may not receive credit for comparable courses designated LGST.

A description of the legal studies major begins on p. 65.

## LGST 101 Introduction to Law (3)

(Formerly PLGL 101.) A survey of the U.S. legal system and the role of the paralegal in the legal environment. Topics include the organization and powers of federal and state lawmaking institutions, court procedures, and the analysis of statutory provisions and judicial opinions. Students may receive credit for only one of the following courses: LGST 101 or PLGL 101.

## LGST 200 Techniques of Legal Research (3)

(Formerly PLGL 200.) Prerequisite or corequisite: LGST 101. An introduction to the book-based methods paralegals use to locate relevant, mandatory, and current rules and interpretations. Topics include the analysis, publication, and citation of judicial opinions, statutory provisions, and administrative law and the features and use of secondary sources, digests, and citators. Computer-assisted research systems are introduced. Assignments require legal research in a library with a law collection. Students may receive credit for only one of the following courses: LGST 200 or PLGL 200.

## LGST 201 Legal Writing (3)

(Formerly PLGL 201.) Prerequisite: LGST 200. An introduction to the principles of writing clearly and effectively in the legal environment. Emphasis is on types of documents that paralegals may be called upon to draft, including intake memos, legal memos, and client letters. Students may receive credit for only one of the following courses: LGST 201 or PLGL 201.

## LGST 204 Legal Ethics (3)

(Formerly PLGL 204. Fulfills the civic responsibility requirement.) A survey of basic principles relating to the ethical practice of law and the responsibilities of paralegals. Rules and guidelines governing the ethical conduct of lawyers and nonlawyers are introduced. Also covered are law office management principles relevant to ethical requirements. Students may receive credit for only one of the following courses: LGST 204 or PLGL 204.

## LGST 312 Torts (3)

(Formerly PLGL 312.) Prerequisite: LGST 201. A study of the causes of action, defenses, and remedies in the major categories of tort law as well as tort-litigation procedures and writings for which a paralegal may be responsible. Topics include intentional torts, negligence, strict liability, damages, and civil procedures. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 312 or PLGL 312.

## LGST 314 Workers' Compensation Law (1)

(Formerly PLGL 398H.) A thorough study of the Maryland Workers' Compensation Act and the practice of workers' compensation law in Maryland. Practical aspects of the workers' compensation system (including jurisdiction, employer/employee relationships, injuries covered by the Act, defenses, compensation benefits, vocational rehabilitation, and appeals) are covered. Students may receive credit for only one of the following courses: LGST 314 or PLGL 398H.

199

## LGST 315 Domestic Relations (3)

(Formerly PLGL 315.) Prerequisite: LGST 201. A study of the various legal aspects of family law. Emphasis is on the processes, procedures, and writings a paralegal may handle. Topics include divorce, separation, and annulment; child custody and visitation; and alimony, child support, disposition of property, and legal rights of children. Relevant aspects of civil procedures, enforcement, and the modification of orders and agreements are covered. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: FMCD 487, LGST 315, or PLGL 315.

## LGST 316 Estates and Probate (3)

(Formerly PLGL 316.) Prerequisite: LGST 201. A study of the legal concepts entailed in drafting and preparing simple wills and administering estates in Maryland, as well as the processes, procedures, and writings for which a paralegal may be responsible. Topics include preliminary and practical considerations of administering an estate; the appraisal of estate assets and probate inventory; inheritance taxes; claims against the estate; management of debts, accounting, and distribution considerations; the drafting and execution of wills; and guardianships. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 316, PLGL 216, or PLGL 316.

## LGST 320 Criminal Law and Procedures (3)

(Formerly PLGL 320.) Prerequisite: LGST 201. A study of the substantive and procedural aspects of the criminal justice system, particularly those aspects related to the work of a paralegal. Topics include crimes and defenses, penalties, and court procedures. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: CJUS 234, LGST 320, or PLGL 320.

## LGST 322 Evidence (3)

(Formerly PLGL 322.) Prerequisite: LGST 201. A study of laws that govern the admissibility of evidence for establishing or controverting facts in trials and administrative proceedings, and the role of the paralegal in gathering evidence and helping attorneys prepare for trial. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 322, PLGL 222, or PLGL 322.

## LGST 325 Litigation (3)

(Formerly PLGL 325.) Prerequisite: LGST 201. An examination of the process of civil litigation and responsibilities commonly assigned to paralegals. Topics include investigation and interviewing, preparation of pleadings and motions, discovery, the conduct of the trial, and post-trial activity. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 325 or PLGL 325.

## LGST 327 Alternative Dispute Resolution (3)

(Formerly PLGL 327. Fulfills the civic responsibility requirement.) An overview of the various processes and techniques to settle disputes without court adjudication. Topics include negotiation, mediation, and arbitration, and the role of the paralegal in these areas. Students may receive credit for only one of the following courses: LGST 327, PLGL 327, or PLGL 398G.

## LGST 330 Administrative Law (3)

(Formerly PLGL 330.) Prerequisite: LGST 201. An overview of the functions and procedures of federal and state administrative agencies, as well as preparation of writings pertinent to administrative law practice. Topics include rulemaking, adjudication, the use and control of agency discretion, and disclosure of information. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 330 or PLGL 330.

## LGST 333 Administrative Advocacy (3)

(Formerly PLGL 398P.) Prerequisite: LGST 201. The fundamentals of preparing and presenting a case at an administrative agency hearing that allows representation by nonattorneys. Topics include gathering, reviewing, and organizing information; reviewing agency files; interviewing, preparing, and examining claimants and witnesses; drafting memoranda of law and opening and closing statements; organizing a hearing notebook; negotiating with the agency; and interpreting and applying agency regulations. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 333 or PLGL 398P.

## LGST 335 Elder Law (3)

(Formerly PLGL 335.) Prerequisite: LGST 201. An overview of legal issues that are increasingly relevant as the older population increases. Topics include health care, public entitlements, and legal and financial decision making. Emphasis is on the role of the paralegal in those areas. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 335, PLGL 335, or PLGL 398E.

## LGST 340 Contract Law (3)

(Formerly PLGL 340.) Prerequisite: LGST 201. A comprehensive study of the major areas of contract law that paralegals are most likely to encounter. Topics include the legal concepts of formation; modification, assignment, delegation, and status of possible third-party beneficiaries; interpretation and enforcement; discharge; breach and remedies for breach; the statute of frauds; and the parole evidence rule. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 340 or PLGL 340.

