UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JOHNSON, JR. )<br>)<br>            **Plaintiff,** )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF EDUCATION, et al. )<br>)<br>            **Defendants.** )<br>) | Civil Action No. 07-2183 (JR) |

**FEDERAL DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant responds to Plaintiff's Motion for Summary Judgment and submits that said motion should be denied, and summary judgment entered instead for the Secretary, as Plaintiff misstates the applicable legal standard, and has made no factual showing of the existence of a genuine issue of material fact to be tried. Plaintiff's attempt to argue that the Secretary, in denying him a discharge, somehow went "beyond the statute" misrepresents the Secretary's decision, and relies on inapposite caselaw. Because Plaintiff has failed to identify any factual issue for trial, and because the record is devoid of support for Plaintiff's claims, summary judgment should be entered for the Secretary.

**STATUTORY AND REGULATORY BACKGROUND**

In 1992, Congress amended the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq. ("the HEA"), to include the following provision:

> If a borrower who received, on or after January 1, 1986, a loan made, insured or guaranteed under the [Federal Family Education Loan Program] ["FFEL Program"] and . . . if such student's eligibility to borrow under [the FFEL Program] was *falsely certified* by the eligible institution . . . then the Secretary shall discharge the borrower's liability on the loan

(including interest and collection fees) by repaying the amount owed on the loan. . . . .

20 U.S.C. § 1087(c) (emphasis added). The HEA contained, and contains, no definition of "falsely certified."

In drafting regulations to implement this provision,[1] the Secretary concluded that it would be permissible to view forgery by a school of a loan application, promissory note or loan disbursement check as "false certification" justifying a discharge. See 59 Fed Reg. 22462, 22470 (April 29, 1994); 34 C.F.R. §§ 682.402(e)(1)(i)(B), (C); 34 C.F.R. §685.215(a)(1)(ii), (iii).

In addition, the Secretary agreed that the "false certification" discharge provision authorized the Department to discharge loans made to students who had not completed high school, if the institution certifying the loan had not made a reliable determination of the student's "ability to benefit" from the education or training, since a separate statutory provision in the HEA has long required schools to certify the ability to benefit of any non-high school graduate as part of establishing that student's eligibility for the loan. See 20 U.S.C. § 1091(d). Consistent with the limited obligation placed on certifying schools under the latter provision, the implementing regulations restrict discharges focusing on a

---

[1] In considering the statutory discharge provision, 20 U.S.C. §1087(c), the Secretary determined that it applied not only to the FFEL Program, but to the Federal Direct Loan Program as well, by virtue of 20 U.S.C. § 1087a(b)(2), which states that "Notwithstanding any other provisions of [the Federal Direct Loan Program], [Federal Direct Loans] except as otherwise specified . . . have the same terms, conditions, and benefits as loans made to borrowers under [the FFEL Program]." Accordingly, the Secretary separately promulgated two false certification discharge regulations -- the regulation for the FFEL Program found at 34 C.F.R. § 682.402(e), and the regulation for the Federal Direct Loan Program found at 34 C.F.R. § 685.215. Since Plaintiff's loans are Federal Direct Loans, the latter regulation applies here.

school's failure to inquire into ability to benefit to loans made for students who have not graduated from high school. See 34 C.F.R. §§ 682.402(e)(1)(i)(A), 682.402(e)(13)(iv) (2007); 685.215(A)(1)(ii)(incorporating by reference HEA § 484(d), 20 U.S.C. § 1091(d)). The Secretary's rationale for looking to the HEA's "ability to benefit" provision in construing the separate "falsely certified" language of the discharge provision was as follows:

> the statute authorizes discharge only if the school made a false 'certification of the student's eligibility,' a term used only in the FFEL Program regulations, where it refers, only to those representations made by the school on the loan application itself regarding the status of the loan applicant . . . as an eligible student. . . . The legislative history further explains that this provision was intended to provide relief where the student was 'left without the skills needed to obtain employment' because of the false certification of eligibility. H.R. Rep. No. 447, 102d Cong. 2d Sess. 52 (1991). The scope of the relief proposed by the Secretary here is guided by these two principles: that the false certification be that made by the school on the loan application regarding the borrower's eligibility, and that the falsity of the certification be directly related to the failure to provide necessary skills for employment.

