## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH JOHNSON, JR.,           :
                               :
       Plaintiff,         :
                               :
    v.                    : Civil Action No. 07-2183 (JR)
                               :
U.S. DEPARTMENT OF EDUCATION, *et* :
*al*.,                              :
                               :
       Defendants.       :

### MEMORANDUM

Joseph Johnson Jr. brought this case pro se under the Administrative Procedure Act, 5 U.S.C. § 706, and the Higher Education Act, § 20 U.S.C. 1087, to compel the Secretary of Education and his loan service providers to discharge certain of his federally guaranteed student loans.  The parties have cross-moved for summary judgment.  Summary judgment will be granted in favor of defendants.

### Background

Johnson was indicted for larceny and burglary on February 16, 1993 and given a suspended sentence on April 21, 1993.  Pl. MSJ, ex. 1.  That same year he enrolled at the University of Maryland University College (UMUC).  AR at 15.  He obtained federally guaranteed loans, including Federal Family Education Loans (FFEL), for the Fall 1993, Spring 1994, Fall 1994, Spring 1995, and Spring 1996 semesters.  AR at 19.  The loan application form did not ask about Johnson's criminal history, and he did not tell.  While enrolled, Johnson took

several courses offered by UMUC's paralegal studies program.  Pl.
MSJ, ex. 13.  On April 29, 1996, Johnson withdrew from UMUC
because he was incarcerated, this time for forgery.  AR at 182.
In 2004, after his release from prison, Johnson consolidated his
loans under the William D. Ford Federal Direct Loan Program
(FFDLP).  AR at 19-23.

Two years later, Johnson filed the application that
gave rise to this case.  Pl. MSJ, ex 6.  He demanded the
discharge of his consolidated loans, asserting that UMUC had
falsely certified his application because, as a convicted felon,
he was unable to meet the requirements of the occupation for
which he was trained.[1]  AR at 53.  More specifically, Johnson
claimed that his criminal record both precluded any possibility
of his admission to the bar, and, because he could never be
licensed to possess a firearm, his employment in law enforcement.
*Id.*  This discharge  application was rejected on the ground that
Johnson did not inform the school that he was a convicted felon
before he enrolled at UMUC.  AR at 80.4.

Johnson appealed to the Secretary and simultaneously
reapplied for discharge, repeating his earlier assertion and

---

[1]If this argument sounds like the plea of the boy who
murdered his parents and then sought leniency because he was an
orphan, consider that, after his conviction for forgery, Johnson
filed another application for the discharge of his loans on the
ground that his signature was forged.  He has not (yet) contested
the rejection of that application.

further arguing that UMUC never asked about his criminal history
before certifying his loans, and that his criminal record also
prevented him from meeting a requirement for employment as a
paralegal.  AR at 125.  A month later, Johnson's second discharge
application was rejected, this time on the ground that he failed
to provide documentation that he had been denied a license
because of his criminal record.  AR at 166.  Johnson appealed
this second decision, too.  AR at 228.

        The Secretary rejected both of Johnson's appeals on the
ground that: "There are no records that indicate you were
enrolled in a training program that specifically and exclusively
prepared you for employment in law enforcement or as a paralegal,
nor were you enrolled in law school."  AR at 351.  This decision
acknowledged that its "basis for determining that [Johnson] would
not be eligible for discharge differ[ed] from that provided by"
the FFDLP.  AR at 352.  Johnson applied for reconsideration,
attaching evidence that he claimed proved his enrollment in
UMUC's paralegal studies program, which he said "specifically and
exclusively prepared [him] for employment in the 'legal
environment'; more specifically as a paralegal."  AR at 353.  The
Secretary again rejected Johnson's application, this time stating
that: "The information you presented was already considered in
past determinations of your requests for discharge, including
mine.  You do not meet the statutory or regulatory requirements

for discharge based on False Certification, Disqualifying
Status." AR at 356.

Johnson's sues under the APA and seeks to compel the
Secretary to discharge his loans because UMUC falsely certified
that he would meet the requirements of employment as a paralegal.
Both parties have moved for summary judgment.

**Analysis**

Summary judgment is granted when there are no genuine
issues of material fact and the movant is entitled to judgment as
a matter of law. Fed. R. Civ. P. 56(c). It "is an appropriate
mechanism for deciding the legal question of whether [an] agency
could reasonably have found the facts as it did." *In Occidental
Engineering Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir.1985).
Here, the facts in the record are undisputed, and it is the
Secretary's decision that is challenged.