## LGST 343 Real Estate Transactions (3)

(Formerly PLGL 343.) Prerequisite: LGST 201. A study of the essentials of real estate law. Emphasis is on settlement procedures in Maryland, with a study of the processes, procedures, and writings for which a paralegal may be responsible. Discussion covers real estate contracts, types and sources of mortgage financing, title work, and closing and settlement. Other topics examined include easements and covenants, and condos, PUDs, and co-ops. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 343 or PLGL 343.

## LGST 345 Landlord Tenant Law (1)

(Formerly PLGL 398K.) A nuts-and-bolts study of landlord/tenant issues. Focus is on the rights and obligations of landlords in rental properties and the rights of tenants and how to assert those rights. Topics include lease provisions and eviction processes and how to defend against eviction. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 345 or PLGL 398K.

## LGST 360 Computer Application in the Legal Environment (3)

(Formerly PLGL 360.) Prerequisite: Basic familiarity with computers. An overview of uses of computer software in the legal environment for the prospective paralegal. The concepts and theory of computer operations are explained in the context of needs analysis for law firms. Applications such as text processing, database management, electronic spreadsheets, timekeeping, docket control, and litigation support are emphasized. Students may receive credit for only one of the following courses: CAPP 343, LGST 360, or PLGL 360.

## LGST 363A Computer-Assisted Litigation Support (3)

(Formerly PLGL 363A.) Prerequisite: LGST 325. A focused study for the intermediate computer user of the uses of computer software to support litigation. Topics include databases, document discovery, document coding and abstracting, search and retrieval methods, and project management. Students may receive credit for only one of the following courses: LGST 363A or PLGL 363A.

## LGST 370 Advanced Legal Analysis (3)

(Formerly PLGL 370.) An advanced study of the legal analysis skills needed by the paralegal to successfully complete a variety of tasks in the legal environment. Skills covered include spotting and framing legal issues, identifying and applying relevant law to predict and to advocate the outcome of legal issues, and using legal rules and interpretations to develop informal and formal discovery plans. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 370 or PLGL 370.

## LGST 400 Advanced Legal Research (3)

(Formerly PLGL 400.) Prerequisite: LGST 200. An exhaustive study of methods and techniques for planning and completing a complex legal research project. Features and uses of book-based and online sources for both primary and secondary legal authority are presented. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 400 or PLGL 400.

## LGST 401 Advanced Legal Writing (3)

(Formerly PLGL 401. Fulfills the general education requirement in intensive upper-level writing.) Prerequisite: LGST 201. A thorough grounding in the principles and techniques of drafting sophisticated legal memoranda that paralegals may be called upon to prepare. Kinds of writings that are covered include complex office and advocacy memoranda as well as selected parts of appellate briefs. Assignments include legal research. Students may receive credit for only one of the following courses: LGST 401 or PLGL 401.

## LGST 411 Consumer Protection Law (3)

(Formerly PLGL 411.) Prerequisite: LGST 201. A general overview of consumer protection law and the roles of federal, state, and local agencies for the prospective paralegal. Topics include warranties, the regulation of consumer credit, restrictions on advertising, and credit reporting. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 411 or PLGL 411.

## LGST 415 Intellectual Property (3)

(Formerly PLGL 415.) Prerequisite: LGST 201. An overview of patents, trademarks, and copyright law. Emphasis is on the role of the paralegal in application, maintenance, research, and litigation processes. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 415, PLGL 398D, or PLGL 415.

## LGST 420 Immigration Law (3)

(Formerly PLGL 420.) Prerequisite: LGST 201. An overview of the laws, agencies, and procedures involved in U.S. immigration law and the role of paralegals in immigration practice. Topics include sources and administration of immigration law and research and preparation of various immigration documents. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 420, PLGL 398F, or PLGL 420.

## LGST 425 Advanced Civil Litigation (3)

(Formerly PLGL 398N.) Prerequisites: LGST 201 and 325; LGST 322 recommended. A study of the nuts and bolts of paralegal practice in large-case civil litigation. Topics include discovery and motion practice; pretrial preparation, including the pretrial memorandum; and preparation of the excerpt of record for the pappellate court. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 425 or PLGL 398N.

## LGST 431 Government Information Practices (3)

(Formerly PLGL 431.) Prerequisite: LGST 201. An introduction to federal statutes and interpretive case law governing requirements, exemptions, and procedures related to the disclosure of information by the federal government. Focus is on the processes, procedures, and writings for which a paralegal may be responsible. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 431, PLGL 331, or PLGL 431.

## LGST 432 Environmental Law (3)

(Formerly PLGL 432.) Prerequisite: LGST 201. An exploration of the statutory and regulatory bases of environmental law, for the prospective paralegal. Topics include the role of federal agencies in such undertakings as controlling various types of pollution, assessing and managing risk, and regulating toxic substances. Assignments include legal research and written and oral analysis. Students may receive credit for only one of the following courses: LGST 432, PLGL 332, or PLGL 432.

## LGST 434 Government Contracts (3)

(Formerly PLGL 434.) Prerequisites: LGST 201 and 340. An overview of the rules and regulations that must be followed in preparing and executing government contracts for the prospective paralegal. Methods of acquisition, types of contracts and settlements, modifications, socioeconomic provisions, and disputes and remedies are covered. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 434 or PLGL 434.

## LGST 442 Business Organizations (3)

(Formerly PLGL 442.) Prerequisite: LGST 201. An overview of the legal aspects of establishing, organizing, developing, and operating a business enterprise, and the processes, procedures, and writings for which a paralegal may be responsible. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 442, PLGL 342, or PLGL 442.

## LGST 445 Employment Law (3)

(Formerly PLGL 398O.) Prerequisite: LGST 201. An overview of federal and state laws governing the employment relationship in the public and private sectors. Topics include employee protection from discrimination and harassment, employer obligations toward disabled workers, privacy issues, and employment contract matters. Focus is on the knowledge and practical skills required for a paralegal working in this area. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 445 or PLGL 398O.

## LGST 450 Bankruptcy Law (3)

(Formerly PLGL 450.) Prerequisite: LGST 201. A study of the bankruptcy code and the related rules of procedure, and the role of the paralegal in assisting attorneys in bankruptcy practice. Techniques detailed include how to identify and gather relevant data and how to draft and file appropriate documents. Assignments include legal research and written analysis. Students may receive credit for only one of the following courses: LGST 450 or PLGL 450.