59 Fed. Reg. 2486, 2488 (January 14, 1994).

Lastly, the Secretary included in the discharge regulations a third category of "falsely certified" loans – the so-called "disqualifying status" provision that is at issue in this case:

> The Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school . . . (iii) Certified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.

34 C.F.R. § 685.215(a)(1)(iii); see also 34 C.F.R. § 682.402(e)(13)(iii). This regulation is not restricted to persons who have not graduated from high school, and accordingly has

3

no analog in the "ability to benefit" provisions of the statute, nor in any other language of the HEA. Instead, in promulgating it, the Secretary was looking to the statements from legislative history, referred to in the Federal Register notice quoted above, that evidenced a legislative intent to "provide relief where the student was 'left without the skills needed to obtain employment' because of the false certification of eligibility.'" 59 Fed. Reg. at 2488. Consistently with the absence of any statutory language expressly describing such a basis for discharging federally-backed loans, the Secretary in the rulemaking noted that the language of the disqualifying status discharge regulation is "limited and designed to address those situations in which the school proposed to train the student for an occupation with specific requirements for employment. The Secretary does not anticipate that this regulation will apply to many students pursuing academic programs in a university." 59 Fed. Reg. 61664, 61682 (December 1, 1994).

## ARGUMENT

1. **Plaintiff Applies the Wrong Legal Standard**

As Plaintiff's documentation in support of summary judgment demonstrates, Plaintiff's case is predicated on an assumption that he is entitled to a discharge as long as he makes a showing that his criminal record makes it harder for him to get a job. Based on this assumption, he cites Maryland statutes and regulations which might (or might not) foreclose options he might have but for his criminal record to work in Maryland as a cosmetologist, a uniformed correctional officer, a personal care aide, or a respite care worker, or to work in a Maryland public school or assisted living program, or to work in Maryland in a program for persons with developmental disabilities. Plaintiff's Memorandum of

4

Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Pl. Br."), at 7-9 [2] (citing Md. Code Ann. Bus. Occ. & Prof. 5-314(a)(1)(vii)(1), (2) (Supp. 2006); Md. Code Ann. Educ. 6-113(a)-3)(2004); Md. Code Ann. Corr. Servs. 8-208(a) (Supp. 2006); Md. Code Regs. §§ 1.09.54.06(B)(6), 10.09.54.07(D)(2), 10.07.14.17(B)(4), 10.22.02.11(B), 12.10.01.17(A) (2006)). He also points out that Maryland's negligent hiring doctrine could give individual employers qualms about hiring an ex-offender, Pl. Br. at 10-12, [3] and that background checks mandated or authorized by statute or regulation could result in a decision by a licensing authority to exercise its discretion to deny him a taxicab license or other, unidentified licenses. Pl. Br. at 9-12 (citing taxicab licensing provisions at Md. Code Ann. Pub. Util. Cos. § 10-104(a)(1)(v), 10-104(e) (Supp. 2006); provisions found at 5 C.F.R. Parts 731 and 732 regarding investigations of suitability for federal competitive service and national security positions; and provisions authorizing background checks found at Md. Code Ann. Crim. Proc.

---

[2] Plaintiff failed to put page numbers on his papers. References herein to particular pages in Plaintiff's Memorandum reflect the page numbers that those pages would bear had Plaintiff numbered them consecutively beginning with 1 on the first page.