The statutory provision in question is 18 U.S.C.
1087(c)(1): "If a borrower who received, on or after January 1,
1986, a loan made, insured, or guaranteed under this part
and . . . if such student's eligibility to borrow under this part
was falsely certified by the eligible institution . . . then the
Secretary shall discharge the borrower's liability on the loan
(including interest and collection fees)." The regulation that
governs the discharge of loans consolidated under the FFDLP is 34
C.F.R. § 685.215(a)(1)(iii): "The Secretary considers a student's

- 4 -

eligibility to borrow to have been falsely certified by the school if the school . . . [c]ertified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended."[2]

The Secretary ultimately rejected Johnson's discharge applications under 34 C.F.R. § 685.215(a)(1)(iii) because there was no evidence that the UMUC program specifically and exclusively prepared him to be a paralegal.  AR at 351.  My review is restricted to whether this decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. § 706 (2)(A), and is limited to the administrative record.  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Generally, an agency's decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*

---

[2]Johnson argues that because his loans were FFEL loans before they were consolidated, I should also consider his "ability to benefit" from his education under 34 C.F.R. § 682.402(e)(13)(iii)(A)(B).  The "ability to benefit" language, adds nothing material on the facts of this case.

*Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)
(internal citations omitted).  Courts will "uphold a decision of
less than ideal clarity if the agency's path may reasonably be
discerned."  *Nat'l Ass'n of Home Builders v. Defenders of
Wildlife*, - - U.S. - -, 127 S.Ct. 2518, 2530 (U.S. 2007)
(internal citations omitted).

        The Secretary's decision was supported by the record.
While enrolled, Johnson took several classes offered by UMUC's
"Paralegal Studies" concentration.  Pl. MSJ, ex. 13.  UMUC's
1998-1999 brochure describes this program as preparing students
"for challenging and responsible work in the legal
environment . . . [and] to apply their acquired knowledge and
skills in a wide variety of legal settings," including "law
firms, government agencies, legal services offices, corporations,
professional and trade associations, banks, real estate
organizations, publishing companies, and other public and private
sector businesses."  AR at 305.  According to the Department of
Labor, among the many "occupations that call for a specialized
understanding of law but do not require the extensive training of
a lawyer, are law clerks; title examiners, abstractors, and
searchers; claims adjusters, appraisers, examiners, and
investigators; and occupational health and safety specialists and
technicians."  Pl. SMFND ¶ 4.  Johnson may have intended to
pursue a specialization in "Paralegal Studies," but he has not

shown that the Secretary's determination that this program did
not specifically and exclusively train students to be paralegals
was arbitrary and capricious.

   The Secretary's decision is indeed consistent with the
applicable regulation, which contemplates discharge only for "a
student who, because of a . . . criminal record . . . would not
meet the requirements for employment . . . *in the occupation* for
which the training program supported by the loan was intended."
34 C.F.R. § 685.215(a)(1)(iii) (emphasis added).  It is also
consistent with an interpretation of that regulation that
restricts the availability of loan discharges to students
enrolled in programs that provide training for specific
occupations with identified requirements.[3]  An agency's

---

[3]*See* 59 Fed. Reg 61664, 61682 (December 1, 1994):
Comments: One commenter suggested that the language
pertaining to the false certification of the
eligibility of a student who does not meet the basic
requirements for employment is unclear particularly
when applied to four year and degree granting
institutions.  The commenter stated that the school
does not have access to the information mentioned in
the regulation and cannot be expected to have
knowledge of the potential occupations and
requirements for employment for students who pursue
the academic programs in a university.  The commenter
argued that this language would encourage students to
raise illegitimate claims against schools.
Discussion: The regulatory language is limited and
designed to address situations in which the school
proposed to train the student for an occupation with
specific requirements for employment.  The Secretary
does not anticipate that this regulation will apply
to many students pursuing academic programs in a
university.

interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal citation omitted; *Gulf Oil Corp. v. Hickel*, 435 F.2d 440 (D.C. Cir. 1970).

"The party challenging an agency's action as arbitrary and capricious bears the burden of proof." *Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir.2000).  Plaintiff has not sustained his burden.  Because the record shows that Johnson was not enrolled in a training program "in which the school proposed to train the student for an occupation with specific requirements for employment," 59 Fed. Reg 61664, 61682 (December 1, 1994), the Secretary is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

JAMES ROBERTSON
United States District Judge

---

(emphasis added).

- 8 -