## LGST 486A Legal Studies Internship Through Co-op (3)

Prerequisite: Formal admission to the Co-op program (program requirements are listed on p. 12). An opportunity to combine academic theory with new, career-related experience in legal studies. At least 12 hours per week must be devoted to new tasks for a total of 180 hours during the Co-op session; four new tasks must be delineated in the Learning Proposal; and the course requirements must be completed. May be repeated upon approval of a new Learning Proposal that demonstrates new tasks and objectives related to legal studies and that continues to advance application of academic theory in the workplace. Students may earn up to 15 semester hours in all internship coursework through Co-op toward a first bachelor's degree and up to 9 semester hours toward a second bachelor's degree.

## LGST 486B Legal Studies Internship Through Co-op (6)

Prerequisite: Formal admission to the Co-op program (program requirements are listed on p. 12). An opportunity to combine academic theory with new, career-related experience in legal studies. At least 20 hours per week must be devoted to new tasks for a total of 300 hours during the Co-op session; five to eight new tasks must be delineated in the Learning Proposal; and the course requirements must be completed. May be repeated upon approval of a new Learning Proposal that demonstrates new tasks and objectives related to legal studies and that continues to advance application of academic theory in the workplace. Students may earn up to 15 semester hours in all internship coursework through Co-op toward a first bachelor's degree and up to 9 semester hours toward a second bachelor's degree.

# Library Skills

Courses in library skills (designated LIBS) may be applied toward

- the general education requirement in information literacy; and
- electives.

## LIBS 150 Information Literacy and Research Methods (1)

An introduction to the research process and methods for retrieving information in a library or through online sources. Experience in approaching research, selecting a topic, and retrieving information on topics of professional or personal interest is provided. Focus is on developing the following information literacy skills: understanding the research process; selecting relevant print and electronic sources to answer research questions; effectively using Web search engines and UMUC Information and Library Services' electronic resources to find information; and evaluating, organizing, and correctly citing the information found. Students may receive credit for only one of the following courses: COMP 111, LIBS 100, or LIBS 150.

# Management Studies

Courses in management studies (designated MGST) may be applied as appropriate (according to individual program requirements) toward

- a major or minor in management studies; and
- electives.

A description of the curriculum for the management studies major and minor begins on p. 66. Descriptions of related curricula may be found on the following pages: accounting (p. 27), business administration (p. 33), environmental management (p. 49), fire science (p. 51), human resource management (p. 60), and marketing (p. 68).

## MGST 120 Fundamentals of the Accounting Process (3)

(Not open to students who have completed ACCT 220 or an equivalent course in financial accounting. For students with little or no prior background in accounting.) An in-depth study of the accounting cycle, from journal and ledger entries to the preparation and analysis of financial statements for both service and retail concerns. Topics include special journals and cash and payroll accounting.

## MGST 140 Personal Financial Management (3)

An examination of personal financial management, blending financial theory with financial applications. Focus is on developing personal skills in financial management (such as balancing a checkbook, budgeting personal income and expenditures, and planning for financial security and retirement). Topics include elements of the U.S. financial structure (such as savings and investment alternatives, financing and credit sources, the role of insurance in protecting income and assets, and federal income tax requirements).

## MGST 161 Managerial Communications Skills (3)

An examination of the communication model. Practice is provided in sending and receiving information through reading, writing, listening, speaking, and observing nonverbal cues using job-related situations.

## MGST 162 Personnel Counseling (3)

A study of counseling as part of a supervisor's responsibilities. The counseling process is examined through role-playing exercises. Focus is on developing skills in areas such as active listening and observing, focusing on the problem, empathetic understanding, guiding decision making, and recognizing referral situations. Counseling situations (e.g., performance appraisals, gender issues, personal crises that affect work performance, and performance problems) are drawn from the work environment.

# Attachment 4

```
02/06/95  13:40                       UNIVERSITY OF MARYLAND
                                      UNIVERSITY COLLEGE                                    PAGE   1
                                TENTATIVE EVALUATION AS OF 02/06/95
         PAC/SAC: PLGL/ENGL
         DEGREE: Bachelor of Science                                                  JOE JOHNSON JR
CATALOG EDITION: 9109                                                                    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
                                                                               ADVISOR : Sharon M. Aceti

         JOE JOHNSON JR
         607 AUDREY LANE #202
         FOREST HEIGHTS  MD  20745
```

This evaluation is provided for advisement only. It is not an official record. Students are responsible for meeting requirements, and should be aware that a minimum of 120 cumulative hours and a 2.0 GPA overall are required for graduation.

| I.   GENERAL EDUCATION REQ. | COURSES | GRADE | CREDITS | DO NOT TAKE |
|---|---|---|---|---|
| A.  COMMUNICATIONS  9 s.h. | | | | |
| 01  ENGL101 or equivalent  3 s.h. | remaining credits | | 3.00 | |
| 02  Writing  3 s.h. | remaining credits | | 3.00 | |
| 03  Speech/Writing  3 s.h. | remaining credits | | 3.00 | |
| OVERALL COMMUNICATIONS  9 s.h. | | | | |
| Applicable Credits :      0.00 | | | | |
| Remaining Credits :      9.00 | | | | |

| B.  SOCIAL SCIENCES  6 s.h. | | | | |
|---|---|---|---|---|
| 01  Social Sciences  6 s.h. | remaining credits | | 6.00 | |
| OVERALL SOCIAL SCIENCES  6 s.h. | | | | |
| Applicable Credits :      0.00 | | | | |
| Remaining Credits :      6.00 | | | | |

| C.  ARTS & HUMANITIES  6 s.h. | | | | |
|---|---|---|---|---|
| 01  Arts & Humanities  6 s.h. | remaining credits | | 6.00 | |
| OVERALL ARTS & HUMANITIES  6 s.h. | | | | |
| Applicable Credits :      0.00 | | | | |
| Remaining Credits :      6.00 | | | | |

| D.  MATH/SCIENCE  9 s.h. | | | | |
|---|---|---|---|---|
| 01  Mathematics  3 s.h. | remaining credits | | 3.00 | |
| 02  Math/Natural Science  6 s.h. | remaining credits | | 6.00 | |
| OVERALL MATH/SCIENCE  9 s.h. | | | | |
| Applicable Credits :      0.00 | | | | |
| Remaining Credits :      9.00 | | | | |

| E.  ELECTIVES  33 s.h. minimum | | | | |
|---|---|---|---|---|
| 01  Upper-level electives | remaining credits | | 9.00 | |
| 02  Any-level electives | 9502 CCSS 105   remaining credits | (3) | 24.00 | |
| | 9502 CCSS 234 | (3) | | |
| OVERALL ELECTIVES  33 s.h. minimum | | | | |
| Applicable Credits :      0.00 | | | | |
| Remaining Credits :      33.00 | | | | |