[3] The caselaw Plaintiff cites, Cramer v. Housing Opportunities Comm'n, 501 A.2d 35, 39 (Md. 1985), and Henley v. Prince George's County, 503 A..2d 1333 (Md. 1986), reflect reversals of, respectively, a grant of summary judgment against a claim of negligent hiring, and a directed verdict rejecting such a claim. The Cramer case emphasizes that a decision as to whether or not a prospective employer has a duty in tort to conduct a criminal record investigation is a case-by-case factual inquiry that involves consideration of multiple factors. 501 A.2d at 40-41. Cramer also emphasizes that it is difficult, and often impossible, for private employers to obtain criminal history information. Id., at 40 n.10.

§§ 10-231(a)(2001), 10-233(a)(2001), 10-235(b)(1)(s) (Supp. 2006), 10-236 (Supp. 2006); see also "Exhibit B" filed by Plaintiff on May 5, 2008.[4]

Plaintiff fails to focus on the legal standard he must meet. There is no provision in the HEA disqualifying him from eligibility for federal student loans based on his criminal record, much less making the miscellaneous challenges he could face in finding employment by reason of that record a basis for discharging the loans he received.[5] Nor did the "ability to benefit" provisions of the statute and regulations require the University of Maryland to determine whether Plaintiff had a record, either before or after certifying him as eligible for such a loan. Those provisions instead simply require institutions to use prescribed methods to assess the educational capacity of prospective students who lack high school diplomas, and provide for discharge of loans if the institution fails to conduct the

---

[4] Plaintiff failed to present any of these contentions to the Secretary, even though he concedes, in his motion for summary judgment, that this case arises under the Administrative Procedure Act – a statute which restricts judicial review to the administrative record.

[5] Plaintiff points out that a student convicted during enrollment of an offense involving the possession or sale of a controlled substance is ineligible for federal student aid. Pl. Br. at 5 (citing 20 U.S.C. § 1091 (r)). Since Plaintiff was not convicted for possession or sale of a controlled substance, this provision is irrelevant to this case.

The Secretary notes, moreover, that the provision regarding convictions for possession and sale of controlled substances pertains to eligibility of students for federal student aid in the first instance, and not to eligibility for discharge of student loans once awarded. Not surprisingly, the Secretary's regulations implementing the discharge statute have never included student ineligibility under 20 U.S.C. § 1091 (r) as a basis for a "false certification" discharge. It defies credulity to conclude that Congress, having attempted to preclude drug offenders from obtaining federal student aid of any kind, nonetheless intended the Secretary to relieve borrowers who obtained loans in violation of this provision of the need to repay those loans, on the ground that the loans were "falsely certified" within the meaning of the discharge statute. This anomaly illustrates that the meaning of the directive in the discharge provision to discharge loans that are "falsely certified" is not entirely self-evident from the words used if they are read in isolation from the statutory context.

diplomas, and provide for discharge of loans if the institution fails to conduct the requisite assessment. See 20 U.S.C. § 1091(d); 34 C.F.R. Part 668, Subpart J; 34 C.F.R. §§ 682.402(e) (13), 685.215 (c)(1). Plaintiff has never claimed he lacks a high school diploma.

Plaintiff's theories notwithstanding, the legal standard applicable here begins and ends with the disqualifying status regulation, 34 C.F.R. § 685.215(a)(iii). Under that regulation, Plaintiff's criminal record would support a discharge of his loan if, but only if, it prevented him "meet[ing] the requirements for employment" in "*the* occupation for which the training program supported by the loan was intended" (emphasis added).

In other words, it is not sufficient for Plaintiff to show that he is less likely to get a job, or at a disadvantage compared to other applicants, by reason of his record. Instead, he must be unable to meet a job *requirement* by reason of the record. Moreover, as reflected in the language from the rulemaking quoted above, and in the use of the singular in referring to "the occupation for which the training was intended," discharge is authorized only if the educational program is so specialized that the borrower's inability to satisfy the requirement in question rules out any possibility of obtaining employment that utilizes the training received. Where completion of an educational program would support employment in a multitude of occupations, it is not enough for a discharge applicant to show that one or several of those avenues are not available as a result the applicant's criminal record.