02/06/95  13:40

UNIVERSITY OF MARYLAND
UNIVERSITY COLLEGE
TENTATIVE EVALUATION AS OF 02/06/95

PAGE   2

PAC/SAC: PLGL/ENGL
DEGREE: Bachelor of Science
CATALOG EDITION: 9109

JOE JOHNSON JR
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
ADVISOR : Sharon M. Aceti

| II. PARALEGAL STUDIES | | | COURSES | GRADE | CREDITS | DO NOT TAKE |
|---|---|---|---|---|---|---|
| A.  PRIMARY CONC.- PLGL    24 s.h. | | | | | | |
| 01  Upper-level PAC   15 s.h. | 9402 | PLGL340 | CONTRACT LAW | B | 3.00 | |
| | 9402 | PLGL411 | CONSUMER-PROT LAW | B | 3.00 | |
| | 9409 | PLGL322 | EVIDENCE | B | 3.00 | |
| | 9402 | PLGL325 | LITIGATION | C | 3.00 | |
| | 9409 | PLGL312 | TORTS | C | 3.00 | |
| 02  Any-level PAC   9 s.h. | 9309 | PLGL201 | LEGAL WRITING | B | 3.00 | |
| | 9409 | PLGL200 | TECH OF LEGAL RSRCH | C | 3.00 | |
| | 9409 | PLGL223 | INVESTIGATIVE TECH | C | 3.00 | |

OVERALL PRIMARY CONC.- PLGL    24 s.h.
  Applicable Credits :    24.00
  Remaining Credits  :     0.00

III. ENGL SECONDARY CONCENTRATION
A.  SECONDARY CONC.- ENGL  21 s.h.
  01  Upper-level SAC  15 s.h.                    remaining credits                    15.00

  02  Any-level SAC    6 s.h.                     remaining credits                     6.00

OVERALL SECONDARY CONC.- ENGL  21 s.h.
  Applicable Credits :     0.00
  Remaining Credits  :    21.00

| | RESIDENT | TRANSFER |
|---|---|---|
| Credits in PAC | 24.00 | 0.00 |
| Credits in PAC/SAC | 24.00 | 0.00 |

| IV.  B. S. OPTION - PLGL | | | | | | |
|---|---|---|---|---|---|---|
| A.  B.S. OPTION  12 s.h. | | | | | | |
| 01  Related Courses  12 s.h. | 9309 | PLGL101 | INTRO TO PARALEGAL | C | 3.00 | |
| | 9402 | PLGL204 | LGL ETH/LAW OFF SYS | C | 3.00 | |
| | 9502 | PhGL 315 | remaining credits | | (3) | 6.00 |
| | 9502 | PhGL 401 | | | (3) | |

OVERALL B.S. OPTION  12 s.h.
  Applicable Credits :     6.00
  Remaining Credits  :     6.00

02/06/95  13:40                    UNIVERSITY OF MARYLAND
                                   UNIVERSITY COLLEGE
                          TENTATIVE EVALUATION AS OF 02/06/95                    PAGE  3

        PAC/SAC: PLGL/ENGL                                                      JOE JOHNSON JR
        DEGREE: Bachelor of Science                                              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
CATALOG EDITION: 9109                                                    ADVISOR : Sharon M. Aceti

A.  GRADUATION/DISTRIBUTION REQ.
    01  Any upper-level  45 s.h.        9402  PLGL340    CONTRACT LAW        B    3.00
                                        9402  PLGL411    CONSUMER-PROT LAW   B    3.00
                                        9409  PLGL322    EVIDENCE            B    3.00
                                        9402  PLGL325    LITIGATION          C    3.00
                                        9409  PLGL312    TORTS               C    3.00
                                                         remaining credits              30.00

OVERALL GRADUATION/DISTRIBUTION REQ.
   Applicable Credits :     15.00
   Remaining Credits  :     30.00
------------------------------------------------------------------------------------------------
B.  GRAD'N/DIST'N - COMMUNICATIONS
    01  ENGL101 or equivalent  3 s.h.                    remaining credits               3.00

    02  UL Intensive Writing  3 s.h.                     remaining credits               3.00

    03  Writing  3 s.h.                 9309  PLGL201    LEGAL WRITING       B    3.00

    04  Speech/Writing  3 s.h.                           remaining credits               3.00

OVERALL GRAD'N/DIST'N - COMMUNICATIONS
   Applicable Credits :      3.00
   Remaining Credits  :      9.00
------------------------------------------------------------------------------------------------
C.  GRAD./DIST. REQUIREMENTS
    01  Computer  3 s.h.                                 remaining credits               3.00

    03  Natural Science  3 s.h.                          remaining credits               3.00

    04  Historic Context  3 s.h.                         remaining credits               3.00

    05  Global Context  3 s.h.                           remaining credits               3.00
             OR                                                                           OR
    06  Foreign Language/Global  6 s.h.                  remaining credits               6.00

OVERALL GRAD./DIST. REQUIREMENTS
   Applicable Credits :      0.00
   Remaining Credits: 12.00 OR 15.00
------------------------------------------------------------------------------------------------
    COURSES IN PROGRESS:
                                        9502  CCJS105    INTR TO CRIMINOLOGY      3.00
                                        9502  CCJS234    CRIM PROC&EVIDENCE       3.00
                                        9502  PLGL315    DOMESTIC RELATIONS       3.00
                                        9502  PLGL401    ADV LEGAL WRITING        3.00
================================================================================================

        COMMUNITY COLLEGE CREDITS :  00.00    EXPERIENTIAL LEARNING/COURSE CHALLENGE :  00.00
        STANDARDIZED CREDIT BY EXAM :  00.00            VOCATIONAL/TECHNICAL CREDITS :  00.00
     COOPERATIVE EDUCATION CREDITS :  00.00              TOTAL PASS/FAIL CREDITS :  00.00

                        UNIVERSITY COLLEGE CREDITS :  30.00
                        TRANSFER CREDITS           :  00.00

                        TOTAL REMAINING CREDITS :  90

                        ** AUDIT COMMENTS **

        PLEASE NOTE that this is a TENTATIVE evaluation. I can't run this as an
        official evaluation because we do not have your high school records. I have
        enclosed a transcript request form for you to use. As soon as we receive this
        transcript, I will make your evaluation official.