7

As Plaintiff's papers reveal, his case, boiled down, simply catalogs the various obstacles ex-offenders might encounter in the course of conducting a job search in Maryland. Because this catalog never addresses the pertinent legal standard -- i.e., the standard set by the disqualifying discharge regulation, 34 C.F.R. § 685.215(a)(1)(iii) -- the Secretary is entitled to summary judgment, and Plaintiff is not.

### 2. The Record Supports Denial of Plaintiff's Applications for Discharge

The Secretary concluded that Plaintiff's applications for a "disqualifying status" discharge should be denied because Plaintiff had failed to show that he was "enrolled in a training program that specifically and exclusively prepared [him] for employment in law enforcement or as a paralegal, nor [was he] enrolled in a law school." A.R. at 352. Undeniably, this conclusion accurately reflected both the record and the reality. Plaintiff was enrolled in a degree program at the University of Maryland, with a specialization in "Paralegal Studies." Plaintiff's Exhibit 3 (reflecting Plaintiff's enrollment in this degree program); Complaint, Paragraph 10 and "Attachment D" thereto (describing program as in "Paralegal Studies"); A.R. 282 (Plaintiff's narrative in support of discharge identifying his program as "Paralegal studies"); First Amended Complaint Paragraphs 9 and 15 (describing program as a four year program in "paralegal studies"). It is well understood that completion of a degree program supports employment in a broad range of occupations -- a far cry from the situations addressed by the disqualifying status discharge provision, in which, as the Secretary remarked during the rulemaking, a school "propose[s] to train the student for an occupation with specific requirements for employment." 59 Fed. Reg. 61664, 61682 (December 1, 1994). Moreover, while

Plaintiff had apparently confined himself to the paralegal studies portion of the degree requirements as of the date he withdrew, that fact does not somehow convert the University of Maryland's approval of his loan applications for enrollment in the degree program into "false certifications."

Furthermore, even setting aside the general education components of Plaintiff's program, and focusing exclusively on the paralegal coursework Plaintiff had actually completed by the time his studies were discontinued as a result of his convictions for forgery and resulting incarceration, the record uniformly reflects a broad range of possible occupations for persons having paralegal training, and not just those expressly characterized as or generally referred to as paralegal positions. A.R. 304-305; Plaintiff's Exhibit 4 at 4; Plaintiff's Statement of Material Facts Not in Dispute ¶ 3 (quoting statement by the U.S. Department of Labor to the effect that "among the other occupations that call for a specialized understanding of law but do not require the extensive training of a lawyer, are law clerks; title examiners, abstractors, and searchers; claims adjusters, appraisers, examiners, and investigators; and occupational health and safety specialists and technicians."). The Secretary's conclusion that, in effect, Plaintiff's program was not specialized enough to support a "disqualifying status" discharge is amply supported by the record.

Plaintiff, however, insists that the program in question was exclusively a "paralegal certification training program that intended to prepare [Plaintiff] for employment as a professional paralegal." Pl. Br. at 3. For the reasons stated above, the Secretary disagrees with this narrow description. However, even if Plaintiff were correct, this argument gets him nowhere. This is because the

9

record is devoid of evidence that Plaintiff's criminal record precluded him from meeting the requirements for employment as a "professional paralegal," as the disqualifying status discharge regulation would require. While Plaintiff informed the Secretary that conviction of a felony is sometimes a ground for suspending, revoking, or denying a professional occupational license, Plaintiff has never introduced any evidence that employment in Maryland as a "professional paralegal" requires a license of any kind. In this connection, Plaintiff's recurring references, in his brief and elsewhere, to his educational program as involving "certification training" are misleading, at best, since the record reflects that "certification," rather than being either a required component of the University of Maryland's paralegal studies coursework or a requirement for employment as a paralegal, is a purely voluntary credential which "most employers [of paralegals] do not require." Plaintiff's Exhibit 4 at 2.