        Also, please note that you need to take ENGL 101 as soon as possible. We
        require students who are pursuing a bachelor's degree to take ENGL 101 within
        their first 15 semester hours, and you are already past that point. Call 985-
        7359 for English placement test information.

        If you have questions about your bachelor's degree requirements, please come
        in to see an advisor or contact me in writing.

Good luck with your studies.

**** END OF AUDIT REPORT ****



# University of Maryland University College

*Student Financial Services*

```
                    Statement of Account
                        Fall 1993


    JOHNSON JR  JOE                          S244396136
    607 AUDREY LANE
    APARTMENT #102
    OXON HILL, MD 20745
```

|  Seq# | Trans Code | Trans Description | Sem | Original Amount | Trans Balance | Due Date |
|-------|------------|-------------------|-----|-----------------|---------------|----------|
| 0001 | UG01-FE05CH | APPLICATION | 9309 | 25.00 | 0.00 | 032993 |
| 0002 | CA80-CK02PY | CHECK | 9309 | 25.00- | 0.00 | 032993 |
| C0003 | UG02-TU01CH | PLGL201 /UG/SW/IS | 9309 | 480.00 | 0.00 | 082193 |
| 0004 | UG01-FE04CH | REGISTRATION | 9309 | 5.00 | 0.00 | 082193 |
| 0005 | UG02-TU01CH | PLGL200 /UG/SW/IS | 9309 | 480.00 | 0.00 | 082193 |
| 0006 | UG01-FE04CH | REGISTRATION | 9309 | 5.00 | 0.00 | 082193 |
| C0007 | UG02-TU01CH | PLGL101 /UG/SW/IS | 9309 | 480.00 | 0.00 | 082193 |
| 0008 | UG01-FE04CH | REGISTRATION | 9309 | 5.00 | 0.00 | 082193 |
| 0009 | FA10-FF17PY | SEOG AWARD 1994 | 9309 | 250.00- | 0.00 | 082593 |
| C0010 | FA10-FF07PY | PELL AWARD 1994 | 9309 | 575.00- | 0.00 | 082593 |
| C0011 | UG02-TU01CR | DROPPED-PLGL101 2061 | 9309 | 480.00- | 0.00 | 090793 |
| 0012 | UG01-FE11CH | DROP AND/OR ADD FEE | 9309 | 5.00 | 0.00 | 090793 |
| C0013 | UG02-TU01CR | DROPPED-PLGL201 2031 | 9309 | 480.00- | 0.00 | 090793 |
| 0014 | UG01-FE11CH | DROP AND/OR ADD FEE | 9309 | 5.00 | 0.00 | 090793 |
| 0015 | UG02-TU02CH | PLGL201 /UG/SW/OS | 9309 | 480.00 | 0.00 | 090793 |
| 0016 | UG01-FE07CH | DROP AND/OR ADD FEE | 9309 | 5.00 | 0.00 | 090793 |
| 0017 | UG02-TU02CH | PLGL101 /UG/SW/OS | 9309 | 480.00 | 0.00 | 090793 |
| 0018 | UG01-FE07CH | DROP AND/OR ADD FEE | 9309 | 5.00 | 0.00 | 090793 |
| 0019 | UG02-TU01CH | PLGL322 /UG/SW/IS | 9309 | 480.00 | 0.00 | 090793 |
| 0020 | UG01-FE11CH | DROP AND/OR ADD FEE | 9309 | 5.00 | 0.00 | 090793 |
| C0021 | FA10-FF07PR | ADJ-PELL AWARD 1994 | 9309 | 575.00 | 0.00 | 101193 |
| 0022 | FA10-FF07PY | PELL AWARD 1994 | 9309 | 1150.00- | 0.00 | 101193 |
| 0023 | CA80-CK02PY | CHECK | 9309 | 560.00- | 0.00 | 102193 |
| 0032 | FA10-FN07PY | PERKINS LOAN 1994 | 9309 | 1125.00- | 0.00 | 120193 |
| 0033 | CR90-CR01CH | REFUND CHECK REQUEST | 9309 | 1125.00 | 0.00 | 120793 |

*3501 University Boulevard East, Adelphi, MD 20783-8078 USA ■ 301-985-7510*
*Fax 301-985-7462 ■ finaid@umuc.edu ■ bursaroffice@umuc.edu ■ www.umuc.edu*

******** END OF DETAIL RECORDS ********



# University of Maryland University College

*Student Financial Services*

## Statement of Account
## Spring 1994

JOHNSON JR  JOE                                    S244396136
607 AUDREY LANE
APARTMENT #102
OXON HILL, MD 20745

| Seq# | Trans Code | Trans Description | Sem | Original Amount | Trans Balance_ | Due Date |
|------|-----------|-------------------|-----|---------|---------|--------|
| 0024 | UG02-TU01CH | PLGL411 /UG/SW/IS | 9402 | 480.00 | 0.00 | 112293 |
| 0025 | UG01-FE04CH | REGISTRATION | 9402 | 5.00 | 0.00 | 112293 |
| 0026 | UG02-TU01CH | PLGL340 /UG/SW/IS | 9402 | 480.00 | 0.00 | 112293 |
| 0027 | UG01-FE04CH | REGISTRATION | 9402 | 5.00 | 0.00 | 112293 |
| 0028 | UG02-TU02CH | PLGL325 /UG/SW/OS | 9402 | 480.00 | 0.00 | 112293 |
| 0029 | UG01-FE06CH | UG REGISTRATION O/S | 9402 | 5.00 | 0.00 | 112293 |
| 0030 | UG02-TU02CH | PLGL204 /UG/SW/OS | 9402 | 480.00 | 0.00 | 112293 |
| 0031 | UG01-FE06CH | UG REGISTRATION O/S | 9402 | 5.00 | 0.00 | 112293 |
| 0034 | FA10-FF17PY | SEOG AWARD 1994 | 9402 | 250.00- | 0.00 | 123093 |
| C0035 | FA10-FF07PY | PELL AWARD 1994 | 9402 | 575.00- | 0.00 | 123093 |
| 0036 | FA10-FN07PY | PERKINS LOAN 1994 | 9402 | 1125.00- | 0.00 | 123093 |
| C0037 | FA10-FF07PR | ADJ-PELL AWARD 1994 | 9402 | 575.00 | 0.00 | 022894 |
| 0038 | FA10-FF07PY | PELL AWARD 1994 | 9402 | 1150.00- | 0.00 | 022894 |
| 0039 | CR90-CR01CH | REFUND CHECK REQUEST | 9402 | 585.00 | 0.00 | 030794 |

```
******** END OF DETAIL RECORDS ********
```