    In short, the record supports the Secretary's conclusion that Plaintiff's program led to too many kinds of employment opportunities to permit a discharge of his loan based on a "disqualifying status." Moreover, it fails to contain any evidence that, as a result of Plaintiff's criminal record, he was unable to meet the requirements for employment in the "professional paralegal" occupation for which he contends his program was intended. The requirements for a "disqualifying status" discharge are not met, precluding a grant of relief on Plaintiff's complaint.

### 3. The Secretary Did Not Go Beyond the Statute in Denying a Discharge

Finally, Plaintiff argues that the Secretary exceeded her statutory authority by allegedly (1) denying him a discharge based on his failure to inform the University of Maryland of his criminal record, and (2) requiring him to "provide documentation proving the denial for a license due to a criminal record," in contravention of the holding in Jordan v. Secretary of Education, 194 F.3d 169 (D.C. Cir. 1999). Pl. Br. at 12-14. Both contentions are off the mark.

First, while an initial decision by the Direct Loan servicer denied Plaintiff's discharge application on the ground that "You did not inform the school of your status prior to enrollment" [A.R. at 80], Plaintiff sought reconsideration, and the final decision letter expressly noted that the Secretary's "basis for determining that you would not be eligible for discharge differs from that provided [initially]." A.R. at 352. Thus, the Department repudiated the reasoning of the initial decision.

Likewise, Plaintiff's lack of documentation proving he had been denied a license was not the rationale, ultimately, for the denial of a discharge to Plaintiff. See A.R. at 351-52. Instead, and consistently with the disqualifying status discharge regulation, had Plaintiff ever shown that his program prepared him exclusively for an occupation in which licensure was required, and that under Maryland law his criminal record would have precluded him from obtaining such a license, the discharge would have been granted, regardless of whether Plaintiff had submitted proof he had actually applied for the license and been denied. That option was never open to the Secretary, however, since Plaintiff never made the showing required to support it.

11

Second, while the Jordan case, supra, reversed a Secretarial decision to deny a discharge to a borrower who had claimed to have had her "ability to benefit" "falsely certified," and while the basis for the Secretary's decision in that case had been a regulation, now withdrawn, requiring the applicant to show not only a failure by the school to assess her ability to benefit but also that she had tried and failed to find employment in the occupation intended, Jordan is inapposite. The Court's reasoning in Jordan was that the Secretary's regulation requiring proof of unsuccessful employment attempts went beyond the statutory ability-to-benefit provision, which, as the Court put it, simply required "that the student has been admitted to a school on the basis of ability to benefit without actually satisfying the ability to benefit test." 194 F.3d at 171

In contrast, Plaintiff has never claimed that he, like Jordan, was admitted to the University of Maryland "on the basis of ability to benefit without actually satisfying the ability to benefit test." As discussed above, ability to benefit tests are administered only to federal student aid applicants who have not graduated from high school. See 20 U.S.C. § 1091(d). Plaintiff has never denied he has a high school diploma. As a result, the holding in Jordan has no application here.

In fact, and in contrast to the ability-to-benefit discharge regulation at issue in Jordan, the disqualifying status discharge regulation has no statutory analog, either in the ability-to benefit provision found at 20 U.S.C. § 1091(d), or in any other statute. Accordingly, there is no issue here of going beyond the statute in *denying* Plaintiff's discharge. If there is an issue of statutory authority lurking in these regulations, it is whether the Secretary had authority to create a "disqualifying status" discharge in the

first instance. Since Plaintiff's applications have been denied, however, this case does not present that issue.