*3501 University Boulevard East, Adelphi, MD 20783-8078 USA ▪ 301-985-7510*
*Fax 301-985-7462 ▪ finaid@umuc.edu ▪ bursaroffice@umuc.edu ▪ www.umuc.edu*



# University of Maryland University College

*Student Financial Services*

Statement of Account
Fall 1994

JOHNSON JR  JOE                                    S244396136
607 AUDREY LANE
APARTMENT #102
OXON HILL, MD 20745

| Seq# | Trans Code | Trans Description | Sem | Original Amount | Trans Balance_ | Due Date |
|------|-----------|-------------------|-----|----------------|----------------|----------|
| 0040 | UG02-TU02CH | PLGL322 /UG/SW/OS | 9409 | 507.00 | 0.00 | 081694 |
| 0041 | UG01-FE06CH | UG REGISTRATION O/S | 9409 | 0.00 | 0.00 | 081694 |
| 0042 | UG02-TU01CH | PLGL312 /UG/SW/IS | 9409 | 507.00 | 0.00 | 081694 |
| 0043 | UG01-FE04CH | REGISTRATION | 9409 | 0.00 | 0.00 | 081694 |
| 0044 | UG02-TU02CH | PLGL223 /UG/SW/OS | 9409 | 507.00 | 0.00 | 081694 |
| 0045 | UG01-FE06CH | UG REGISTRATION O/S | 9409 | 0.00 | 0.00 | 081694 |
| 0046 | UG02-TU01CH | PLGL200 /UG/SW/IS | 9409 | 507.00 | 0.00 | 081694 |
| 0047 | UG01-FE04CH | REGISTRATION | 9409 | 0.00 | 0.00 | 081694 |
| 0048 | CA80-CK02PY | CHECK | 9409 | 2028.00- | 0.00 | 090294 |
| 0063 | FA10-FS01PY | GENERAL STATE | 9409 | 600.00- | 0.00 | 113095 |
| 0065 | CR90-CR01CH | REFUND CHECK REQUEST | 9409 | 600.00 | 0.00 | 121995 |

******** END OF DETAIL RECORDS ********

```
S244396136   JOHNSON JR  JOE                        Account created  03/29/93
    Team:    RCCP                                                           6
             701 SANDERSON RD. C-8          H (301) 341-9663
             CHESAPEAKE, VA 23322           W (999) 999-9999
                            Date    Amount                            Amount
```

| | Date | Amount | | Amount |
|---|---|---|---|---|
| Account Balance | | $.00 | Balance at SCCU | $261.00 |
| Unapplied payments | | $.00 | Amount of writeoffs | $.00 |
| Pending payments | | $.00 | and Abatements | |
| Last Charge | 020696 | $.00 | Number Past Due | 0 |
| Last Payment | 062896 | $261.00 | Financ Eligibility | 10 INELGBLE |
| Amount of Bad Checks | | $2028.00 | | |
| Disputed Amount | | $.00 | Last Update Program DA200 | |
| Last Statement Balance | 050396 | $261.00 | Updated last on | 062896 |
| Last Statement Unapplied | | $.00 | at | 2:33 AM |
| | | | Update Trans/Status 031 SUCCESS | |
| Last Detail # Assigned | 062896 | 0088 | Last updated by | 0001 |
| Last Archived Detail # | | -0000 | | |

```
CASH ONLY   NDSL FLAG   FINANC AID  AR/DAR    NDSL DELQ  CCU STATUS  CCU CLEAR
00 950505   00 940103   00 960222   10 960628 00 040709   10 960628  10 960628
```

Continue (Y/N) ?

```
S244396136   JOHNSON JR   JOE                    Account created   03/29/93
                                       Original   Trans     SC Trans   Due
    Seq#  Trans Code    Trans Description   Sem   Amount    Balance  CU Date  Date
    ====  ===========  ====================  ====  =========  =========  = ======  ======
    0067  UG02-TU01CH  PLGL325 2600          9602    522.00      0.00   0 011896 011896
    0068  GR01-FE04CH  REGISTRATION FEE      9602      0.00      0.00   0 011896 011896
   C0069  UG02-TU01CH  PLGL204 2600          9602    522.00      0.00   0 011896 011896
    0070  GR01-FE04CH  REGISTRATION FEE      9602      0.00      0.00   0 011896 011896
   C0071  FA10-FL01PY  FED SUB DIR LOAN      9602    168.00-     0.00   0 012396
    0072  FA10-FL03PY  FED UNS DIR LOAN      9602   1920.00-     0.00   0 012396
    0073  CR90-CR04CH  FED DIRECT LN REFUND  9602   1044.00      0.00   0 012396 012396
   C0074  FA10-FL01PR  ADJ-FED SUB DIR LOAN  9602    168.00      0.00   0 012596
    0075  FA10-FL01PY  FED SUB DIR LOAN      9602   1680.00-     0.00   0 012596
    0076  CR90-CR04CH  FED DIRECT LN REFUND  9602   1512.00      0.00   0 012596 012596
   C0077  UG02-TU01CH  PLGL204 2601          9602    522.00      0.00   0 012996 012996
    0078  GR01-FE04CH  REGISTRATION FEE      9602      0.00      0.00   0 012996 012996
   C0079  UG02-TU01CR  CORRECT-PLGL204 2600  9602    522.00-     0.00   0 012996
    0080  UG10-TU01CH  ENGL101 6900          9602    522.00      0.00   0 012996 012996
    0081  GR01-FE04CH  REGISTRATION FEE      9602      0.00      0.00   0 012996 012996
   C0082  UG02-TU01CR  CANCLED-PLGL204 2601  9602    522.00-     0.00   0 020696
    0083  UG02-TU01CH  PLGL204 2600          9602    522.00      0.00   1 020696 020696
    Continue (Y/N) ?
```

```
S244396136  JOHNSON JR  JOE                          Account created  03/29/93
                                          Original    Trans     SC Trans  Due
     Seq#  Trans Code   Trans Description  Sem  Amount  Balance  CU Date  Date
     ====  ===========  ===================  ====  =========  =========  =  ======  ======
     0084 GR01-FE04CH  REGISTRATION FEE     9602     0.00       0.00   0 020696 020696
     C0087 UG10-TU01CR  WD  50%-ENGL101 6900 9602   261.00-     0.00   0 021196
     0088 DA30-TC01PY  TRANSFER TO SCCU     9602   261.00-      0.00   0 062896
```