## CONCLUSION

For the reasons set forth herein and in Federal Defendant's dispositive motion, it is respectfully requested that the Court deny Plaintiff's motion for summary judgment; grant summary judgment to the Secretary; and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:

SARAH L. WANNER
Office of General Counsel
U.S. Department of Education

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JOHNSON, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-2183 (JR) |
| ) | |
| U.S. DEPARTMENT OF EDUCATION, et al. ) | |
| ) | |
| Defendants. ) | |

**SECRETARY'S OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

In response to Plaintiff's Statement of Material Facts Not in Dispute ("PSMF"), the Secretary of Education states as follows:

1. Not disputed.

2. With respect to PSMF Paragraph 2, the Plaintiff was not incarcerated at any time during the periods of enrollment financed with Plaintiff's federal student loans, with the possible exception of April 30, 1996, and the first few days of May, 1996. Administrative Record ("A.R.") at 19-23, 35-36, 98-99, 182, 281-282, 356-57.[1] Defendant further states that all evidence of record indicates that the paralegal specialization portion of Plaintiff's program was intended to support employment in a range of positions, and not just those expressly characterized as or generally referred to as paralegal positions. A.R. 304-305; PSMF Exhibit 4 at 4. Plaintiff's references to his program as a "Paralegal certification training program" or as a "professional paralegal program" are inaccurate. Plaintiff was enrolled in a degree program at the University of

---

[1] All pages cited herein from the Administrative Record are among the excerpts attached to the Secretary's Motion for Summary Judgment.

Maryland with a specialization in "Paralegal Studies." PSMF Exhibit 3 (reflecting Plaintiff's enrollment in this degree program); Complaint, Paragraph 10 and "Attachment D" thereto (describing program as in "Paralegal Studies"); A.R. 282 (Plaintiff's narrative in support of discharge identifying his program as "Paralegal studies"); First Amended Complaint Paragraphs 9 and 15 (describing program as a four year program in "paralegal studies").

    3. Not disputed.

    4. With respect to PSMF Paragraphs 4, the Plaintiff's loans were not "Guaranteed Student Loans" but instead were taken out under the Federal Family Education Loan ("FFEL") Program, 20 U.S.C. §§ 1071 et seq., and the Federal Perkins Loan Program, 20 U.S.C. §§ 1087aa et seq., and were later consolidated in loans Plaintiff took out under the Federal Direct Loan Program, 20 U.S.C. §§ 1087a et seq. A.R. at 19-23.

    5. Not disputed.

    6. See Paragraph 2, above, regarding the use of the term "paralegal certification training program." Further, defendant states that with respect to PSMF Paragraph 6, there is no evidence Plaintiff lacked the ability to benefit from the program in which he enrolled, nor that UMUC failed to determine his ability to benefit,[2] nor that he meets the requirements for a discharge of his loan. PSMF Paragraph 6 is incorrect as a matter of law in contending that Plaintiff's criminal record -- i.e., his convictions for burglary, grand larceny, and, later, forgery and uttering a forged public document, see PSMF

---

[2] Institutions determine whether an applicant for federal student aid has the "ability to benefit" from an educational program in the first instance by ascertaining whether the applicant has indicated on his applications for federal student aid that he or she has a high school diploma. See Section 484(d) of Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1091(d). At no time has Plaintiff denied he is a high school graduate.

Paragraph 1 -- was even relevant, much less determinative, with respect either to his ability to benefit from the educational program or to his eligibility for a discharge of his loan. The criminal record is irrelevant because, as all the evidence of record shows, Plaintiff's educational program was intended to prepare him for employment in a range of occupations and positions, see A.R. 304-305; PSMF Exhibit 4 at 4, and because there is no evidence that the absence of a criminal record is a requirement of such employment as would be required under 34 C.F.R. § 685.215 (2007) for a "disqualifying status" discharge. In any event, this factual statement is not material to the resolution of this case.