\*\*\*\*\*\*\*\* END OF DETAIL RECORDS \*\*\*\*\*\*\*\*

Please enter selection options or $EXIT TO exit    >>

# **Attachment 5**





**ARLINGTON COUNTY, VIRGINIA**
OFFICE OF THE SHERIFF
COURTHOUSE
1425 N. COURTHOUSE ROAD, ROOM 9100
ARLINGTON, VIRGINIA 22201
(703) 228-4460
**DETENTION FACILITY**
1435 N. COURTHOUSE ROAD
ARLINGTON, VIRGINIA 22201
(703) 228-7287 OR 7286

BETH ARTHUR
SHERIFF

December 28, 2006

Joseph Johnson, Jr.
607 Audrey Lane, 102
Oxon Hill, MD 20745
P-39585

Reference: Incarceration Dates

Dear Mr. Johnson

Per your request dated December 08, 2006 for your incarceration dates are as follows:

| | | |
|---|---|---|
| 01/11/93 to 01/12/93 | Grand Larceny & Burglary | Released to Bond |
| 08/11/95 to 10/26/95 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Bond |
| 04/29/96 to 05/15/96 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Federal Authority |
| 07/12/96 to 07/18/96 | Probation Violation (CR93-321); Forge Document X2 (CR95-1499&CR95-1500) | Released to Federal Authority |
| 08/23/96 to 09/11/96 | Forge Document (CR93-1500) | Released to VA Department of Corrections |

Unfortunately we only keep hard copy of our files for 3 years. This is the only information I am able to certify. You will have to contact the Federal Authorities and DOC that detained you for further documentation.

If you need any further information you may contact records at (703)228-4486.

D. A. Grenier S410
Deputy Sheriff II
Case Manager



# COMMONWEALTH *of* VIRGINIA

**GENE M. JOHNSON**
**DIRECTOR**

*Department of Corrections*

P. O. BOX 26963
RICHMOND, VIRGINIA 23261
(804) 674-3000

December 14, 2006

Mr. Joseph Johnson, Jr.
607 Audrey Lane, #102
Oxon Hill, Maryland 20745

Re: Incarceration History — Former VSP # 239045

Dear Mr. Johnson:

This office is in receipt of your request for verification of incarceration within the Virginia Department of Corrections.

Your incarceration history is as follows:

**VSP# 239045**

| | |
|---|---|
| 05/15/2000 | Not Active – Discharged Direct |
| 11/19/1999 | Greensville Correctional Center |
| 05/08/1998 | Lunenburg Correctional Center |
| 07/15/1997 | St. Brides Correctional Center |
| 07/10/1997 | Deep Meadow Correctional Center – Returned from Court |
| 01/16/1997 | Out of State Court |
| 11/01/1996 | Deep Meadow Correctional Center – Returned from Court |
| 09/25/1996 | Northern Neck Regional Jail – Out to Court |
| 09/11/1996 | Deep Meadow Correctional Center – New Prisoner Received |

I trust this information is helpful to you.

Sincerely,

*J. Tiede*

J. Tiede, Research Specialist
Central Criminal Records

Cc: File



**UNITED STATES
POSTAL SERVICE®**

Home | Help

Track & Confirm

## Track & Confirm

### Search Results

Label/Receipt Number: 7007 0710 0001 7418 9459
Detailed Results:

- **Delivered, September 13, 2007, 6:37 am, WASHINGTON, DC 20202**
- **Arrival at Unit, September 13, 2007, 2:38 am, WASHINGTON, DC 20022**
- **Acceptance, September 10, 2007, 7:47 am, ARLINGTON, VA 22215**

( < Back )　　　　　　　( Return to USPS.com Home > )

**Track & Confirm**

Enter Label/Receipt Number.

(

---

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( Go > )

---

POSTAL INSPECTORS    site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust      Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy



September 25, 2007

Mr. Joseph Johnson
607 Audrey Lane, #102
Oxon Hill, MD 20745

Re:     Loan Discharge Appeal

Dear Mr. Johnson:

This acknowledges receipt of your September 10, 2007 request for reconsideration of my denial of your student loan discharge request based on False Certification, Disqualifying Status. Your request is based on information you believe wasn't considered during my initial review of this matter.

The information you presented was already considered in past determinations of your requests for discharge, including mine. You do not meet the statutory or regulatory requirements for discharge based on False Certification, Disqualifying Status.

With respect to loan disbursement while you were incarcerated, your assertion doesn't appear to be accurate. Records show your loans were disbursed on the following dates:

| LOAN PERIOD | DISBURSEMENT 1 | DISBURSEMENT 2 |
|---|---|---|
| 09/07/1993-05/10/1994 | 01/03/1994 | N/A |
| 09/06/1994-05/09/1995 | 08/22/1994 | 01/09/1995 |
| 09/06/1994-05/09/1995 | 08/22/1994 | 01/09/1995 |
| 09/06/1994-05/09/1995 | 03/09/1995 | N/A |
| 09/05/1995-05/12/1996 | 01/23/1996 | N/A |
| 09/05/1996-05/12/1996 | 01/23/1996 | N/A |

Records you provided showed that, you were incarcerated from 01/11/1993 through 01/12/1993, then from 08/11/1995 through 10/26/1995, 04/29/1996-05/15/1996[1]. While I note that one of your loan periods overlaps dates of incarceration, those loans were

---

[1] Your records showed you were incarcerated on dates subsequent to 08/15/1996, but those dates are not relevant to your discharge request.

**Mr. Joseph Johnson**
**September 25, 2007**
**Page 2 of 2**

neither certified nor disbursed while you were incarcerated.  As such, your request for reconsideration is denied.

No further consideration or response will be made to you regarding this matter.