7. See Paragraghs 2 and 6. Defendant further states that the factual allegations in PSMF Paragraph 7 regarding inquiries and decisions expected to be made by employers are without any evidentiary support in the record. They are also irrelevant, since the "disqualifying status" discharge regulation does not turn on choices that might or might not be made by individual employers but instead on employment requirements that pertain to all employers, and all applicants, in situations where an educational program is designed to prepare students exclusively for the specific occupation to which the requirements are addressed. See 59 Fed. Reg. 61664, 61682 (December 1, 1994) (Secretary stating, in promulgating the "disqualifying status" discharge regulations, that "the regulatory language is limited and designed to address those situations in which the school proposed to train the student for an occupation with specific requirements for **employment**. The Secretary does not anticipate that this regulation will apply to many students pursuing academic programs in a university"); cf. id., at 61681 (Secretary rejecting commenter's interpretation that the reference to "false certification" in the

3

discharge statute, 20 U.S.C. § 1087(c), was intended to authorize discharges for "borrowers who become employed in their general area of study but at lower level positions than they expected when they signed up for training"). The "negligent hiring doctrine" and Maryland caselaw cited in PSMF Paragraph 7, which Plaintiff failed to raise at any point during the administrative proceeding, are irrelevant for the same reasons.

8. See Paragraph 4, above.

9. See Paragraph 6, above. Defendant further states that with regard to PSMF Paragraph 9, Plaintiff submitted multiple requests for false certification discharge of his student loans, including, but not limited to, a request dated November 20, 2006. See List of Contents of Administrative Record (included in the record excerpts filed with the Secretary's Motion for Summary Judgment) at entries 2, 3, 5, 15, 23, 25, 30, 33).[3]  With further regard to PSMF Paragraph 9, the May 7, 2007 document attached as Exhibit 9 to PSMF reflected initial processing of one of Plaintiff's discharge applications rather than a final decision of the Department.

10. With regard to PSMF Paragraph 10, PSMF Exhibit 8 does not reflect a request for reconsideration; instead, it contains a new application for discharge, dated May 15, 2007. PSMF Exhibit 10, also dated May 15, 2007, refers to itself as an "appeal" and generally reflects the content described in PSMF Paragraph 10.

---

[3] "False certification" discharges are available for, inter alia, forged signature, forged endorsement, failure to test students lacking a high school diploma for ability to benefit from the program, and disqualifying status. 34 C.F.R. § 685.215.

11. With regard to PSMF 11, PSMF Exhibit 9 was not a "denial" by the Department of Plaintiff's May 15, 2007 "appeal" but instead reflected initial processing of the new discharge application Plaintiff had filed on May 15, 2007.

12. With regard to PSMF Paragraph 12, the Department's final decisions on the multiple contentions Plaintiff had presented in his "appeals" to the Department, see PSMF Exhibits 10, 11 and 13, consist of PSMF Exhibits 12 and 14. The decision documents speak for themselves. Furthermore, the Department's September 6, 2007 letter (PSMF Exhibit 12) is incorrectly quoted in PSMF Paragraph 12. In context, the sentence in the Department's letter to which Plaintiff apparently refers in PSMF Paragraph 12 simply serves to identify and introduce a quotation of the text of the "disqualifying status" discharge regulation, 34 C.F.R. § 685.215(a)(1)(iii). See PSMF Exhibit 12.

13. See Paragraphs 2 and 12, above.

14. Not disputed, but not material.

15. Not disputed, but not material.

16. Not material to the resolution of this case.

17. Not material to the resolution of this case.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137


Of counsel:

Sarah L. Wanner
Office of General Counsel
U.S. Department of Education
(202) 401-6291

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH JOHNSON, JR.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 07-2183 (JR) |
| | ) |
| U.S. DEPARTMENT OF EDUCATION, <u>et al</u>. | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

Upon consideration of federal defendant's motion for summary judgment, plaintiff's motion for summary judgment, the oppositions and replies thereto, and after review of the entire record, it is this ___ day of _____

ORDERED, that plaintiff's motion be, and hereby is, denied, and it is

FURTHER ORDERED, that defendant's motion be, and hereby is, granted.

_____
United States District Judge

JOSEPH JOHNSON, JR.
607 Audrey Lane #102
Oxon Hill, MD 20745

Defendants Served by ECF filing