Sincerely,

Jeff Baker
Director
Policy Liaison and Implementation

C:      Direct Loans



START HERE
GO FURTHER
**FEDERAL STUDENT AID**

Español ┊ Contact Us ┊ Privacy Policy ┊ Site Map ┊ Logout

[ Search field ]  Search

HOME    YOUR ACCOUNT    |    QUESTION CENTER    FORMS

**View Account Information**
Account Summary
Payment History
Loan Consolidation Status
Payoff Amount
1098-E Tax Information
Electronic Promissory Notes
Electronic Mailbox
**Manage Your Account**
Update Your Information
Consolidate Your Loans
Electronic Mail Services
Deferment Request
Forbearance Request
Change Repayment Plan
Change Payment Due Date
**Electronic Payment Methods**
Make Online Payment
Electronic Debit Account (EDA)
**Tools & Planning**
Entrance Counseling
Exit Counseling
Repayment Estimator
Interest Capitalization Estimator
Budget Calculator

## Summary of Payments Received for Account *****6136

Page 1 - 2 - 3                          Payment(s) 1 - 10 of 23

| Payment Received | Payment Type | Payment Amount | Applied to Principal | Applied to Interest | Applied to Fees & Charges |
|---|---|---|---|---|---|
| 12/26/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 11/20/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 10/23/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 09/19/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 08/21/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 07/20/2006 | Mail | $100.00 | $31.06 | $68.94 | $0.00 |
| 05/25/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 04/18/2006 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 03/17/2006 | Mail | $100.00 | $13.40 | $86.60 | $0.00 |
| 02/21/2006 | Mail | $200.00 | $73.42 | $126.58 | $0.00 |

 Next >


Lower your interest rate!
Learn more
Enroll in Automatic Monthly Payment


Make Your Payments Online
Pay your loan bill online and easy.  Learn More


1098-E Information
Your 1098-E information is available online to view and download. Learn More

**Note:** The payment amount displayed in the 'Applied to Interest' column should not be used for tax reporting purposes. To obtain the interest amount you may be able to deduct, please view IRS Form 1098-E.

**Helpful Hints:**

- Payments made online from this Web site that are in the process of being debited will be shown in your Payment History on this page in one to four business days.

- This page shows you the payments received and applied to your account, with the most recent payment listed first.

- To view the definitions for the terms displayed on this page, click here.

- To see how a particular payment applied across multiple accounts, click on the payment



Español | Contact Us | Privacy Policy | Site Map | Logout

[ ] Search

HOME | YOUR ACCOUNT | QUESTION CENTER | FORMS

**View Account Information**
Account Summary
Payment History
Loan Consolidation Status
Payoff Amount
1098-E Tax Information
Electronic Promissory Notes
Electronic Mailbox
**Manage Your Account**
Update Your Information
Consolidate Your Loans
Electronic Mail Services
Deferment Request
Forbearance Request
Change Repayment Plan
Change Payment Due Date
**Electronic Payment Methods**
Make Online Payment
Electronic Debit Account (EDA)
**Tools & Planning**
Entrance Counseling
Exit Counseling
Repayment Estimator
Interest Capitalization Estimator
Budget Calculator

## Summary of Payments Received for Account *****6136

Page 1 - 2 - 3                    Payment(s) 11 - 20 of 23

| Payment Received | Payment Type | Payment Amount | Applied to Principal | Applied to Interest | Applied to Fees & Charges |
|---|---|---|---|---|---|
| 01/17/2006 | Mail | $200.00 | $102.03 | $97.97 | $0.00 |
| 12/21/2005 | Online Payment | $200.00 | $50.96 | $149.04 | $0.00 |
| 11/10/2005 | Mail | $200.00 | $127.00 | $73.00 | $0.00 |
| 10/21/2005 | Mail | $200.00 | $82.88 | $117.12 | $0.00 |
| 09/19/2005 | Mail | $200.00 | $97.19 | $102.81 | $0.00 |
| 08/22/2005 | Mail | $150.00 | $32.38 | $117.62 | $0.00 |
| 07/21/2005 | Mail | $200.00 | $126.18 | $73.82 | $0.00 |
| 06/20/2005 | Mail | $100.00 | $0.00 | $100.00 | $0.00 |
| 05/24/2005 | Online Payment | $120.00 | $0.00 | $120.00 | $0.00 |
| 04/21/2005 | Online Payment | $120.00 | $0.00 | $120.00 | $0.00 |

« Back    Next »





**Note:** The payment amount displayed in the 'Applied to Interest' column should not be used for tax reporting purposes. To obtain the interest amount you may be able to deduct, please view IRS Form 1098-E.

**Helpful Hints:**

- Payments made online from this Web site that are in the process of being debited will be shown in your Payment History on this page in one to four business days.
- This page shows you the payments received and applied to your account, with the most recent payment listed first.
- To view the definitions for the terms displayed on this page, click here.
- To see how a particular payment applied across multiple accounts, click on the payment



Español | Contact Us | Privacy Policy | Site Map | Logout

[                    ] [ Search ]

**HOME    YOUR ACCOUNT | QUESTION CENTER    FORMS**

**View Account Information**
Account Summary
Payment History
Loan Consolidation Status
Payoff Amount
1098-E Tax Information
Electronic Promissory Notes
Electronic Mailbox

**Manage Your Account**
Update Your Information
Consolidate Your Loans
Electronic Mail Services
Deferment Request
Forbearance Request
Change Repayment Plan
Change Payment Due Date

**Electronic Payment Methods**
Make Online Payment
Electronic Debit Account (EDA)

**Tools & Planning**
Entrance Counseling
Exit Counseling
Repayment Estimator
Interest Capitalization Estimator
Budget Calculator

## Summary of Payments Received for Account *****6136

Page 1 - 2 - 3                                          Payment(s) 21 - 23 of 23

| Payment Received | Payment Type | Payment Amount | Applied to Principal | Applied to Interest | Applied to Fees & Charges |
|---|---|---|---|---|---|
| 02/28/2005 | Mail | $60.00 | $0.00 | $60.00 | $0.00 |
| 12/21/2004 | Online Payment - Portal | $127.32 | $0.00 | $127.32 | $0.00 |
| 12/17/2004 | Consolidation Payoff | $5,944.04 | $5,911.65 | $32.39 | $0.00 |

 < Back







**Note:** The payment amount displayed in the 'Applied to Interest' column should not be used for tax reporting purposes. To obtain the interest amount you may be able to deduct, please view IRS Form 1098-E.

---

**Helpful Hints:**

- Payments made online from this Web site that are in the process of being debited will be shown in your Payment History on this page in one to four business days.

- This page shows you the payments received and applied to your account, with the most recent payment listed first.

- To view the definitions for the terms displayed on this page, click here.

- To see how a particular payment applied across multiple accounts, click on the payment received date in the table above.

- To learn how interest is calculated on your loan and how payments are applied, click here.

---

**Note:** The information on this page reflects your current account information on our system. If you have recently applied for a change, please allow at least 10 business days for that change to be posted online.